# Exhibit L

**dante canonica**

**michel valticos**

**pierre de preux**
former head of bar

**jean clostre**
degree in arts

**catherine de preux**

**isabelle bühler galladè**

**eve dolon**
degree in human rights
master's degree in French law

**guerric canonica**
diploma institute property studies (iei)

**tetiana bersheda**
ll.m. (cambridge)
doctorate in law
legal counsel monaco

—

**jessica bach**

**yasmina hadj amor**

**victoria von haller**

**ndaté dieng**
master in international relations

**simona fedele**

—

**anthony richoz**

**vanessa frossard**

**amèlie vocat**
trainee lawyers



**canonica valticos de preux + associés**

barristers at Geneva bar

[stamp :]
GENERAL PROSECUTOR'S
OFFICE OF MONACO
ARRIVAL DATE
12 JAN 2015
NO. ........................................

Monsieur Jean-Pierre Dréno
General Prosecutor of the
Principality of Monaco
Palais de Justice
MC – 98000 Monaco

Monaco, 9 January 2015

**Criminal charge for forgery of documents (art. 90 of the Penal Code) and fraud (art. 330 of the Penal Code) v. Mr. Yves Bouvier and any participant**

Dear Sir,

I am pleased to inform you that I am responsible for representing the interests of the companies **Accent Delight International Ltd**, Jipfa Building, 3rd floor, 142 Main Street, Road Town, Tortola, British Virgin Islands and **Xitrans Finance Ltd**, Akara Bldg, 24 De Castro Street, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands. These companies are held by a trust under Cypriot law, one of the beneficiaries of which is Ms. Ekaterina Rybolovleva, of Swiss nationality, domiciled at 15-17, avenue d'Ostende, 98000 Monaco, daughter of Mr. Dmitriy Rybolovlev, of Russian nationality, domiciled at the same address.

The facts that I am sorry to be notifying to you are as follows.

### 1. The relationships between the parties concerned

1. Since 2010, Accent Delight International Ltd has acquired a very large collection of works of art through the intermediary of Mr. Yves Bouvier.

2. The latter is the head of the Geneva-based group Natural Le Coultre, traditionally active in transportation and moving, which operates three large depots at free ports in Geneva and, more recently, in Singapore, Luxembourg, Beijing and Shanghai. Mr. Bouvier is also apparently in the process of establishing a company in the Principality of (exhibit 1

15 rue pierre-fatio        t +41 22 354 12 12
case postale 3782          f +41 22 354 13 13
ch-1211 genève 3           www.cvpartners.ch
                           www.plg.eu.com



    attached).

3. Mr. Bouvier led Mr. Rybolovlev and Ms. Rybolovleva to understand that his position as depositor and transport agent of works of art for some of the greatest collectors in the world gave him unique and direct access to such collectors and the works which were not available on the market. Over the years, Mr. Bouvier managed to create a special relationship of trust with Mr. Rybolovlev, to such point that he attended all of Mr. Rybolovlev's birthday parties in recent years, even those only for a few select guests and taking place in Hawaii or New York. In connection with the acquisitions of the works of art described below, Mr. Bouvier enjoyed the absolute trust of the buyers and had sole responsibility for carry out the usual verifications, including concerning the price of each work, against remuneration specially agreed in this respect (cf. ch. 8 hereinbelow).

4. Before the acquisitions made by Accent Delight International Ltd, a company called Xitrans Finance Ltd, the beneficiary of which was originally (in 2004) Mr. Dmitriy Rybolovlev, before being then placed in trust (in 2005), also purchased through the intermediary of Mr. Bouvier a large number of works of art.

5. I attach the list of purchases made in this way by both Accent Delight International Ltd and Xitrans Finance Ltd (exhibit 2 attached).

6. For all of these acquisitions, Xitrans Finance Ltd and Accent Delight International Ltd were advised by Mr. Dmitriy Rybolovlev. It should be specified that these companies were and are held by family structures of which the beneficiaries were or are Mr. Rybolovlev and his daughter Ekaterina.

