G5V9ACCM

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE:  ACCENT DELIGHT
    INTERNATIONAL LTD., XITRANS
4   FINANCE LTD. ,

5                                        16 MC 125 (JMF)

6

    ------------------------------x
7                                        New York, N.Y.
                                         May 31, 2016
8                                        11:06 a.m.

9   Before:

10                      HON. JESSE M. FURMAN

11                                              District Judge

12                         APPEARANCES

13  EMERY CELLI BRINCKERHOFF & ABADY, LLP
         Attorneys for Accent Delight International Ltd.
14  BY:  DANIEL JOSEPH KORNSTEIN
             OGILVIE ANDREW FRASER WILSON
15           DOUGLAS LIEB

16  GOODWIN PROCTER, LLP
         Attorneys for Respondents Warren Adelson, Alexander
17  Parish, Robert Simon
    BY:  HENRY C. DINGER
18           STEVEN J. COMEN

19  ARNOLD & PORTER, LLP
         Attorneys for Respondent Sothebys
20  BY:  MARCUS ASNER
             ALEXANDRA MITTER

21

22  MCKOOL SMITH
    BY:  DANIEL LEVY
23           REBECCA MATSUMURA
                      and
    SOFFER ADVOCATS
24  BY:  RON SOFFER
    Attorneys for Respondents Yves Bouvier; MEI Invest Ltd.

25

G5V9ACCM

```
 1              (In open court; case called)
 2              THE COURT:  Good morning to all of you.  I should note
 3     by way of background that Mr. Levy and Mr. Asner were both
 4     colleagues of mine at the U.S. Attorney's Office.  I don't see
 5     any reason why I can't preside over this matter but I do want
 6     to make sure everyone knows that.  With that, let's get into
 7     where things stand.
 8              As I mentioned, I am going to grant the intervenor's
 9     motion to intervene as unopposed and substantially for the
10     reasons set forth in their memorandum of law that's docket
11     number 21 at pages 12 to 13.  That is the easy part.
12              Then we have the 1782 motion itself and connected to
13     that the proposed orders between petitioners and Sotheby's.
14     Let me tell you where I stand on those and then give all sides
15     an opportunity to be heard.
16              First I am inclined to grant the application with
17     respect to the two Picasso paintings at issue in the Paris
18     proceedings.  Indeed, I don't really read the intervenor's
19     memorandum to be opposing that, though perhaps that's wrong and
20     Mr. Levy can clarify.  But I am inclined to grant the
21     application but only to that extent at the present time.
22              Other than that, I am inclined to stay the motion and
23     by extension defer signing either of the proposed orders in
24     connection with the agreement between petitioners and Sotheby's
25     pending either or both a resolution of the pending appeal or
```

G5V9ACCM

1    appeal issues in the Singapore proceedings or further

2    clarification of the status of the Monaco proceedings from the

3    investigating magistrate there on the ground that whether the

4    use requirement, the for use requirement can be met with

5    respect to either of those proceedings may turn on either the

6    outcome of the forum non conveniens litigation or clarification

7    of the status of the petitioners in the Monaco proceedings.

8           I do not think that the Paris proceeding, which would

9    presumably be unaffected by any decision in Singapore, provides

10   a basis for broader discovery than with respect to the two

11   paintings that are already discussed largely, in my view, by

12   virtue of the Second Circuit's decision in the *Certain Fund v.*

13   *KPMG* case; all of which is to say that, to the extent that

14   petitioners are entitled to broader discovery, my inclination

15   is to think that it probably would be worth waiting further

16   developments in either or both the Singapore proceeding or the

17   Monaco proceeding.

18          So that's sort of just by way of background as to

19   where I stand at the moment and my current inclinations.  I

20   want to emphasize that they are just inclinations at this point

21   and in that regard I may change my view and will certainly

22   listen to your arguments as to whether and to what extent I

23   should.

24          Let me turn first to you, Mr. Kornstein, since it is

25   your motion and ask you:  Number one, what the harm would be in

G5V9ACCM

proceeding in the way I described; namely, staying and

deferring decision on broader discovery until after things play

out in Singapore or Monaco.

         I should also ask, since it seems like there are

developments in this case in real time and things were --

briefing was taking place, I don't know if there's any further

updates since the most recent submission, but if there are you

should let me know that as well.

         MR. KORNSTEIN:  Thank you, your Honor.

         I think the reasons your Honor --

         THE COURT:  Just make sure you speak directly into the

microphone.  The acoustics in here are not great.  I just want

to make sure that everyone can hear you.

         Go ahead.

         MR. KORNSTEIN:  Very well, your Honor.

         I think the reasons your Honor gave are actually

reasons to grant the discovery.  Because things are happening

in the other foreign proceedings that's why the discovery is

needed.

         In Monaco, I think, your Honor is referring, because

it was the only issue raised by the intervenors, that they

questioned whether the petitioners needed to withdraw the case

entirely from Monaco, which was a criminal case, rather than

just saying that they were withdrawing the civil claims for

damages.

G5V9ACCM

1          They have withdrawn their claim for money damages.

2     The Singapore court has said that that satisfies the condition

3     for the denial of the forum non conveniens motion and the

4     Monaco case is proceeding.  That's a criminal case.

5          And under the Monaco law the complainant, who is a

6     civil party, can participate in that case; can provide

7     information, can work with the prosecutor, the investigating

8     magistrate.  That's what's happening here.

9          THE COURT:  Let me ask you:  First, assuming that you

10    remain parties to the Monaco proceedings in the extent to which

11    you are currently a party to those proceedings, is it correct

12    that under Monaco -- or there was some adjective used for

13    Monaco.

14          MR. KORNSTEIN:  Monégasque.

15          THE COURT:  Which was new to me, and an interesting

16    thing to learn in this briefing.  Under Monégasque law, is it

17    correct that you can inject the evidence that you would get in

18    connection with the discovery here into those proceedings even

19    if you're not technically prosecuting the proceedings?

