USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/11/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In re Application of ACCENT DELIGHT
INTERNATIONAL LTD. and XITRANS FINANCE LTD.
for an Order Under 28 U.S.C. § 1782 to
Conduct Discovery for Use in Foreign Proceedings

16-MC-125 (JMF)
18-MC-50 (JMF)

OPINION AND ORDER

------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

This case, familiarity with which is presumed, is a small part of a larger international saga involving Petitioners Accent Delight International Ltd. and Xitrans Finance Ltd. and their principal, Dmitry Rybolovlev; Respondent Sotheby's, Inc.; and Intervenors Yves Bouvier and MEI Invest Ltd. At bottom, Petitioners allege that Bouvier defrauded them in connection with the purchase of a world-class art collection, to the tune of approximately one billion dollars. The dispute has spawned litigation, civil and criminal, in at least five other jurisdictions around the world — Singapore, Switzerland, France, Monaco, and the United Kingdom. The litigation in this District concerns Petitioners' applications, brought pursuant to Title 28, United States Code, Section 1782, for discovery in aid of one or more of these foreign proceedings.

That litigation has now been going on for more than two years. In 2016, the Court granted Petitioners' application for discovery in aid of criminal proceedings pending in Monaco. *See In re Application of Accent Delight Int'l Ltd.* ("*Accent Delight I*"), No. 16-MC-125 (JMF), 2016 WL 5818597 (S.D.N.Y. Oct. 5, 2016). Over Intervenors' objection, the Court authorized Petitioners to use the discovery materials in connection with the proceedings in France and Singapore as well, but entered a Protective Order barring the use of materials "in other legal proceedings" absent leave of Court. (Docket No. 84 ("Protective Order"), ¶¶ 5.1-5.2).[1] On appeal, the Second Circuit affirmed, rejecting Intervenors' argument that the Court had erred in allowing Petitioners to use the materials

---

[1] Unless otherwise noted, all docket references are to 16-MC-125 (JMF).

beyond Monaco. *See In re Accent Delight Int'l Ltd.* ("*Accent Delight II*"), 869 F.3d 121, 133-36 (2d Cir. 2017); *see also In re Accent Delight Int'l Ltd.* ("*Accent Delight III*"), 696 F. App'x 537, 538-39 (2d Cir. 2017) (summary order). Later the same year, this Court granted Petitioner's motion to use the discovery materials in connection with (1) a civil proceeding initiated by Intervenors and Sotheby's in Switzerland and (2) a civil proceeding that Petitioners were preparing to bring against Intervenors and Sotheby's in the United Kingdom. *See In re Accent Delight Int'l Ltd.* ("*Accent Delight IV*"), No. 16-MC-125 (JMF), 2017 WL 6568059, at *1 (S.D.N.Y. Dec. 22, 2017). No party appealed that ruling.

Petitioners now move for an order authorizing them to use the discovery materials they previously obtained in connection with a pending criminal proceeding in Geneva, Switzerland. (*See* Docket No. 132). In addition, through a new petition, they seek additional discovery from Sotheby's for use in criminal proceedings in Monaco and Switzerland. (*See* 18-MC-50, Docket No. 4). For the reasons discussed below, the Court GRANTS Petitioners' motion to use the previously discovered material in the Swiss criminal proceeding and GRANTS in part and DENIES in part Petitioners' new Section 1782 petition.

## APPLICABLE LEGAL PRINCIPLES

It is well established that "Section 1782 applicants must meet certain 'statutory requirements': (1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal,' and (3) the applicant must be either a foreign tribunal or an 'interested person.'" *Accent Delight II*, 869 F.3d at 128 (quoting *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015)). If those requirements are met, Section 1782 "authorizes, but does not require, a federal district court" to grant the application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). In determining whether to exercise that

2

discretion, a district court should consider: (1) whether the person from whom discovery is sought is participating in the foreign proceeding; (2) the nature of the foreign tribunal and its receptiveness to U.S. judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *See id.* at 264-65; *see also Accent Delight III*, 696 F. App'x at 538-39.

