UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
IN RE:                                                            :    16-MC-125 (JMF)
                                                                  :
ACCENT DELIGHT INTERNATIONAL LTD.,                                :    OPINION AND ORDER
XITRANS FINANCE LTD.                                              :
                                                                  :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case is a small part of a larger international saga involving Accent Delight International Ltd. and Xitrans Finance Ltd. ("Petitioners") and their principal, Dmitry Rybolovlev, the international auction house Sotheby's, and an art dealer named Yves Bouvier. At the heart of the saga is Petitioners' claim that Bouvier, an Intervenor here, defrauded them of approximately one billion dollars in connection with the purchase of a world-class art collection. The dispute has spawned civil and criminal litigation in at least five jurisdictions around the world — Singapore, Switzerland, France, Monaco, and the United States. And it has been the subject — in this and related cases — of multiple decisions by this Court, two of which have now been affirmed on appeal. *See Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399 (S.D.N.Y. 2019); *In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2018 WL 2849724 (S.D.N.Y. Jun. 11, 2018), *aff'd*, 2019 WL 5960348 (2d Cir. Nov. 13, 2019); *In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2017 WL 6568059 (S.D.N.Y. Dec. 22, 2017); *In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2016 WL 5818597 (S.D.N.Y. Oct. 5, 2016), *aff'd* 869 F.3d 121 (2d Cir. 2017), 696 F. App'x 537 (2d Cir. 2017).

      Bouvier and his fellow Intervenor here, MEI Invest Ltd., are now seeking to put the genie back in the bottle. In particular, invoking the Court's inherent authority, they move to claw back all of the documents and information that Petitioners obtained by virtue of their original petition,

pursuant to 28 U.S.C. § 1782, for discovery for use in certain foreign proceedings, a petition that this Court granted on October 5, 2016, a decision that the Second Circuit later affirmed. Intervenors contend that the Court should grant that relief based on evidence that Rybolovlev and Tetiana Bersheda, Petitioners' global coordinating counsel, engaged in corrupt and criminal conduct relating to the Monegasque criminal proceedings, which formed a principal basis for the Court's 2016 order granting the original petition for discovery. ECF No. 192 ("Intervenors' Mem."), at 1-2. Putting aside the question of whether the relief Intervenors seek is even feasible, the Court concludes, for the reasons discussed below, that their motion is without merit. Accordingly, it is denied.

## BACKGROUND

The Court assumes familiarity with the background and procedural history of this case (and related cases), which is recounted here only as necessary. On October 5, 2016, the Court granted Petitioners' petition to obtain discovery from Respondents Sotheby's and three men who were involved in selling a painting to Petitioners through Sotheby's. *In re Application of Accent Delight Int'l Ltd.*, 2016 WL 5818597. Although Petitioners sought that discovery for use in proceedings pending in France, Monaco, and Singapore, the Court based its decision — for reasons that need not be repeated here — primarily on the Monegasque proceedings. *See id.* at *2. The Court also issued a protective order limiting the use of the documents obtained pursuant to the petition (the "Discovery Materials") to use in the French, Monegasque, and Singaporean proceedings. ECF No. 84, ¶¶ 2.1, 5.1. Intervenors appealed and, on August 28, 2017, the Second Circuit affirmed. *See* 869 F.3d 121, 696 F. App'x 537. Thereafter, the Court granted Petitioners' applications to modify the protective order to allow them to use the Discovery Materials in other proceedings around the world. ECF Nos. 128, 163.

As noted, Intervenors allege that they have since learned that Rybolovlev and Bersheda engaged in criminal conduct relating to the Monegasque criminal proceedings. In particular, Intervenors allege a variety of improper contacts between Rybolovlev, Bersheda, and Monegasque law enforcement officials. *See* Intervenors' Mem 11-15. According to Intervenors, Bersheda sought Monegasque officials' assistance in drafting Petitioners' criminal complaint, "obtained legal advice about how to proceed," secured "preferential access" to Monegasque officials, and influenced how the police would conduct the Bouvier investigation. *Id.* at 11. Intervenors further allege that Bersheda "hatched" a plan to ensure that Monaco had jurisdiction over Bouvier and "enlisted" Monegasque authorities in carrying out that plan. *Id.* Throughout the investigation, Rybolovlev and Bersheda remained in close contact with Monegasque officials. *Id.* at 12-13. Rybolovlev and Bersheda also had social contacts with various officials, including the Minister of Justice and the Director of Public Security, during the same period. *Id.* The investigation of Bouvier, Intervenors contend, was conducted "extraordinarily" quickly. *Id.* at 13. Rybolovlev and Bersheda also purportedly "coordinat[ed] with the various Monegasque officials that they had coopted" to "use the worldwide press as part of their terror campaign" and "leverag[ed] the ties that the Monegasque police officials had with their colleagues in Paris" to "gin[] up" the French proceeding that was initiated by Pablo Picasso's step-daughter. *Id.* at 14-15. Intervenors allege that, as a result of the foregoing conduct, Rybolovlev and Bersheda are under criminal investigation in Monaco for "active influence trafficking," "active bribery," and "benefitting from a breach of professional secrecy." *Id.* at 16-17.