7. At the time of each of the transactions, it was Mr. Bouvier personally who conducted the negotiations until full execution with the different sellers. Mr. Rybolovlev, assisted by Mr. Mikhail Sazonov, manager of Family Office Barrhorn SA in Geneva, was in contact with Mr. Bouvier about the terms and conditions, in particular the price, of the transactions. Many discussions between Mr. Rybolovlev and Mr. Bouvier took place in Monaco, in particular during face-to-face meetings in Monaco on 30 June 2012, 31 August 2012, 26 September 2012, 13 March 2013, 18 August 2013 and 22 November 2014.

8. Generally there were no written sale agreements, except very occasionally between 2003 and 2006. However, each of the transactions generally gave rise to two invoices, the first concerning the sale itself, the second for the broker's fees ("miscellaneous administrative services and Due Diligence in connection with the acquisition of the work") by Mr. Bouvier. His fees were generally set at 2% of the sale price (exhibits 13.1 to 13.37 attached).

9. As a rule, the sale price was paid to MEI Invest Limited, to the account this company holds with CBH - Compagnie Bancaire Helvétique, 7, boulevard Jacques-Dalcroze, 1204



Geneva (Swift: BSSA CH GG/IBAN USD: CH35 0876 2000 1350 1000 2), while the broker's fees were paid to an account of Mr. Bouvier, firstly at the same bank (IBAN US$ CH07 0876 2000 1355 7000 2), then at HSBC Hong Kong, 1 Queen's Road Central, Hong Kong (account 838 037 117 888, Swift code: HSBCHKHHHKH).

10. As shown by the documents submitted and listed in the following paragraph and as Mr. Bouvier stated to Mr. Rybolovlev, all of the sale price of each of the transactions went to the seller, while Mr. Bouvier himself only received the amount of his commission set by mutual agreement, generally at the rate of 2% of the sale price. The correspondence sometimes sent between the parties attests to the foregoing, and it can be seen, for example, that Mr. Bouvier announces he is ready to waive some or all of his commission to encourage the conclusion of a sale or demonstrate his direct contacts with the sellers.

11. As examples, I submit the following, from among others:

    - The email from Mr. Bouvier to Mr. Sazonov of 10 April 2006 concerning the painting "*Mousquetaire à la pipe*" by Pablo Picasso: "*For your information, I will be in Paris today and tomorrow. I am going to organise my time to meet the owner and I stand as guarantor to avoid paying the 10% deposit*" (exhibit 3 attached).

    - The email from Mr. Bouvier to Mr. Sazonov of 23 December 2011 concerning the painting "*Nu couché au coussin bleu*" by Modigliani: "*The owner has bought a set of different works and for financial and tax reasons I think he is going to sell this very important painting*" (exhibit 4 attached).

    - The email from Mr. Bouvier to Mr. Sazonov of 24 December 2011 concerning the same painting: "*For the moment I have asked the owner's adviser to remove the painting from his home to show it to us*" (exhibit 5 attached).

    - The email from Mr. Bouvier to Mr. Sazonov of 7 February 2013 concerning the painting "*Au lit - Le baiser*" by Henri de Toulouse-Lautrec: "*As a reminder, the owner wanted to sell part of his collection, to buy an exceptional property in Paris to live in*" (exhibit 6 attached).

    - The email from Mr. Bouvier to Mr. Sazonov of the same date concerning the same painting: "*I had informed DR that after negotiation I had obtained an excellent and last price of €14m, because the seller had an investment opportunity*" (exhibit 7 attached).

    - The email from Mr. Bouvier to Mr. Sazonov of 15 November 2011 concerning the painting "*Le Domaine d'Arnheim*" by Magritte: "*For the Magritte, I need to act with the greatest discretion to avoid drawing attention to this painting and its owner and

3



*risking losing it to an auction*" (exhibit 8 attached).

- The email from Mr. Bouvier to Mr. Sazonov of 17 June 2010 concerning the painting "*Au lit - Le baiser*" by Henri de Toulouse-Lautrec: "*The owner is quite prepared to sell and in my opinion has already been approached. It is necessary to act quickly. I think I could get him to accept 20 E but I want to try lower with a fast payment*" (exhibit 9 attached).

- The email from Mr. Bouvier to Mr. Sazonov of 4 August 2014 concerning the purchase of the painting "*No 6, Violet, green and red*" by Rothko, the sale price of which is partly paid for by exchange of the statue "*Tête*" by Modigliani: "*I convinced the seller of the importance of Tête by Modigliani, and he agrees to take it in part exchange at €60m*" (exhibit 10 attached).