20          MR. KORNSTEIN:  The answer is yes.

21          The use of the word "inject" is one of those words

22    that has many connotations unto it.  You can, as a complaining

23    party, as a civil party, give the evidence to the prosecutor,

24    can participate in the process, have access to the criminal

25    file.  It's almost as if it's a co-party to the litigation.

G5V9ACCM

1          So the answer to your Honor is yes even though it may

2     be that as a civil party you are not the one presenting

3     evidence but, as the cases make clear, it's not simply the

4     matter of presenting evidence in court that is the limited

5     scope of for use.

6          THE COURT:  No.  But there is a spectrum here, right.

7     And I agree with you that it doesn't rise to the level of

8     giving you procedural rights to present evidence in court and

9     certainly the Second Circuit has made clear that the

10    admissibility of the evidence is not something that I should be

11    considering in this context.

12         The other end of the spectrum, or at least somewhere

13    along that spectrum, the Second Circuit in *Certain Fund v. KPMG*

14    says that merely -- essentially the ability to merely give

15    evidence to a prosecutor or to an investigating magistrate with

16    the hope that it might be used in the proceeding is not enough

17    to satisfy the for use requirement.

18         Why is it not there on the spectrum as opposed to

19    closer to the four use end of the spectrum?

20         MR. KORNSTEIN:  Another case, *Berlamont*, talks about

21    being able to supply information in a criminal case as this

22    kind of civil party use because of the role of the civil party

23    in a criminal case in Monaco.  It is not, like here, where

24    you're just a victim and you supply evidence that may or may

25    not be used.  It is actually being a co-party with the

G5V9ACCM

| | |
|---|---|
| 1 | investigating magistrate, with the court.  It is participating |
| 2 | in the investigation.  It is helping the investigation, not |
| 3 | simply a matter of giving information in the hope that it might |
| 4 | be used. |
| 5 | THE COURT:  Is there some procedural mechanism under |
| 6 | Monégasque law that allows you in the posture you're currently |
| 7 | in to make use of the evidence in a way that is different than |
| 8 | just simply passing it along to the investigating magistrate |
| 9 | with the hope that it will be used. |
| 10 | MR. KORNSTEIN:  My understanding is yes because there |
| 11 | is almost a collaboration between the civil party in this |
| 12 | criminal case and the prosecutor itself. |
| 13 | THE COURT:  Let me backup and just clarify one thing |
| 14 | that I think is a threshold consideration here which is my |
| 15 | understanding, and correct me if I'm wrong, about the posture |
| 16 | of the Monégasque proceedings -- now that I know that word I |
| 17 | will use it as much as I can -- is that the magistrate there -- |
| 18 | well, that you presented letters to the investigating |
| 19 | magistrate essentially withdrawing any claims for damages or |
| 20 | something akin to that, and that the Singapore court has said |
| 21 | that that satisfies them, but that the last word from the |
| 22 | investigating magistrate in Monaco was that in his view -- I |
| 23 | think it's a he -- that that might not suffice; that complete |
| 24 | discontinuance pursuant to Article 79 of the code of criminal |
| 25 | procedure might be required. |

G5V9ACCM

1          Am I correct that that's the last word on this issue

2      from the investigating magistrate, in which case I guess the

3      question I have is:  Why not await clarification from the

4      magistrate as to whether he is satisfied with the Singapore --

5      the fact that the Singapore courts don't need you to go any

6      further than you have gone?

7          MR. KORNSTEIN:  You are correct that that is the last

8      word from the investigative magistrate in Monaco.  But the

9      sequence of the letters is significant as well as current

10     developments.

11         The first letter, which was earlier in April,

12     notifying the investigating magistrate that the civil claims

13     damages was being withdrawn, perhaps was ambiguous or unclear.

14     That was the one that the investigating magistrate wrote back

15     to and said what he said about full discontinuance under

16     Article 79.

17         But then the counsel in Monaco for the petitioners

18     wrote back and clarified exactly what the position was.  And

19     the investigating magistrate -- that was April 15.  The

20     investigating magistrate has not written back.

21         On May 4 the Singapore court said, yes, that satisfied

22     the condition as far as Singapore was concerned.  And the

23     Monaco magistrate may have nothing else to say about it in

24     terms of satisfying the Singapore condition.

25         THE COURT:  He may not but I guess the question I

G5V9ACCM

1    have, going back to my initial inclination, is why not await

2    further word from him and why not wait for him to respond to,

3    it sounds like the most recent letter, saying this is -- or I

4    don't know if there's a letter that informs him that the

5    Singapore courts are satisfied with how far you've gone, and

6    get confirmation from him that as far as he's concerned you

7    remain parties with whatever rights under Monégasque law you're

8    entitled to assert.

9            MR. KORNSTEIN:  Your Honor, the last letter was sent

10   April 15 so it's already a month-and-a-half.

11           THE COURT:  So why haven't you updated him about the

12   Singapore court's views on this since they're unchanged as of

13   May 4.  No?

14           MR. KORNSTEIN:  I suppose the situation is happy the

15   way it is as far as our people are concerned; that everybody

16   has stated their position, the Monégasque magistrate has not

17   said anything differently.  The case is proceeding in Monaco.

18           THE COURT:  Answer my first question which is:  What's

19   the prejudice from staying my decision on your motion pending

20   further clarification either through the Singapore litigation

21   or through some sort of further word from the Monaco

22   magistrate?

23           MR. KORNSTEIN:  The passage of time by itself is

24   prejudicial.  The information that we seek would have been very

25   useful even earlier in all of the cases, as your Honor knows.