In *Accent Delight IV*, this Court held — based in part on the Second Circuit's reasoning — that Petitioners did not need to meet the requirements of Section 1782 anew in order to use the discovery they had already obtained in connection with other foreign proceedings. *See* 2017 WL 6568059, at *1 ("'Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.'" (quoting *Accent Delight II*, 869 F.3d at 135)). Nevertheless, in light of the Protective Order barring use of the materials in other proceedings, the Court held that Petitioners would not be allowed to use the discovery they had obtained in connection with other proceedings (namely, the proceedings or anticipated proceedings in Switzerland and the United Kingdom) if Intervenors or Sotheby's "c[ould] show bad faith or other 'chicanery.'" *Id.* at 2 (quoting *Accent Delight II*, 869 F.3d at 135); *see also id.* ("[T]he Court concludes that Petitioners should be allowed to use the materials unless Intervenors and Sotheby's can establish bad faith or some other abuse of process.").

**DISCUSSION**

As noted, Petitioners seek two forms of relief. First, they seek permission to use the materials they already have in connection with criminal proceedings now pending in Switzerland. And second, they petition for new discovery in aid of the proceedings in Monaco and Switzerland. The Court will address each request in turn and then the request of Intervenors and Sotheby's to keep certain materials under seal or in redacted form.

3

### A. Motion to Use Discovery Material

Petitioners' motion to use the materials they already have in the Swiss criminal proceedings requires only brief discussion. Per the Court's decision in *Accent Delight IV*, Petitioners are entitled to use the materials in the Swiss proceedings unless Intervenors or Sotheby's can demonstrate "bad faith or other chicanery." *Id.* at 2 (internal quotation marks omitted). Intervenors and Sotheby's try, (*see* Docket No. 150 ("Intervenors' Opp'n), at 27-28; Docket No. 152 ("Sotheby's Opp'n"), at 24-25), but their efforts fall short. Their main contention rests on the assertion that Petitioners failed to disclose — to the Singapore Court of Appeal, the Second Circuit, and this Court — that they had filed their Swiss criminal complaint in the time between oral argument and the Singapore Court of Appeal's ruling on Bouvier's *forum non conveniens* motion in the Singapore proceedings. (Intervenors' Opp'n 3-4). But, while Petitioners could (and should) have been more forthcoming on that front, Intervenors proffer no reason to believe that Petitioners intentionally misled any tribunal (or what Petitioners would have hoped to gain by doing so), let alone identify any prejudice that resulted. In a similar vein, Intervenors also accuse Petitioners of falsely stating that Bouvier was "charged" with crimes in Switzerland, Monaco, and France, (Intervenors' Opp'n 27), but the point is ultimately little more than semantic. After all, there is no dispute that there are ongoing criminal investigations into Bouvier's activities in Monaco, France, and Switzerland or that Bouvier's current status of *prévenu* in Switzerland required official authorization. (*See* Docket No. 158 ("Pet'rs' Reply"), at 5-6; Docket No. 156 ("Macaluso Decl."), ¶¶ 8-9).

Intervenors' and Sotheby's other assertions of bad faith, abuse of process, or other chicanery are similarly unconvincing. First, they contend that Petitioners did "nothing" with the previously obtained discovery other than hand it over to Monaco's investigating magistrate. (Intervenors' Opp'n 23). That, however, is exactly what Petitioners said they would do at the time they made their original application, (*see* Docket No. 49, at 3), and Section 1782 did not require that they do

4

anything more, *see Accent Delight II*, 869 F.3d at 132-33. Second, they cite "corruption in Monaco and the manner in which Petitioners have improperly co-opted the Minister of Justice and the police there to do their bidding." (Intervenors' Opp'n 27; *see id.* at 18-20). But Intervenors' sole bases for those serious allegations are secondhand press reports, (*id.* at 20), which are not enough to carry their burden. Notably, Intervenors made the same argument in *Accent Delight IV*, (Docket No. 116, at 9-10), and it failed to carry the day.