In light of these allegations, Intervenors move for a Court order requiring Petitioners and their associates to destroy all of the Discovery Materials, as well as all records and information

derived from such materials, and enjoining Petitioners and their associates from using any such information or documents "in any forum, in any country, and for any reason." ECF No. 190.

## DISCUSSION

Intervenors purport to seek relief based on the Court's "inherent authority" to claw back discovery "where a litigant or its counsel has engaged in some misconduct." Intervenors' Mem. 19. It is certainly true that district courts have the "inherent power to control the proceedings that take place before" them. *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013). Pursuant to that inherent authority, a federal court may prohibit a party from using in the litigation before it evidence that was improperly obtained. *See, e.g.*, *Fayemi v. Hambrecht and Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997). A federal court may also sanction a party that improperly uses documents obtained through discovery, including by ordering the party to return the documents. *See, e.g.*, *In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 69, 70-71 (S.D.N.Y. 2007). But the Court's inherent authority does not justify the relief Intervenors seek here. Petitioners did not improperly obtain the Discovery Materials; they were obtained pursuant to this Court's Order, which was affirmed by the Second Circuit. And Intervenors do not claim that Petitioners have used the documents in a manner inconsistent with the Court's Orders. Indeed, Petitioners' alleged wrongdoing did not occur in these proceedings at all, but in proceedings in Monaco. *See* Intervenors' Mem. 21 ("[T]he Court should not permit Petitioners to retain the benefits of U.S. law, where the overseas proceedings that were the predicate for granting relief under Section 1782 were, in substantial part, infected by serious misconduct."). The alleged misconduct, in other words, has "nothing to do with [the C]ourt's own affairs," and, thus, does not justify resort to the Court's inherent authority. *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 267 (2d Cir. 2007) (describing that a court may manage its own affairs by "impos[ing] decorum," "maintain[ing]

4

order," "control[ling] admission to the bar," "disciplin[ing] attorneys," "punish[ing] for contempt," and "vacat[ing] its own judgments if tainted by fraud").

More broadly, the Court is unpersuaded that Intervenors even frame their motion properly. At bottom, Intervenors seek to revisit a final decision of this Court (and, by extension, a decision of the Second Circuit) from years ago. Although uncited by Intervenors, Rule 60(b) of the Federal Rules of Civil Procedure is the procedural vehicle pursuant to which such a request must be made. *See, e.g.*, *Cody, Inc. v. Town of Woodbury*, 179 F.3d 52, 56 (2d Cir. 1999) ("Rule 60(b) provides a procedure for asking a district court to relieve parties from the operation of judgments that, *inter alia*, are undermined by newly available evidence, have been previously satisfied, or result from mistake, fraud, or misconduct."). The problem for Intervenors (and, perhaps, the reason that they omit any reference to the Rule) is that a Rule 60(b) motion based on "newly discovered evidence" or "fraud . . . , misrepresentation, or misconduct by an opposing party" must be filed within one year of the order at issue — in this case, by October 5, 2017. Fed. R. Civ. P. 60(b)(2), (3), (c)(1). And although motions under Rule 60(b)(6) — which allows a court to grant relief "where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship," *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir. 1994) (internal quotation marks omitted) — are not subject to that strict deadline, they "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Intervenors cannot satisfy that requirement because they were aware of the facts giving rise to their allegations for at least ten months before filing this motion. *See* ECF No. 191-2, at 105 (Bouvier's application to dismiss the Monegasque criminal proceedings against him, dated October 4, 2018); ECF No. 191-12, at 2, 3 (indictments of Bersheda and Rybolovlev, dated November 8, 2018); *see also, e.g.*, *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995)

5

(holding motion untimely under Rule 60(c) because of an eleven-month delay between notice of facts giving rise to claims and motion). Additionally, "an action may not be brought under Rule 60(b)(6) if it is premised on one of the grounds for relief enumerated in the specific clauses in Rule 60(b)." *LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130, 136 (S.D.N.Y. 2009). Because Intervenors allege that Petitioners engaged in misconduct, their arguments fall within the scope of Rule 60(b)(3), and they may not rely on Rule 60(b)(6) to evade the time bar. *See id.*