- The email from Mr. Bouvier to Mr. Sazonov of 28 December 2012 concerning the statue "*Tête*" by Modigliani: "*In order to remain within DR's budget of 36.5, I am waiving my fees on the total value of this purchase, so the total cost for DR is similar*" (exhibit 11 attached).

- The email from Mr. Bouvier to Mr. Sazonov du 24 September 2013 concerning the purchase price of the painting "*Wasserschlangen II*" by Klimt following a publication advertising a price lower than that for the transaction: "*If you have any doubt about the additional amount, I am prepared to provide you evidence of the transfer of the sums to the heirs of the despoiled family (14 people) on behalf of Sotheby's*" (exhibit 12 attached).

12. Mr. Bouvier, who was therefore the broker of my clients, was responsible for negotiating the price and thus had the duty to obtain, as he continually asserted, the best possible price for the buyers. Due to his privileged position as depositary and transport agent for works of art, he had direct contacts with the sellers or their representatives and thus enjoyed the possibility of conducting negotiations in the pursuit of these objectives, that is, mainly, obtaining the best prices and avoiding the multiplication of intermediaries. It was never a matter of Mr. Bouvier, whose commission was already high in view of the transaction amounts, obtaining another form of remuneration alongside the fees paid to him.

13. Payment of the sale prices was made to MEI's account because Bouvier, who required that this be the case, claimed that in this way he could ensure complete confidentiality, including for the two parties to the transaction.

14. Mr. Rybolovlev however recently discovered that in at least two sales, Mr. Bouvier very generously helped himself, because in addition to the commission which had been paid to him on the basis of the invoices submitted as exhibits 13.28 and 13.35, he had also

4



deducted a significant portion of the sale price, which was allegedly to be paid to the seller.

**2. An example: *Nu couché au coussin bleu* by Amedeo Modigliani**

15. This is what happened with the purchase of the painting *Nu couché au coussin bleu* by Amedeo Modigliani, bought, according to an invoice of 16 January 2012 (exhibit 13.28 attached) for the price of US$ 118,000,000.00, Mr. Bouvier received a commission of US$ 2,360,000.00, according to an invoice of 13 March 2012 (exhibit 13.28 attached). In parallel, he secretly deducted an amount of at least US$ 20,500,000.00, which Mr. Rybolovlev learned on 31 December 2014 during a meeting with the art adviser Mr. Sandy Heller, 745 Fifth Avenue, 4th floor, New York NY 10151, USA. In particular, he advises the seller Mr. Steven Cohen, 30, Crown Lane, Greenwich, Connecticut 06831, USA. On this occasion, Mr. Heller revealed to Mr. Rybolovlev that in reality Mr. Cohen had not received the sale amount announced by Mr. Bouvier of US$ 118,000,000.00, but an amount of US$ 93,500,000.00 on the evidence of two agreements I hereby submit (exhibits 16 and 17 attached).

16. For this sale, Mr. Cohen was represented by a certain Joachim Pissarro, who himself received a commission of US$ 4,000,000.00, according to the information obtained by Mr. Heller. Depending on whether or not Mr. Pissarro's commission was or was not deducted from the amount owed to Mr. Cohen, the amount unduly obtained by Mr. Bouvier was at minimum US$ 20,500,000.00, or US$ 24,500,000.00.

17. I am submitting the emails exchanged at the time, which show us that Mr. Bouvier relied on very close contacts with the owners of the abovementioned Modigliani painting (exhibits 4 and 13.28 attached, cf. also ch. 11 above). Another email from Mr. Bouvier demonstrates that he knew Mr. Pissarro personally and, consequently, could not ignore his role in the transaction in question (exhibit 14 attached).

**3. Another example: *Salvator Mundi* by Léonard da Vinci**

18. A second transaction in which the same situation occurred was the purchase of the painting *Salvator Mundi* by Léonard da Vinci. The sale took place in early 2013. It was billed in an invoice of 3 May 2013 for an amount of US$ 127,500,000.00, which was duly paid, and Mr. Bouvier's broker fees for an amount of US$ 1,275,000.00 in an invoice of 1 July 2013 (exhibit 13.35 attached).