G5V9ACCM

1   Your Honor had an opportunity to read the decision in Singapore

2   and so on.  They were talking about merits, talking about the

3   facts.  The information that we're seeking here is core

4   information that so far has been withheld by Mr. Bouvier.

5          THE COURT:  But I assume we're talking about a mere

6   matter of weeks or possibly at most months, correct?

7          MR. KORNSTEIN:  Hopefully even sooner.

8          THE COURT:  Okay.  So is there any harm in waiting

9   weeks -- weeks or months?

10          MR. KORNSTEIN:  Just more time going by without

11   acquiring the information.  And as far as we're concerned the

12   situation is clarified.

13          THE COURT:  I understand.  But I'm not inclined to

14   think that at the moment.

15          What's your expectation or understanding of how long

16   it would take the Singapore court to decide whether to grant

17   leave to appeal the forum non conveniens decision?

18          MR. KORNSTEIN:  That is less clear to me.  Though what

19   happened, Bouvier and his colleagues made a motion to stay

20   combined with a forum non conveniens motion.  That was denied

21   in March.  They made a motion for leave to appeal.  That was

22   denied on May 4.  They have now made another motion for leave

23   to appeal to the next higher court.  That is pending.  And

24   Mr. Bouvier has made a motion to stay his requirement to file

25   what would be analogous to our answer, hasn't even answered in

1   the case yet because of the stall tactics.

2              I don't know the precise answer to your question as to

3   when the decision on the motion for leave to appeal currently

4   pending, which is including the stay, would be made.  There is

5   no stay now.

6              THE COURT:  That is my other question, which is:  What

7   does that mean?  My understanding is that there was an

8   application for a stay, and this is from I think the

9   intervenor's reply brief, that there was an application for an

10  interim stay that it was put off -- it was scheduled for May 20

11  but that the Singapore court put it off for scheduling reasons

12  and that in the meantime there was an agreement that the

13  intervenors didn't need to answer and essentially there is a

14  sort of temporary stay pending the application for an interim

15  stay.

16             So do you know when that will be heard, how quickly

17  that will be decided; and if the application for a stay is

18  denied, does that mean, as it would be here, that the

19  litigation will proceed in the trial court even as the leave to

20  appeal is adjudicated?

21             MR. KORNSTEIN:  That's my understanding, your Honor,

22  as you stated it.

23             One other factor.  Yesterday there was a hearing in

24  Singapore about a different issue as to whether the case should

25  be transferred to a Singapore International Commercial Court.

12

G5V9ACCM

1    Bouvier opposed that even being considered.  The judge decided

2    to put off that question pending the outcome of the motion for

3    leave to appeal and motion for the interim stay.  I wanted to

4    inform the court about that.  It just happened.

5            THE COURT:  Does that just pertain to what court the

6    case will proceed in if it proceeds in Singapore at all?

7            MR. KORNSTEIN:  Correct.

8            THE COURT:  Does that have any bearing on my --

9            MR. KORNSTEIN:  No.  But I wanted to disclose it so

10   you heard it from me and it's out there.

11           THE COURT:  Okay.  Anything else you want to say?

12   Otherwise, I'll turn to Mr. Levy.

13           I think your colleague wants you to look at the

14   Post-It.

15           MR. KORNSTEIN:  The other aspect of for use is it can

16   be used by counsel in preparing cases.  That's within the scope

17   of the for use definition.  And certainly regardless of whether

18   there's an actual stay or not, whether the case is proceeding

19   quickly or not, whether it can be used in court or not, it's

20   important, just as part of an attorney's utility in the

21   toolbox, it's part of the work product, to help plan the case.

22   This is a litigation brought on several fronts.  And the

23   information we're being -- we're trying to get and which one of

24   the respondents has agreed to produce should make it a little

25   bit easy for the court to rule on that.

G5V9ACCM

1          THE COURT:  Wet it doesn't necessarily make it easier

2     for me to decide whether you've met the statutory requirements

3     which I do.  My problem with that argument, and I will give you

4     an opportunity to respond, is twofold.  One is the principle

5     that pending litigation needs to just be in reasonable

6     contemplation comes from the Supreme's Court decision in *Intel*.

7     I think there it was in the context of a discussion about

8     essentially what types of proceedings qualify as foreign

9     proceedings not necessarily what qualifies as use.  And my

10    concern is that extending it to what qualifies as use, that it

11    just simply be something that a lawyer may find helpful in

12    foreign litigation in some inchoate respect would basically

13    read the for use requirement out of the statute and make it

14    available in almost any proceeding.

15         Second, in *KPMG*, the *Certain Funds v. KPMG* decision,

16    the Second Circuit separated its discussion of the pending

17    foreign proceedings was one section of the opinion, and then in

18    the second section of the opinion it discussed contemplated

19    proceedings basically proceedings that have not yet been

20    initiated.  And I read that, at least implicitly, as

21    essentially saying that those are two different categories

22    altogether and that in reasonable contemplation isn't the

23    standard to use with respect to current pending litigation.

24    And in that regard it's not enough with respect to pending

25    litigation for a lawyer simply to say that we might be able to

G5V9ACCM

1    put this to use.

2              What's your answer to both of those points?

3              MR. KORNSTEIN:  We have a situation where all of the

4    foreign proceedings exist and are ongoing so it's not

5    reasonably contemplated.  We don't need to get there.

6              I don't think the reasonable contemplation standard

7    was meant to say with existing foreign proceedings how the

8    lawyer would use that.  I thought that was applying to a

9    proceeding that was reasonably contemplated, not the use.

10             THE COURT:  That's my point.

11             My point is that it doesn't apply to the use.  And

12   with respect to the use in pending current proceedings you need

13   to show the ability to inject it into those proceedings.  And

14   right now there is sufficient question about whether you can,

15   given the ongoing litigation on forum non conveniens grounds in

16   Singapore and given the uncertainty about your status in the

17   Monégasque proceedings.  That's my point.

18             So I'm not sure that pointing to or that reliance on

19   the cases about the fact that there doesn't even need to be a

20   proceeding gets you very far.  I see those cases as sort of in

21   a different box altogether.  That's my point.