In the final analysis, Intervenors' and Sotheby's most troubling allegation of bad faith is that Petitioners failed to disclose to this Court that their status as claimants in the Geneva criminal proceeding has been questioned, as their status as claimants goes to the heart of the Section 1782 inquiry. (Intervenors' Opp'n 27; Sotheby's Opp'n 24). Once again, Petitioners could (and should) have been more candid. But, in the Court's view, their lack of complete candor is an example of bad advocacy, not of bad faith. The Geneva prosecutor may be reviewing Petitioners' capacity to act as "claimant parties" in the proceeding, (*see* Docket No. 149 ("Levy Decl."), Ex. G; Docket No. 161 ("Intervenors' Ltr. Response")), but there is evidence that Petitioners currently have the status of claimants who may participate in the proceeding. (Pet'rs' Reply 4; *see* Levy Decl., Ex. G (naming Petitioners as "the claimant companies" in the minutes of a hearing before the Office of the Public Prosecutor of the Republic and Canton of Geneva)), a contention that Intervenors do not contest, (*see* Intervenors' Ltr. Response). There is no evidence in the record that that status has changed.

Accordingly, Petitioners' motion for permission to use the materials they already have in aid of the Swiss proceedings is granted.

**B. The New Section 1782 Petition**

The Court turns, then, to Petitioners' new Section 1782 petition, which seeks discovery in aid of the criminal proceedings in both Monaco and Switzerland. (*See* 18-MC-50, Docket No. 4, at

5

1). As an initial matter, the Court previously found that Petitioners satisfy all three statutory requirements with respect to the ongoing proceedings in Monaco. *See Accent Delight I*, 2016 WL 5818597, at *2. Wisely, Intervenors and Sotheby's do not argue otherwise. Instead, they contend that Petitioners do not satisfy the "for use" and "interested person" requirements with respect to the Swiss proceedings because Petitioners' status as claimants in those proceedings has been questioned. (*See* Intervenors' Opp'n 23; Sotheby's Opp'n 11-12). As noted, however, Petitioners appear for now to hold the status of claimants who may participate in the proceedings, and Intervenors and Sotheby's have provided no evidence to the contrary. In any event, the Court need not decide whether Petitioners meet the statutory factors for the Swiss proceedings because the Second Circuit and this Court have held that Section 1782 does not require an applicant to "satisfy the statutory requirements for each foreign proceeding for which he or she wishes to use the requested discovery." *Accent Delight IV*, 2017 WL 6568059, at *1 (quoting *Accent Delight II*, 869 F.3d at 133). It is enough that Petitioners satisfy the statutory requirements with respect to the Monaco proceedings.

      Ordinarily, the next step in the analysis would be consideration of the discretionary *Intel* factors. But the Court pauses to consider an argument raised by Sotheby's that could bear on consideration of the *Intel* factors: that Section 1782 does not authorize discovery of documents outside the United States. (Sotheby's Opp'n 8-11). Many district judges in this Circuit have accepted that argument (albeit sometimes without much substantive analysis). *See, e.g.*, *In re Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007); *In re Application of Kreke Immobilien KG*, No. 13-MC-110 (NRB), 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013); *Purolite Corp. v. Hitachi Am., Ltd.*, No. 17-MC-67 (PAE), 2017 WL 1906905, at *2 (S.D.N.Y. May 9, 2017); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 n.5 (S.D.N.Y. 2006). But others have rejected it, *see, e.g.*, *In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*, No. M-19-88 (BSJ), 2006 WL

3844464, at *5 (S.D.N.Y. Dec. 29, 2006); *In re Application of Eli Lilly & Co.*, No. 09-MC-296, 2010 WL 2509133, at *4 (D. Conn. June 15, 2010), as has the one Court of Appeals to reach the issue, *see Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1199-1200 (11th Cir. 2016). The Second Circuit has not yet ruled on the question. *See Accent Delight III*, 696 F. App'x at 539 ("Whether Section 1782 permits [extraterritorial] discovery presents a question on which we have not yet ruled."); *see also In re Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (declining to reach the issue, but stating in *dicta* that, "despite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States").