That leaves Rule 60(d)(3), which permits a court to "set aside a judgment for fraud on the court." A motion pursuant to Rule 60(d)(3) is not subject to "any time constraint," *United States v. Key*, No. 12-CR-712-1, 18-CV-7716 (SHS), 2019 WL 2314693, at *9 (S.D.N.Y. May 31, 2019); *see also, e.g.*, *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002), but the moving party's burden to obtain such relief is a heavy one. In particular, the moving party must show that the other side committed a "fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988) (defining "fraud upon the court"); *see also Key*, 2019 WL 2314693, at *9 (noting that Rule 60(d) relief "is only available to prevent a grave miscarriage of justice" (internal quotation marks omitted)). "The concept of fraud on the court embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995). Significantly, "neither perjury nor nondisclosure, by itself, amounts" to fraud on the court. *Gleason*, 860 F.2d at 560. Finally, the moving party is entitled to relief only if "[f]raud upon the court [is] established by clear and convincing evidence." *King*, 287 F.3d at 95.

Intervenors fall well short of satisfying their burden under Rule 60(d)(3). As an initial matter, they do not allege that Petitioners committed fraud of any kind in the course of *these* proceedings; instead, all of the alleged misconduct took place in Monaco. To the extent that Petitioners had an affirmative duty to disclose their contacts with Monegasque officials (and the Court is not convinced they did), any breach of such a duty does not constitute fraud upon the court. *Compare Gleason*, 860 F.2d at 558 (upholding the district court's determination that perjury by a witness and nondisclosure of evidence "were intrinsic to the . . . proceeding and therefore did not rise to the level of fraud on the court"), *with Stewart v. O'Neill*, No. 00-CV-8560 (SAS), 2002 WL 1917888, at *2 (S.D.N.Y. Aug. 20, 2002) ("Examples of conduct that meet the definition of fraud upon the court include bribery of a judge, jury tampering, or hiring an attorney for the sole purpose of improperly influencing a judge."). And, in any event, Intervenors do not prove "by clear and convincing evidence" that Rybolovlev and Bersheda engaged in misconduct. *LinkCo, Inc.*, 615 F. Supp. 2d at 135. In support of their allegations, Intervenors cite two news articles, *see* ECF Nos. 191-13, 191-14; Bouvier's application to dismiss the criminal proceedings against him in Monaco, *see* ECF No. 191-2;[1] the indictments of Rybolovlev and Bersheda, *see* ECF No. 191-12; and provisions of the Monaco Penal Code and Code of Criminal Procedure, *see* ECF Nos. 191-1, 191-11.[2] Putting aside hearsay problems,

---

[1] Intervenors filed a copy of the application to dismiss in the original French and an English translation. The affidavit accompanying the filing, however, certifies only that the English version "is a true and correct *copy* of *an* English language translation" of the application to dismiss. ECF No. 191, Second ¶ 2 (emphasis added) (Paragraphs Two and Three are repeated due to an error in numeration). Intervenors fail to identify the translator and his or her qualifications or to certify that the translation is true and accurate.

[2] Intervenors filed copies of these provisions in the original French, "together with unofficial translations of such sections into English." ECF No. 191, First and Second ¶ 3. Intervenors again fail to identify the source of the "unofficial" translations or to certify their accuracy.

even taken together, these documents do not prove by clear and convincing evidence that Rybolovlev and Bersheda engaged in misconduct, let alone misconduct that affected the integrity of proceedings before *this* Court.

That is enough to deny Intervenors' motion. But even if there were a valid procedural basis to revisit the Court's Section 1782 decision in the first instance, Intervenors would not be entitled to relief. To obtain discovery, "Section 1782 applicants must meet certain 'statutory requirements': (1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal,' and (3) the applicant must be either a foreign tribunal or an 'interested person.'" *In re Accent Delight Int'l Ltd.*, 869 F.3d at 128 (quoting *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015)). If those requirements are met, Section 1782 "authorizes, but does not require, a federal district court" to grant the application, instead leaving the ultimate decision to the discretion of the district court. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). In determining whether to exercise that discretion, a district court should consider the so-called "*Intel* factors": (1) whether the person from whom discovery is sought is participating in the foreign proceeding; (2) the nature of the foreign tribunal and its receptiveness to U.S. judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *See id.* at 264-65.