19. In an article published in the New York Times on 3 March 2014 (exhibit 15 attached), of which Mr. Rybolovlev only became aware recently, it is stated that the sale price of the abovementioned da Vinci painting, sold in May 2013, through the intermediary of Mr. Bouvier to Accent Delight International Ltd was in the range of US$ 75,000,000.00 to US$ 80,000,000.00, which represents a difference to the tune of US$ 50,000,000.00.



20. Other than the fact that the beneficiaries of the trusts owning the companies buying the works of art listed in exhibit 2 are both domiciled in Monaco, a significant part of the discussions conducted between Mr. Rybolovlev and Mr. Bouvier took place in Monaco at the latter's home and sometimes in the stands of the Louis II where Mr. Bouvier visited his contact at football matches.

21. As the meeting with Mr. Heller took place just a few days ago, my clients and their representative, Mr. Rybolovlev, have not contacted Mr. Bouvier to obtain explanations from him, preferring, for obvious reasons of discretion and efficiency, to take the legal path.

**4. The measures requested**

22. Subject to what is revealed by examination of the other transactions, it can already be seen that, for these two sales the offences of forgery and fraud are realised as, very simply, the invoice connected to the sale does not show the real price, firstly, and through this subterfuge and through the requirements for discretion imposed, which offered Mr. Bouvier a privileged position between the two parties to the agreement, and there was harmful misleading concerning the sale price itself, secondly. There are well-founded fears that Mr. Bouvier may have secretly withheld part of the sale price connected to all the other acquisitions listed in exhibit 2. Extrapolating from the above two examples, the sums withheld in this way by Mr. Bouvier are likely to be very high and could exceed in total several hundred million euros.

23. Kindly order the opening of an inquiry and request immediately the cooperation of the Swiss and Hong Kong authorities in order to **obtain all bank documentation (showing all movements on the accounts in question from their opening until this date)**

   - account CH07 0876 2000 1355 7000 2 with
     CBH - Compagnie Bancaire Helvétique
     7, boulevard Jacques-Dalcroze, 1204 Geneva
     Swift code: BSSA CH GG
     IBAN Code US$ CH07 0876 2000 1355 7000 2
     Account holder: Yves Bouvier

   - account CH35 0876 2000 1350 1000 2 with
     CBH - Compagnie Bancaire Helvétique
     7, boulevard Jacques-Dalcroze, 1204 Geneva
     Swift code: BSSA CH GG
     IBAN Code US$ CH35 0876 2000 1350 1000 2
     Beneficiary: MEI Invest Limited



    -   account 838 037 117 888 with
        HSBC Hong Kong
        1 Queen's Road Central, Hong Kong
        Swift code: HSBCHKHHHKH
        Account 838 037 117 888
        Account holder: Yves Bouvier

in order to determine the destination of the sums paid by my representatives.

It would be appropriate to ask the Swiss and Hong Kong authorities to order that **the holders and economic beneficiaries of the specified accounts not be informed of the measures taken,** so that the final destination of the funds can be traced.

It goes without saying that my clients, along with Mr. Mikhail Sazonov and Mr. Dmitriy Rybolovlev, are at your disposal and at the disposal of the investigators to confirm their claim and provide any further useful information.

Accent Delight International Ltd and Xitrans Finance Ltd declare **that they wish to institute civil proceedings as claimants.**

Thank you for your time. Yours faithfully,

                                                                               [signature]
                                                                               Tetiana Bersheda

Appendix: - list of exhibits numbered 1 to 17

# LIST OF EXHIBITS

## ACCOMPANYING CLAIM OF 9 JANUARY 2015

---

1. Article published in Le Temps (Geneva) on 31 January 2014 concerning Mr. Yves Bouvier and his professional activities.

2. The list of words of art owned by Xitrans Finance Ltd and Accent Delight International Ltd.

3. The email from Mr. Bouvier to Mr. Sazonov of 4 October 2006 concerning the painting "Mousquetaire à la pipe" by Pablo Picasso.

4. The email from Mr. Bouvier to Mr. Sazonov of 23 December 2011 concerning the painting "*Nu couché au coussin bleu*" by Modigliani.

5. The email from Mr. Bouvier to Mr. Sazonov of 24 December 2011 concerning the same painting.

6. The email from Mr. Bouvier to Mr. Sazonov of 7 February 2013 concerning the painting "*Au lit - Le baiser*" by Henri de Toulouse-Lautrec.