22             MR. KORNSTEIN:  I think part of the problem is the use

23   of the word, primary use of the word inject.  Inject may carry

24   a connotation more direct and more severe than what for use

25   actually means.  And I think, as the cases say, it was a term

G5V9ACCM

1    or phrase used in the case but it means used for the case, used

2    in the case, injected.  It doesn't have a legal meaning.  It's

3    not like admit into evidence.  It's not like put into a motion.

4    It really means just useful for the case.

5            What we're talking about is core information here.

6    We're not talking about things on the periphery.

7            THE COURT:  Thank you.

8            Mr. Levy.

9            MR. LEVY:  Yes, your Honor.

10           Just a few things.  I think your Honor hit the nail on

11   the head when you used the phrase from KPMG concerning

12   injecting information into the proceedings.  I don't think

13   there is -- when there is litigation already pending, I don't

14   think assisting counsel in conducting an investigation is what

15   the Second Circuit meant when they used the phrase inject into

16   the proceeding with some advantage.

17           I did want to comment on a couple of things that

18   Mr. Kornstein mentioned in his colloquy with the court.

19           Your Honor asked about whether the Singapore judge's

20   decision to not transfer the case to the Singapore

21   International Commercial Court had any bearing.  I think it

22   does because what -- the effect that it has is that the case

23   with respect to the merits, is not before any court at this

24   time.  The judge in Singapore held on to the case.  And once

25   leave to appeal has been decided, then she will decide whether

G5V9ACCM

1    to transfer it to the International Commercial Court or not.

2    At this point the merits are not being litigated and that's the

3    primary goal of counsel's -- excuse me, of petitioner's

4    application.

5              THE COURT:  Let me ask you a couple of questions.

6              First, am I right that you don't really oppose the

7    motion with respect to the two Picasso paintings at issue in

8    the Paris proceedings; is that correct?

9              I know you take the view that Sotheby's may not have

10   any responsive materials with respect to those two paintings.

11   That's a separate issue.

12             MR. LEVY:  I think on this one Mr. Asner has confirmed

13   for us, the intervenors, that they have the one e-mail that

14   Mr. Kornstein attached to his application; and if that's all

15   that the court has -- excuse me, if the court has only -- is

16   only intending to order that the documents that Sotheby's has

17   with respect to those two Picasso pictures be produced, then we

18   would not object subject to some conditions about how it can be

19   used.  We have put in, in our briefs some discussion about the

20   limits that we think it should be used for.  And we submit that

21   it should only be used for the proceedings for which it was

22   obtained.  It should not be used for other proceedings,

23   potential proceedings to be brought.  We submit that that's

24   beyond the scope of 1782 in this context.

25             THE COURT:  Okay.  Next question is do you agree that

G5V9ACCM

1    if the forum non conveniens issue is resolved against you, that

2    is to say that Singapore court denies leave to appeal, the

3    denial of the forum non conveniens motion, then the case will

4    proceed in Singapore, in whatever court it will proceed, that

5    the Singapore proceedings would satisfy the statutory

6    requirements of 1782?

7             MR. LEVY:  The Singapore proceedings we believe would

8    likely satisfy the statute.  The question is sort of what is

9    the posture in which the litigation is going to be continue.

10   We don't know.  There's a substantial amount of uncertainty.

11   But I think --

12            THE COURT:  But I would -- it's a very straightforward

13   question.  Right now the motion to dismiss on forum non

14   conveniens ground was denied, correct?

15            MR. LEVY:  The motion to dismiss was denied and

16   Mr. Bouvier and MEI have sought leave to appeal.  And that

17   application is pending before the court of appeal in Singapore.

18            THE COURT:  And if that motion is denied then the case

19   would proceed in Singapore?

20            MR. LEVY:  Then the case would proceed in Singapore.

21   And there are very liberal rules about discovery in Singapore.

22   And it's reasonably likely that Mr. Bouvier would need to

23   produce this material without resort to 1782.  He would simply

24   have to provide it.  In fact, much of the information that the

25   petitioner is seeking was produced by Mr. Bouvier already under

1   seal in Singapore.  So it wouldn't be necessary because there

2   are liberal discovery rules in Singapore.  And at that point it

3   may be that Mr. Bouvier himself has to provide that -- the

4   information that's within his possession.

5          THE COURT:  That is relevant to the discretionary

6   factors under *Intel*.  It's not relevant to the statutory

7   factors.

8          The simple question I'm asking is if the motion for

9   leave to appeal the forum non conveniens motion is denied, do

10  you concede that the statutory factors for 1782 are met?

11         MR. LEVY:  May I have one moment?

12         THE COURT:  Yes.

13         (Pause)

14         MR. LEVY:  We submit that it -- it would satisfy the

15  statutory factors.  I think the questions about the

16  discretionary factors obviously would be still substantially in

17  play in part because Mr. Bouvier has already had to produce

18  some of this information in Singapore.  But it would be -- at

19  that point the merits would be joined, for lack of a better

20  term, and the parties would litigate the case in whatever court

21  the court of appeals determines that it should be litigated in.

22  It may, in fact, end up not being Singapore.  It may be

23  Switzerland.

24         THE COURT:  Not if the motion for leave to appeal is

25  denied.

G5V9ACCM

1        MR. LEVY:  Correct.

2        THE COURT:  Then it would proceed in Singapore.

3        MR. LEVY:  Correct.  Yes.

4        One additional caveat, of course, is that 1782, in our

5   view -- I think we've provided ample support for this -- in our

6   view only reaches documents located in the United States.