In the Court's view, the Eleventh Circuit and the district judges who have held that Section 1782 can reach documents abroad have the better of the argument. It is well and long established that the plain language of a statute "should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (brackets omitted) (internal quotation marks omitted). And here, the plain language of Section 1782 imposes no geographical limit on the production of documents. To the contrary, the statute explicitly empowers courts to allow discovery to be taken and produced "in accordance with the Federal Rules of Civil Procedure," 28 U.S.C. § 1782(a), and discovery under the Federal Rules is indisputably "broad" and can extend to "materials located outside of the United States," *Sergeeva*, 834 F.3d at 1200; *see also In re Application of Barnwell Enters. Ltd*, 265 F. Supp. 3d 1, 16 (D.D.C. 2017). To the extent courts have read a geographical limit into the statute, they have done so for reasons of legislative history and policy. *See, e.g.*, *Godfrey*, 526 F. Supp. 2d at 423 (citing S. Rep. No. 88-1580, at 3788 (1964)). But the relevant legislative history "is at best ambiguous on the issue," *Gemeinschaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *5 n.13, and it is not the task of a court to rewrite an unambiguous statute in the name of good policy, *see, e.g.*, *Henson v. Santander*

7

*Consumer USA Inc.*, 137 S. Ct. 1718, 1725-26 (2017) (reaffirming that the proper role of the judiciary is "to apply, not amend, the work of the People's representatives," even when reasonable people might believe that "Congress should reenter the field and alter the judgments it made in the past"). Thus, "the location of responsive documents and electronically stored information — to the extent a physical location can be discerned in this digital age — does not establish a *per se* bar to discovery under § 1782." *Sergeeva*, 834 F.3d at 1200. Instead, the location of the materials sought by Petitioners is "at most . . . a discretionary consideration" to be weighed in assessing "the alleged hardship and burden" on Sotheby's as part of the *Intel* factor analysis. *Gemeinschaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *5.

Turning to the *Intel* factors, the Court concludes that they largely favor Petitioners' new application with respect to the Monaco proceedings. First, the party from which Petitioners seek discovery is not a participant in the Monégasque criminal proceedings. Sotheby's asserts that it is "abundantly clear that Petitioners have filed the New Petition with the aim — at least in part — to obtain discovery for use" against the company and its employee, Samuel Valette, in proceedings in which they "likely will be" parties. (Sotheby's Opp'n 13; *see also* Intervenors' Opp'n 26-27). But whether Petitioners view Sotheby's as a potential adversary plays no role in the first *Intel* factor, which is concerned with "the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application." *In re Application of OOO Promnefstroy*, No. M-19-99 (RJS), 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009); *see also Intel Corp.*, 542 U.S. at 264 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent . . . [because] [a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.").[2]

---

[2] In a related vein, Sotheby's suggests that Petitioners' true intent in their new petition is to engage in a "fishing expedition" for incriminating evidence against the auction house. (Sotheby's Opp'n 13-16, 23-25). It is true that a district court may deny an application suspected to be a mere

8

The second and third discretionary factors also favor Petitioners. The second factor, concerning the nature of the foreign tribunal and its receptivity to U.S. judicial assistance, favors an application absent "proof that [the] tribunal would reject evidence obtained with the aid of § 1782." *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015). There is no such proof here, and neither Intervenors nor Sotheby's argues otherwise. And the third factor, whether the request conceals an attempt to circumvent foreign proof-gathering restrictions, concerns whether the foreign forum has "rules akin to privileges that *prohibit* the acquisition or use of certain materials," not whether it has "rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Id.* Intervenors and Sotheby's contend that Petitioners seek broader discovery than would be available in Switzerland (and the United Kingdom), (Sotheby's Opp'n 16-18; Intervenors' Opp'n 25-26), but the rules they cite — for example, restrictions on the availability and timing of depositions and on broad requests for "all" documents and communications, (Sotheby's Opp'n 17) — are nothing more than limits on the scope of discovery in those fora, not "proof-gathering restrictions" within the meaning of *Intel*. And in any event, Intervenors and Sotheby's make no arguments concerning the third factor in connection with the Monégasque proceedings.

That leaves only the question of whether the requested discovery is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. Providing a list of thirty-eight works of art — defined as the "Works" — Petitioners seek the following discovery: communications between Bouvier and

---

"fishing expedition" or a tool for harassment. *See, e.g.*, *In re Petition of Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 703 (S.D.N.Y. 2015). But the mere fact that Petitioners may view Sotheby's and Valette as accomplices in Bouvier's alleged fraud does not defeat their request for discovery in aid of their litigation against Intervenors. Sotheby's cites no rule suggesting that a Court should grant discovery under Section 1782 only if it does nothing to harm the interests of the party from whom the discovery is sought. Whatever secondary benefit Petitioners may derive from the discovery vis-à-vis Sotheby's, they have demonstrated the relevance of the discovery vis-à-vis Intervenors.