The allegations against Rybolovlev and Bersheda do not impact the Court's earlier finding that the petition satisfied the statutory requirements. *See In re Application of Accent Delight Int'l Ltd.*, 2016 WL 5818597, at *2. Of the discretionary *Intel* factors, Intervenors' allegations are arguably relevant only to "the nature of the foreign tribunal" and the "character of

the proceedings underway abroad." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (citing *Intel*); *see also Deposit Ins. Agency v. Leontiev*, 17-MC-414 (GBD) (SN), 2018 WL 3536083, at *4 (S.D.N.Y. July 23, 2018) (considering whether the foreign proceedings are "suspect" or "fraudulent"). Intervenors, however, do not specify what, if any, prejudice they suffered as a result of the alleged misconduct. They identify no charges that would not have been brought absent misconduct, no evidence forged or wrongfully acquired, no testimony falsely given, no defenses precluded, and no other specific disadvantage created by the misconduct. In fact, they themselves acknowledge that, even "without the corruption, Petitioners might have still been able to initiate criminal proceedings relative to Bouvier in Monaco." Intervenors' Mem. 23.[3] Although Intervenors claim that "Rybolovlev and Bersheda sought to obtain a wildly unfair advantage in the Monaco criminal proceeding" and "did so," *id.*, their failure to articulate and prove any such effect would be fatal to their motion even were it not dead on arrival for the reasons already stated.

It is true that district courts should "consider the effect of its [Section 1782] decision on the procedural parity of the parties to the [foreign] litigation" so as not to cause "imbalanced discovery" between the parties to the foreign litigation. *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) (internal quotation marks omitted) (citing *Ishihara Chem. Co. v. Shipley Co. (In re Ishihara Chem. Co.)*, 251 F.3d 120, 127 n.5 (2d Cir. 2001)). The relevant question, however, is whether and to what extent the discovery ordered pursuant to Section 1782 would itself cause an

---

[3] Intervenors intimate that, had Rybolovlev's and Bersheda's misconduct been known, the investigating magistrate in Monaco would not have written the letter to this Court that the Court found critical in establishing that Petitioners could use the Discovery Materials in the Monaco proceedings. Reply 7-8. The Court will not attempt to divine what the magistrate would or would not have done in such a hypothetical, counterfactual world. In any event, Intervenors do not suggest that the substance of the magistrate's letter would have changed had the allegations against Rybolovlev and Bersheda been known.

9

imbalance. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) ("In order to maintain [ ] the balance between litigants that each nation creates within its own judicial system, the district court was free to insist that [the petitioner] submit any evidence that it obtained in this country to the [foreign proceedings], regardless of whether the evidence helped or hindered [the petitioner's] defense to [the respondent's] claim." (internal quotation marks and citation omitted)); *see also In re Ishihara Chem. Co.*, 251 F.3d at 127 n.5 ("Were we to reach the merits of this appeal, we would have to consider whether allowing such imbalanced discovery to proceed under the circumstances of this case would be an abuse of the district court's discretion."). Intervenors argue that the discovery would allow Petitioners to "leverage" the advantage they had purportedly obtained in the Monegasque proceeding. Intervenors' Mem. 22. The relative strength of the parties in the Monegasque proceeding is relevant, however, only to the extent that the proceedings here disrupt it. *See Application of Gianoli Aldunate*, 3 F.3d 54, 60 (2d Cir. 1993) (holding that "maintaining the balance between litigants that each nation creates within its own judicial system" is a "legitimate policy consideration" with respect to analysis under Section 1782).

Intervenors also ask whether the Court would "have found that Petitioners had not sought to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" had it known or the allegations of "serious criminal activity . . . under Monaco law." ECF No. 200, at 8; *see Intel*, 542 U.S. at 264. But the Court still would have reached such a finding. Although perhaps ambiguously phrased, the discretionary factor referenced by Intervenors is implicated when the petition *itself* is an attempt to circumvent proof-gathering or other policies. *See, e.g.*, *In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019) (finding that this factor "plainly weighed in favor of discovery" because "no argument has been made that

Petitioners are attempting to procure documents . . . in contravention of restrictions in place in the foreign proceedings"); *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (noting the concern that the applicant was "trying to circumvent the Netherlands' more restrictive discovery practices" by filing a Section 1782 petition for discovery from foreign party's U.S.-based counsel); *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015) (noting the concern that Section 1782 may allow an applicant to "use foreign litigation as a ruse for obtaining discovery in the United States without complying with the usual procedures of the Federal Rules of Civil Procedure"); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012) ("[A] district court may deny the section 1782 application where it suspects that the discovery is being sought for the purposes of harassment."). Intervenors cite no case in which the analysis of this factor included consideration of whether the petitioners violated proof-gathering or other policies through means other than the petition itself.

## CONCLUSION

The Court obviously does not condone misconduct or illegal conduct. The allegations against Rybolovlev and Bersheda are serious (albeit unproved). But, for the reasons discussed above, they do not provide a basis for this Court to revisit its earlier decisions, let alone grant the sweeping relief that Intervenors seek. Accordingly, Intervenors' motion is DENIED.

The Clerk of Court is directed to terminate ECF No. 190.

SO ORDERED.

Dated: December 10, 2019
New York, New York

JESSE M. FURMAN
United States District Judge

11