7. The email from Mr. Bouvier to Mr. Sazonov of the same date concerning the same painting.

8. The email from Mr. Bouvier to Mr. Sazonov of 15 November 2011 concerning the painting "*Le Domaine d'Arnheim*" by Magritte.

9. The email from Mr. Bouvier to Mr. Sazonov of 17 June 2010 concerning the painting "*Au lit - Le baiser*" by Henri de Toulouse-Lautrec.

10. The email from Mr. Bouvier to Mr. Sazonov of 4 August 2014 concerning the purchase of the painting "*No 6, Violet, green and red*" by Rothko, the sale price of which is partly paid for by exchange of the statue "*Tête*" by Modigliani.

11. The email from Mr. Bouvier to Mr. Sazonov of 28 December 2012 concerning the statue "*Tête*" by Modigliani.

12. The email from Mr. Bouvier to Mr. Sazonov of 24 September 2013 concerning the purchase price of the painting "*Wasserschlangen II*" by Klimt following a publication advertising a price lower than that for the transaction.

13. The files (purchases invoices, invoices for Mr. Bouvier's broker commission and correspondence) in connection with the works of art acquired through the intermediary of Mr. Bouvier for:

    - **Xitrans Finance Ltd**

      1. Landscape with an Olive Treer - Vincent Van Gogh
      2. Les Noces de Pierrette - Pablo Picasso
      3. Nu couché aux bras levés - Amedeo Modigliani
      4. Mousquetaire à la pipe - Pablo Picasso
      5. Jeune fille blonde en buste - Amedeo Modigliani
      6. Madame Hébuterne aux Epaules nues - Amedeo Modigliani
      7. Nu dolent - Amedeo Modigliani
      8. Dancer in Pink - Edgar Degas
      9. La sœur de l'artiste - Pablo Picasso
      10. Te Fare (La Maison) - Paul Gauguin
      11. Vénus (Nu debout, Nu Médicis)
      12. No. 1 - Mark Rothko
      13. Water Lilies - Claude Monet
      14. Water Lilies - Claude Monet
      15. Le Baiser - Toulouse-Lautrec
      16. Set of furniture
      17. Gold-effect wooden table

    - **Accent Delight International Ltd**

      18. Joueur de flûte et femme nue - Pablo Picasso
      19. St Sebastian - El Greco
      20. Jeunes filles au bord de l'eau - Renoir
      21. L'homme assis au verre - Pablo Picasso
      22. The Mediterranean (Bronze) - Aristide Maillol
      23. The Kiss (bronze) - Auguste Rodin
      24. Nude with a Green Shawl - Henri Matisse
      25. Eternal spring (marble) - Auguste Rodin
      26. Femme de Venise IX - Alberto Giacometti
      27. The Domain of Arnheim - Magritte
      28. Nu couché au coussin bleu - Amedeo Modigliani
      29. Eve - Auguste Rodin
      30. Portrait of Madonna and the Child - El Greco
      31. Water Serpents II - Gustave Klimt
      32. Tête - Amedeo Modigliani

    33.    Au Lit: Le Baiser - Toulouse-Lautrec
    34.    Tête de femme/Espagnole à l'éventail - Pablo Picasso
    35.    Christ as Salvator Mundi - Leonardo da Vinci
    36.    Otahi (Alone) - Paul Gauguin
    37.    No. 6, Violet, green and red - Mark Rothko

14. The email from Mr. Yves Bouvier to Mr. Mikhail Sazonov of 28 January 2013 introducing Mr. Joachim Pissarro.

15. Article published in New York Times of 3 March 2014 concerning the sale of the work "*Salvator Mundi*" by Leonardo da Vinci.

16. Sale agreement for 37.44% of the ownership rights to the painting "*Nu couché au coussin bleu*" by Amedeo Modigliani dated 24 January 2012 and signed by Mr. Steven Cohen and Mr. Giraud Pissarro Segalot L.P.

17. Sale agreement for 62.56% of the ownership rights to the painting "*Nu couché au coussin bleu*" by Amedeo Modigliani dated 17 December 2011 and signed by Mr. Steven Cohen and Acquavella LLC.