7        THE COURT:  I understand.

8        My question is simply with respect to the three

9   statutory factors in 1782, just pinning you down and confirming

10   that if the motion is denied for leave to appeal, that we can

11   all agree that those three conditions are then met, and then we

12   can address whether the discretionary considerations cut in

13   your favor or against and also whether and to what extent the

14   scope needs to be limited to documents and other discovery in

15   the United States.  It's just the three statutory factors.

16        And I take you as grudgingly conceding that those

17   would be met.

18        MR. LEVY:  Not so grudgingly but with those

19   reservations.

20        THE COURT:  Not so conceding either.

21        MR. LEVY:  Touche.  Yes.

22        We, at that point, whatever documents could be

23   obtained under 1782 would be for use if the merits end up

24   needing to be litigated in Singapore.

25        THE COURT:  Next question for you is in the case that

G5V9ACCM

1    Judge Cote decided that both sides have addressed in their

2    briefs, am I correct that you argued that the Monaco

3    proceedings in that case, quote unquote, easily satisfied the

4    for use requirement of the statute; is that correct?

5              MR. LEVY:  We did.

6              THE COURT:  And that was true notwithstanding the fact

7    that there was a pending motion to dismiss in that case; is

8    that correct?

9              MR. LEVY:  Yes.  We did.

10             And the reason why was because Mr. Bouvier is very

11   much differently situated in the Monaco proceedings than the

12   petitioners are.

13             Also, I should point out that prior to the time that

14   the motion was heard, the motion in the Monaco court had been

15   denied.  And we informed the court of that.  So --

16             THE COURT:  But then sought leave to appeal that

17   denial, correct?

18             MR. LEVY:  No.

19             THE COURT:  My understanding is --

20             MR. LEVY:  It was denied by the court in Monaco.

21             THE COURT:  Right.  But I think then that decision,

22   the denial was then appealed to some appellate tribunal in

23   Monaco.  Is that incorrect?

24             MR. LEVY:  Let me just clarify with Mr. Soffer.  I

25   believe it was the highest court in Monaco that denied the

G5V9ACCM

1    motion but let me just clarify with Mr. Soffer who was part of

2    those proceedings.

3                (Pause)

4                Mr. Soffer clarifies for me that it was the highest

5    court in Monaco that denied the motion.  So that was the end of

6    the line of motion practice in Singapore.  And it occurred

7    prior to the time that Judge Cote heard the application in this

8    court.

9                THE COURT:  But after your brief had been submitted

10   saying that the for use requirement was easily satisfied

11   notwithstanding the pending motion; is that correct?

12               MR. LEVY:  Correct.  And that's because the

13   investigation in Monaco was ongoing and it wasn't stayed as a

14   result of the fact that there was a motion pending in the court

15   in Monaco.

16               THE COURT:  So my question for you is why doesn't that

17   argument apply equally to the Singapore proceeding here since

18   there is a motion pending, the motion for leave to appeal the

19   denial of the forum non conveniens motion, but it's basically

20   pure speculation whether you'll get relief in that regard and,

21   pending that, that the case is not stayed.  So why is it not

22   the same posture in Singapore that the proceedings were in

23   Monaco for your purposes before Judge Cote?

24               MR. LEVY:  The merits of the case are not before the

25   court in Singapore; whereas, the investigation was ongoing in

G5V9ACCM

1    Monaco while the motion practice was occurring.

2          So Mr. Bouvier had the right to inject whatever

3    information he obtained in New York all during the entirety of

4    the proceedings in Monaco; whereas, it's quite a bit different

5    here, where the petitioners would not have the ability and do

6    not have the present ability to inject information they obtain

7    here in the proceedings in Singapore.

8          So Mr. Bouvier, for example, was on bail in Monaco

9    while the motion was pending and he could have, depending on

10   the information sought -- excuse me, depending on the

11   information obtained, sought a modification of his bail.  He

12   had plenty of ability to inject the information into the

13   proceedings in Monaco while that motion was pending; whereas

14   here the petitioners don't have the ability to inject the

15   information into the proceedings in Singapore while this leave

16   to appeal decision is before the court of appeal in Singapore.

17         THE COURT:  And what is your legal basis under

18   Singapore law for saying that; which is to say, my

19   understanding is that there is an interim application for a

20   stay that was scheduled to be heard on May 20 and was put off

21   for some sort of scheduling reason and, therefore, has not yet

22   been adjudicated, but I would infer from that that because

23   you're applying for a stay under Singapore law, that it follows

24   that at present there is no stay under Singapore law, which

25   presumably means, if it's similar to litigation here, that the

G5V9ACCM

1    merits are before the trial court.  Whether the trial court is

2    moving the case along or not, the merits are still proceeding.

3    The trial court has not divested its jurisdiction to adjudicate

4    the merits.  If that's the case, then what's the provision of

5    Singapore law that says that they cannot inject the evidence in

6    these proceedings at the moment?

7         MR. LEVY:  Two things.  When the parties appeared

8    before the judge of the court of appeals -- the judge who was

9    assigned to the court of appeals to hear the motion for a stay

10   pending a determination of Mr. Bouvier and MEI's leave to

11   appeal, the petitioners in Singapore appeared and they were not

12   ready to argue.  So the judge there said fine, we will put this

13   off, but only upon an undertaking from you that you will not

14   seek a default judgment against Mr. Bouvier which in effect

15   stays -- and thereby granting Mr. Bouvier a stay of his

16   obligation to provide an answer.  And so as a result the merits

17   cannot go forward in Singapore at this time.  Mr. Bouvier has

18   not and does not intend to file an answer at this point because

19   the application for leave to appeal has not been adjudicated.

20        THE COURT:  When is the application for an interim

21   stay scheduled to come back before that court?

22        MR. LEVY:  I don't know when it will come back before

23   the court.  I don't know if they rescheduled it.