9

any Sotheby's personnel regarding the Works; all documents, including communications, concerning Bouvier and any of the Works; and all documents concerning the value of any Work bought or sold in a transaction involving Sotheby's and Bouvier. (18-MC-50, Docket No. 6, Ex. A ("Subpoena")). Additionally, they seek a Rule 30(b)(6) deposition on eight topics, including the sale price and market value of the Works, the business relationship between Bouvier and Sotheby's, and the circumstances under which Bouvier obtained valuations of any of the Works. (*Id.*). Sotheby's insists, and Petitioners appear to acknowledge, however, that the auction house was involved in the sale, auction, or valuation of only fourteen or fifteen of the Works. (*See* Sotheby's Opp'n 2 n.2 (noting that "Sotheby's facilitated the sale of only 12 of the 37 Works to Bouvier, consigned for auction 2 of the Works on Bouvier's behalf (1 of which it previously sold him), and conducted valuations for 4 of the Works (2 of which it previously sold him)"); Docket No. 153 ¶ 3; *see also* 18-MC-50, Docket No. 7 ("Pet'rs' Mem."), at 21 ("The most Sotheby's would need to do is search several relevant custodians' emails and files for materials pertaining to Bouvier's role in fourteen transactions.")). Thus, to the extent that Petitioners seek discovery concerning transactions beyond the ones involving those Works (and the relationship with Bouvier generally), the Court agrees with Sotheby's claims of intrusiveness. That is, discovery concerning those transactions alone (and the relationship to Bouvier generally) would provide Petitioners with insight into whether "Bouvier held himself out to Sotheby's as Petitioners' agent and representative" and had a fraudulent intent in conducting those transactions. (Pet'rs' Mem. 16). There is no apparent reason or basis to authorize discovery beyond those limits. *See, e.g.*, *Mees*, 793 F.3d at 302 ("[T]o the extent a district court finds that a [1782] discovery request is overbroad, . . . it should ordinarily consider whether that defect could be cured through a limited grant of discovery."); *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992) (noting that § 1782 and

Federal Rule of Civil Procedure 26 provide a district court with broad discretion to impose reasonable limitations upon discovery).[3]

So limited, Petitioners' request is not sufficiently "intrusive or burdensome" to warrant rejection of their application. *Intel Corp.*, 542 U.S. at 265. Indeed, so limited, their request is a far cry from the discovery found to be unduly burdensome in the cases cited by Sotheby's. *See, e.g.*, *In re Petition of MT "BALTIC SOUL" Produktentankschiffahrtsgesellschaft mgH & Co. KG*, No. 15-MC-319 (LTS), 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) ("[T]he only potentially appropriate discovery purpose Petitioners have identified is adjudication of the issue of the affiliates' alter ego status. Their request for disclosure of every financial transaction these companies have engaged in with 11 different banks, along with considerable additional financial information, sweeps far too broadly to be proper for that limited purpose."); *In re Ex Parte Application of Apotex Inc.*, No. M-12-160, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (rejecting a request that would require a non-party "to devote substantial resources to perform onerous searches and then review voluminous documents for a potentially small subset of . . . documents that date back nearly thirty years"); *OOO Promnefstroy*, 2009 WL 3335608, at *9 ("Promnefstroy's application extends to a wide array of documents related to tens of business entities and to all of their affairs, many of which Feldman is not even associated with."). Further, to the extent that Sotheby's has concerns about the volume of material to be reviewed for

---

[3] Sotheby's notes that the Monaco criminal investigation is "focused only on Petitioners' acquisition of *three* Works with ties to Monaco," (Sotheby's Opp'n 19), and argues that "the tremendous burden associated with responding to the expansive categories of documents sought by Petitioners far outweighs the purported need for the documents" in Monaco, (Docket No. 162 ("Sotheby's Ltr."), at 3). But the fact that the Monaco investigation may concern only three Works does not mean that materials and information concerning other Works or the relationship between Bouvier and Sotheby's is irrelevant. *Cf.* Fed. R. Evid. 404(b) (governing the admissibility of "other" acts and wrongs). Moreover, the Second Circuit has made clear that Section 1782 does not have a "necessity" requirement because "the question of who will ultimately prevail on what evidence can usually only be a subject of speculation" — especially when it comes to foreign laws and procedures with which U.S. federal judges are unfamiliar. *Mees*, 793 F.3d at 298-99.

responsiveness to Petitioners' subpoena, the parties can negotiate search terms that would ease Sotheby's burden. (*See* Pet'rs' Reply 11).