24        What is going on, however, is that the briefing before

25   the court of appeals on leave to appeal is I believe expected

G5V9ACCM

1    to be completed this week and the -- it's at least possible

2    that the court of appeals will decide it prior to going on a

3    court holiday for the first few weeks in June.  And if not

4    the -- as I understand it, the application would be heard in

5    early July.

6          So, as your Honor suggested early on, a period of

7    several weeks is not -- would not result in any meaningful

8    prejudice to petitioners given the posture of the litigation.

9          I did also want to clarify one thing that came up

10   during your Honor's colloquy with Mr. Kornstein about the

11   Monaco condition.

12         THE COURT:  Before you do that though let me just pin

13   you down on this one too.

14         Assuming that the Singapore court does hear the

15   application for an interim stay -- it's sort of a peculiar

16   situation where it hasn't ruled on the stay but in the meantime

17   it's basically we're going to keep things where they are which

18   is effectively a stay, I'll give you that.

19         But assuming that that issue comes back before the

20   court and that interim application is denied, do you agree that

21   the merits are technically before the trial court in Singapore

22   whether, again, the trial court chooses to proceed with it or

23   not?

24         MR. LEVY:  Technically they would be.  Although I

25   think what's going to happen, as a practical matter, is that

G5V9ACCM

1    the Singapore Court of Appeals is going to decide leave to

2    appeal before there's a rescheduled argument on the application

3    for a stay pending the application for a leave to appeal.

4              THE COURT:  Now, let me turn, before you get to what

5    you want to say, to the Monaco proceedings, Monégasque

6    proceedings.

7              Do you agree at the moment that the petitioners have

8    not completely withdrawn from those proceedings pursuant to

9    Article 79 of the code of criminal procedure or whatever it is;

10   that is to say that at present they remain parties in some

11   capacity even if they are no longer seeking civil damages.

12             Do you agree with that factual statement, put aside

13   whether the Monaco investigating magistrate thinks that

14   suffices, I just want to confirm that factually that is a

15   correct statement of the current status of things.

16             MR. LEVY:  They have retained some subset of rights in

17   Monaco.  It is unclear the nature of those rights.  They are

18   disclaiming their right to seek damages and I think it's, as a

19   U.S. lawyer would see it, they are disclaiming their right to

20   seek any substantive relief in Monaco.  At the same time they

21   appear to be attempting to retain some procedural rights.

22             And I think when your Honor was referring to the idea

23   of there's a spectrum, I think you hit the nail on the head

24   which is that it's a bit betwixt and between.  And I think what

25   it suggests is not only that the petitioners aren't -- what

G5V9ACCM

1    they seek is not for use in Monaco.  It also tends to show I

2    think that they are not interested persons any longer since

3    they have no interest, financial, in the relief sought in

4    Monaco.

5            At the end of the day, however, I think it's going to

6    happen is that the last word on whether the conditions should

7    have been imposed, that is the condition that the petitioners

8    withdraw from Monaco, is going to be decided by the court of

9    appeals in Singapore.

10           THE COURT:  Okay.

11           MR. LEVY:  Because plainly before the court of appeals

12   there is whether the condition should have been imposed and

13   whether what the petitioners have done satisfies that

14   condition.  What the lower court judge said was they must

15   discontinue the proceedings.

16           THE COURT:  I want you to assume two things.  Don't

17   resist the hypothetical.

18           MR. LEVY:  You know I will try.

19           THE COURT:  And I won't let you, and you know that.

20           One, assume that the Singapore high court says that

21   doesn't undo that decision and says that the current

22   arrangement in Monaco, whatever it is, suffices for the

23   Singapore court's purposes, okay.

24           Number two, assume that the Monaco –– the Monégasque

25   investigating magistrate says since the Singapore courts are

G5V9ACCM

satisfied, I'm satisfied too and no longer require you to

completely discontinue under Article 79 so the current

arrangement is okay with me.

          Under that current arrangement, again assuming that it

doesn't change, what rights, if any, do the petitioners have to

use evidence in that proceeding?

          Am I correct that they do have some sort of procedural

right to submit evidence in that proceeding?

          MR. LEVY:  I think that they would have a procedural

right to submit evidence, but I don't think they would have a

procedural right to use -- to inject it for some advantage to

them.

          THE COURT:  Why not?  And what's the difference

between --

          MR. LEVY:  Because there is no advantage that is

obtained by submitting the evidence.  They're not seeking any

relief in Monaco anymore.

          THE COURT:  Why is that not contrary to the decision

that Mr. Kornstein cited to me, that --

          MR. LEVY:  He referred to a case, *Berlamont*.  But

there the person who wanted to obtain the information under

1782 had a financial interest in the outcome of a criminal

proceeding; whereas here the petitioners have disclaimed all of

their financial interest in the outcome of the proceedings in

Monaco.

G5V9ACCM

1          THE COURT:  But in other words if the law allows for a

2     party to -- if a party has procedural rights to provide

3     evidence in a criminal proceeding in a foreign tribunal why

4     doesn't that defeat the argument you just made that by virtue

5     of disclaiming their civil damages they're no longer, quote

6     unquote, interested persons.

7          MR. LEVY:  Because the case to which Mr. Kornstein

8     referred involves a situation that we don't have here.  The

9     case to which he referred involved someone who had a financial

10    interest in the outcome of a criminal proceeding; whereas here

11    the petitioners have no financial interest in the case in

12    Monaco.  They have disclaimed their interest in the proceeding

13    in Monaco.

14         THE COURT:  All right.

15         MR. LEVY:  And I would point out that they may have to

16    withdraw completely from those proceedings depending what

17    happens in Singapore.  I know your Honor knows that.

18         THE COURT:  That's the resisting the hypothetical

19    part.