Sotheby's remaining arguments regarding burden and intrusiveness are similarly unpersuasive. Sotheby's raises concerns that the European Union's Data Privacy Directive or Switzerland's Federal Act on Data Protection will govern any disclosure of documents between Sotheby's and third parties, requiring Sotheby's to perform a "document-by-document review" to redact protected information. (Sotheby's Opp'n 21-22). But Sotheby's proffers no reason to expect that many (or even any) of its documents would disclose such protected data as a third party's "racial or ethnic origin," "political opinions," "sexual life," or "religious beliefs," (Docket No. 154, ¶ 16), or other "confidential, sensitive personal data or personality profiles." (Docket No. 155, ¶ 18). Indeed, as Petitioners point out, and Sotheby's does not dispute, "there were virtually no redactions to Sotheby's previous production." (Pet'rs' Reply 11-12; Sotheby's Ltr.). Moreover, to the extent Sotheby's has concerns about confidentiality, the appropriate remedy is a protective order of the sort that the Court previously entered. (*See* Pet'rs' Reply 12; *see also* Protective Order).

Accordingly, the Court grants Petitioners' application in part and denies it in part. Specifically, the Court grants the application only as to those Works involved in the fourteen transactions between Sotheby's and Bouvier and the relationship between Sotheby's (and its personnel) and Bouvier. Further, because there is no reason to believe that Petitioners "initiated or sought discovery for use in the [Swiss] proceedings in bad faith," *Accent Delight II*, 869 F.3d at 135-36, the Court declines to limit the use of discovery to the proceedings in Monaco alone. Nonetheless, in light of the international terrain over which these parties have already trod, the Court once again imposes a protective order limiting use of the new discovery to the Monégasque and Swiss criminal proceedings. Additionally, the parties shall confer with respect to whether any

12

additional protective or confidentiality order is warranted and, if so, submit a proposed order to the Court within one week of this Memorandum Opinion and Order.

**C. Sealing**

One final matter remains: Intervenors and Sotheby's request to keep under seal (1) the redacted portions of Petitioners' latest application, (18-MC-50, Docket No. 4); (2) Exhibits C through E, G through I, and K through M to the Declaration of Daniel J. Kornstein dated February 12, 2018 (18-MC-50, Docket Nos. 6-3, 6-5, 6-7); and (3) the redacted portions of Petitioners' memorandum of law (18-MC-50, Docket No. 7). Although there is a presumption in favor of public access to judicial documents, in reaching its decisions above the Court did not need to reference or otherwise rely on the sealed exhibits or the redacted portions of Petitioners' application and memorandum of law. At best, therefore, the weight of any presumption is limited. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." (alteration in original) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995))). On the flip side, the interests of the parties in preventing the public disclosure of private sales figures and communications are not insignificant. Accordingly, the Court grants Intervenors' and Sotheby's request to keep Exhibits C-E, G-I, and K-M of the Kornstein Declaration and the redacted portions of Petitioners' application and memorandum of law under seal. *See, e.g., Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 445 n.7 (S.D.N.Y. 2016), *aff'd*, 674 F. App'x 16 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 221 (2017). If they have not done so already, Petitioners shall promptly file unredacted copies of all those documents with the Sealed Records Department.

**CONCLUSION**

For the reasons stated above, Petitioners' motion to use the previously discovered material in the Swiss criminal proceeding is GRANTED, while Petitioners' new Section 1782 petition is GRANTED in part and DENIED in part. The Clerk of Court is directed to (1) terminate 16-MC-125, Docket No. 132 and 18-MC-50, Docket No. 4; and (2) close 18-MC-50.

SO ORDERED.

Dated: June 11, 2018
      New York, New York

                                            JESSE M. FURMAN
                                            United States District Judge