20         MR. LEVY:  It's really just an addition to sort of

21    make sure it's clear in your mind and I know it is so I

22    appreciate the opportunity.  Thank you.

23         THE COURT:  It is.

24         What else do you want to tell me?  Otherwise I want to

25    hear from anyone else who wishes to be heard.  I also have

G5V9ACCM

1     another matter that I need to attend to in a few minutes.

2                 So anything else?

3                 MR. LEVY:  I don't know how your Honor intends to

4     proceed if the court ultimately decides that the stray document

5     that Sotheby's has should be produced, how we want to handle

6     the question of what conditions it should be -- should be

7     associated with its use.  We can handle that now or we can

8     handle that later, depending on how the court ultimately rules.

9                 THE COURT:  Let me see if anyone else has anything

10    they wish to say before I get to that.

11                Mr. Asner.

12                MR. ASNER:  Your Honor, Marcus Asner for Sotheby's.  I

13    was going to actually raise that one issue.  Plainly

14    Mr. Kornstein and Mr. Levy are in a better position to advise

15    the court about the foreign proceedings.  But with respect to

16    the Picasso pictures, the two pictures that are at issue in the

17    Paris proceedings, we'd be happy to produce those.  I just want

18    to make sure that there's a protective order in place so

19    that -- it is Sotheby's' confidentiality that is at issue but

20    in addition we have confidentiality obligations to Mr. Bouvier.

21    Just want to make sure we're not infringing on that.

22                THE COURT:  Mr. Comen, do you wish to be heard?

23                MR. COMEN:  Not at this time.

24                THE COURT:  Not at this time.  All right.  Very good.

25                Mr. Kornstein, let me turn back to you.  First just

G5V9ACCM

```
 1    ask you to respond to Mr. Levy's argument about the Monaco

 2    proceedings, that by virtue of disclaiming your interest in

 3    damages that you no longer qualify as an interested person even

 4    if you can provide evidence to the magistrate judge.

 5              MR. KORNSTEIN:  It's of no moment.  The lack of

 6    financial interest in a criminal proceeding is not a factor in

 7    the for use of interested persons analysis.  Berlamont is not

 8    the only case that talks about a complainant in a criminal

 9    proceeding being entitled to 1782 discovery.  The petitioners

10    are the victims.  They believe there was a massive fraud that

11    caused damages.  The interest in seeing justice accomplished is

12    an adequate and sufficient interest under 1782 to qualify.  So

13    the fact that they may have no financial interest in terms of

14    recovering that money in that case does not in any way reduce

15    their status as an interested person in that case.

16              THE COURT:  And the other cases that you alluded to,

17    are they cited in your briefs?

18              MR. KORNSTEIN:  I believe they are.  I will

19    doublecheck that; and if not, we will make sure that we supply

20    them to your Honor.

21              THE COURT:  Okay.

22              What about Mr. Levy's argument which I think goes to

23    the discretionary factors that if the motion for leave to

24    appeal in Singapore is denied and the case proceeds there that

25    you would be entitled to this discovery in the context of that
```

G5V9ACCM

1   proceeding and so it's not necessary here?

2          MR. KORNSTEIN:  This proceeding here is not seeking

3   discovery from Mr. Bouvier.  We're seeking discovery from

4   Sotheby's and from the sellers of the da Vinci painting.  So I

5   say it's irrelevant, number one.

6          Number two, while there, we understand, is discovery

7   in Singapore, that discovery would not cover Sotheby's

8   necessarily or the sellers of the da Vinci painting because

9   there is no jurisdiction over them there.

10          We're not talking about a Venn diagram matter too

11   concentric or too exactly identical circles.  There are going

12   to be intersections and we're entitled to get that information.

13          A point about even the Picasso paintings.  I

14   misunderstood your Honor.  I thought what your Honor was

15   originally saying when you were talking at first was that the

16   request as to the scope of discovery would be allowed -- we

17   were thinking that way -- for the Paris proceeding.  Because

18   that is what Mr. Bouvier, through Mr. Levy, had applied for

19   from Judge Cote.  And, in fact, the discovery that they

20   obtained was about a non-Picasso painting.  They got discovery

21   about a Modigliani painting, including a deposition that is not

22   one of the two Picassos.  So the one e-mail from the Sotheby's

23   person is not really -- we have it already.  It's not really

24   something that does anything; that, as a matter of parody, as a

25   matter of fairness, we should have the scope of the discovery

G5V9ACCM

1    that we asked for.  If your Honor wants to limit it to the use

2    in the Paris proceedings, that's one thing.  But I don't think

3    the scope should be narrowed.  I think that's an important

4    distinction.

5          THE COURT:  I think you did misunderstand me

6    because -- if I didn't make myself clear, I apologize -- but my

7    view is that the Paris proceedings alone do not support the

8    broader scope of discovery that you're seeking that they would

9    entitle you to discovery with respect to the two paintings but

10   only those two paintings.

11         I understand your arguments about the proceedings

12   before Judge Cote.  I just don't read them in the same way you

13   do.  I think the issue for use in that proceeding was not

14   litigated.  Both sides seemed to agree that it would be for

15   use.  And I think that Mr. Bouvier's admissions with respect to

16   those proceedings are fundamentally different since he's the

17   criminal defendant in those proceedings and therefore not

18   similarly situated to you.

19         In any event, I don't think the issue was litigated

20   before Judge Cote.  I don't think they are estopped from taking

21   that position here.  And I think I'm required to determine

22   whether the statutory factors are met.  And I don't think that

23   beyond the materials that may relate to those two paintings

24   that you can satisfy the statutory factors solely with respect

25   to the Paris proceedings because there I think your status is

1    akin to the person who would pass materials along to a

2    prosecutor that *KPMG*, the Second Circuit panel said, would not

3    suffice for the for use requirement to the statute.

4            So I guess my question is I am inclined to end where I

5    started; namely, to say that you're entitled to materials

6    relating to those two paintings but those two alone at the

7    moment and to defer decision on the broader requests pending

8    further developments either in Monaco or in Singapore.

9            I don't know if that's something that you're

10   interested in, the materials related to the two Picasso

11   paintings.  It sounds like you think you may have.  The only

12   things that there would be to get there, in which case it may

13   not be worth even discussing what terms and conditions need to

14   be placed upon that, and maybe we should just wait for the

15   whole thing to be resolved.

16           MR. KORNSTEIN:  Your Honor, we will take what we can

17   get.

18           The one point I would like to make is that to the

19   extent that Sotheby's and petitioners have reached an

20   agreement, of course subject to your Honor's approval, that

21   should put it on a different posture -- in a different posture

22   than the application itself.  Because here is an agreement

23   between parties.  Sotheby's is willing to produce, subject to

24   certain conditions that we've agreed to, documents so that it

25   almost takes the 1782 analysis almost out of the question or

G5V9ACCM

certainly puts it on a different plane than it would be if it

were simply asking for your Honor to decide it in the first

instance.  And we would argue that, please give serious

consideration whether that -- two orders were carefully

negotiated and were meant to satisfy the interests of both

parties can be put into effect so that those documents can be

produced.

        THE COURT:  All right.  But, number one, those

documents themselves say subject to hearing any objections from

intervenors, and intervenors have asserted an objection.

        Number two can you point me to any authority which

stands for the proposition that I don't need to concern myself

with whether the statutory factors are met where petitioners

and the relevant third party have an agreement, the third party

has no objection to providing the discovery but an intervenor

who has properly intervened does object because I am not aware

that that creates an exception to 1782's requirements.

        MR. KORNSTEIN:  I think the agreement between

Sotheby's and us to some extent makes that part of the petition

relating to Sotheby's unnecessary to be decided because it's

kind of excised out as a separate matter.

        THE COURT:  Well, I think, again, because the

agreement itself says subject to any objections by the

intervenors, that's not really true; and number two, unless you

can point me to authority which says that the requirements for

G5V9ACCM

1   the statute don't apply as there's a voluntary agreement on

2   behalf of the respondents, then I'm not prepared to accept

3   that.

4           Here is my inclination.  I do have another matter and

5   they have been patiently waiting in the back.

6           I think I am inclined to, again, leave things where I

7   said I was in the first instance.

8           My hope is that I can leave to you to discuss the

9   terms and conditions that would apply to disclosure of the

10  materials relating to the two Picassos and that all relevant

11  parties -- that is petitioners, intervenors and Sotheby's --

12  can agree upon those terms and whether those terms are

13  equivalent to or involve my signing that proposed order or not,

14  that you all can advise me of that and otherwise advise me of

15  any disagreements and I can adjudicate those.

16          Beyond that, I think what I will do is retain

17  jurisdiction.  I'm obviously hearing this in Part I, but I

18  think it doesn't make sense to pawn this off on another judge

19  who hasn't gotten up to speed on it, retain jurisdiction but

20  defer decision on the matter pending further developments in

21  either or both Singapore or Monaco when those developments can

22  include the Monaco investigating magistrate saying the

23  petitioners' current status suffices and confirming that that

24  status gives petitioners some rights to use evidence in those

25  proceedings.  That update can include resolution of the

G5V9ACCM

1    application for an interim stay in Singapore, in which case

2    perhaps the matter would be proceeding on the merits in those

3    courts notwithstanding the pending application for leave to

4    appeal, or the relevant update might be denial or some ruling

5    on the leave to appeal the forum non conveniens decision.  The

6    bottomline is I don't think I can make a determination of the

7    for use factor let alone the discretionary factors with all of

8    those developments unfolding and I'm inclined to defer decision

9    or I am going to defer decision until some sort of development

10   provides further clarification.

11          So that's where I'm going to leave things unless

12   anybody wants to be heard further.  But I think what I'll do is

13   leave to you to discuss the terms of a proposed order for

14   disclosure of the Picasso related -- to two Picasso painting

15   related materials, give you a week to do that.  And barring

16   agreement, give you until let's say next Friday to submit to me

17   a proposed order indicating in some fashion, red-lined or

18   bolded or otherwise, where there are any points of

19   disagreement.  And if there is agreement within the next week,

20   you can submit a proposed order or orders to me for my

21   signature, in which case that will proceed as discussed.

22          Is there any need for deposition on that front?  It

23   doesn't sound like it.  All right.  Mr. Kornstein is saying no.

24   So that should suffice there.

25          And otherwise I'll leave it to you -- and by next

G5V9ACCM

1    Friday I do mean June 3 just to be clear.

2              And otherwise I'll leave it to you to update me when

3    there are relevant developments in either Monaco or Singapore

4    having heard from me what I think those developments are likely

5    to be.

6              What I would propose is for one or both sides, by that

7    I mean petitioners and intervenors, to submit a letter saying

8    here is what happened.  And you can propose -- and I would ask

9    you to confer with one another before proposing -- how you

10   think the matter should be handled.  It may be that the current

11   briefing would suffice and I can take into consideration those

12   developments, or you may agree that further supplemental

13   briefing is in order, but make a proposal to me.  And then I

14   will endorse your letter or issue an order indicating what we

15   will do from there, whether I'll direct supplemental briefing

16   or just leave it as is.  All right.

17             Any questions?

18             Mr. Levy?

19             MR. LEVY:  Nothing.  Thank you very much.

20             THE COURT:  All right.  Mr. Kornstein?

21             MR. KORNSTEIN:  No.

22             THE COURT:  All right.  Very good.  Then I'll stay on

23   the bench but this matter is adjourned.  Thank you.

24             (Adjourned)

25