LETTER TO THE HONORABLE
JESSE M. FURMAN, dated December 16, 2019

# Exhibit A

**PRINCIPAUTÉ DE MONACO**

Cour d'appel Chambre du conseil
(Instruction)

Dossier JI n° CAB1/15/04
Dossier PG n° 2015/000039

R.1339

☐ NP – ☐ P– ☒ PLN

PHOTOCOPIE CERTIFIÉE CONFORME

Me Lecuyer

## ARRET DU 12 DECEMBRE 2019

LA CHAMBRE DU CONSEIL DE LA COUR D'APPEL DE LA PRINCIPAUTE DE MONACO, statuant comme juridiction d'instruction,

**I- Dossier JI n° CAB1/15/04 - Dossier PG n° 2015/000039**

En la cause de :

**Yves BOUVIER,**

**PRESENT, assisté** de **Maître Charles LECUYER**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel il a fait élection de domicile, **Maître Frank MICHEL**, avocat-défenseur en cette même Cour, **Maître Luc BROSSOLLET**, **Maître Francis SZPINER**, **Maître François BAROIN** et **Maître Ron SOFFER**, avocats au Barreau de Paris, **Maître Alexandre CAMOLETTI** et **Maître David BITTON**, avocats au Barreau de Genève (Suisse), plaidant par **Maître Charles LECUYER** et par **Maître Frank MICHEL**, avocats-défenseurs, **Maître Luc BROSSOLET**, avocat au Barreau de Paris et **Maître David BITTON**, avocat au Barreau de Genève (Suisse) ;

**REQUERANT** aux fins d'annulation de la procédure d'information suivie contre :

**1) Yves BOUVIER**

Inculpé de :

- Escroqueries
- Complicité de blanchiment

**2) Tania BOLTADJIEVA épouse RAPPO**

Inculpée de : blanchiment

**PRESENTE, assistée** de **Maître Christophe BALLERIO**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel elle a fait élection de domicile, **Maître Pierre de PINGON**, avocat au Barreau de Paris et **Maître Denis FAYOLLE**, avocat au Barreau de Marseille, plaidant par **Maître Christophe BALLERIO**, avocat-défenseur et par **Maître Denis FAYOLLE**, avocat au Barreau de Marseille ;

En présence des parties civiles :

1) la **société ACCENT DELIGHT INTERNATIONAL LIMITED**
2) la **société XITRANS FINANCE LIMITED**

**ABSENTES,** représentées par **Maître Thomas GIACCARDI**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel elles ont fait élection de domicile, **Maître Géraldine GAZO**, avocat-défenseur en cette même Cour, **Maître Tetiana BERSHEDA,** avocat au Barreau de Genève (Suisse), **Maître Jean-Michel DARROIS** et **Maître Hervé TEMIME**, avocats au Barreau de Paris, et **Maître Gérard BAUDOUX**, avocat au Barreau de Nice, plaidant par **Maître Thomas GIACCARDI**, avocat-défenseur, **Maître Hervé TEMIME** et par **Maître Martin REYNAUD**, avocats au Barreau de Paris ;

3) **Ekaterina RYBOLOVLEVA, bénéficiaire de THE DOMUS TRUST**

**ABSENTE,** représentée par **Maître Thomas GIACCARDI**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel elle a fait élection de domicile, **Maître Géraldine GAZO**, avocat-défenseur en cette même Cour, **Maître Tetiana BERSHEDA**, avocat au Barreau de Genève (Suisse), **Maître Jean-Michel DARROIS** et **Maître Hervé TEMIME**, avocats au Barreau de Paris et plaidant par **Maître Thomas GIACCARDI**, avocat-défenseur, **Maître Hervé TEMIME** et par **Maître Martin REYNAUD**, avocats au Barreau de Paris ;

4) **Dmitriy RYBOLOVLEV**

**ABSENT,** représenté par **Maître Thomas GIACCARDI**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel il a fait élection de domicile, **Maître Géraldine GAZO**, avocat-défenseur en cette même Cour, **Maître Tetiana BERSHEDA**, avocat au Barreau de Genève (Suisse), et **Maître Hervé TEMIME**, avocat au Barreau de Paris, plaidant par **Maître Thomas GIACCARDI**, avocat-défenseur, **Maître Hervé TEMIME** et par **Maître Martin REYNAUD**, avocats au Barreau de Paris ;

Et du :

**MINISTERE PUBLIC ;**

**II - Dossier JI n° CAB1/15/04 - Dossier PG n° 2015/000039**

En la cause de :

**Tania BOLTADJIEVA épouse RAPPO**, née le 20 novembre 1950 à SOFIA (Bulgarie), de nationalité bulgare et suisse,

**PRESENTE**, assistée de **Maître Christophe BALLERIO**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel elle a fait élection de domicile, **Maître Pierre de PINGON**, avocat au Barreau de Paris et **Maître Denis FAYOLLE**, avocat au Barreau de Marseille, plaidant par **Maître Christophe BALLERIO**, avocat-défenseur et par **Maître Denis FAYOLLE**, avocat au Barreau de Marseille ;

**REQUERANTE** aux fins d'annulation des actes de la procédure en application de l'article 209 du Code de procédure pénale ;

Dans une procédure d'information suivie contre :

1) **Yves BOUVIER**

inculpé de :

- Escroqueries
- Complicité de blanchiment

**PRESENT**, assisté de **Maître Charles LECUYER**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel il a fait élection de domicile, **Maître Frank MICHEL**, avocat-défenseur en cette même Cour, **Maître Luc BROSSOLLET**, **Maître Francis SZPINER**, **Maître François BAROIN** et **Maître Ron SOFFER**, avocats au Barreau de Paris, **Maître Alexandre CAMOLETTI** et **Maître David BITTON**, avocats au Barreau de Genève (Suisse), plaidant par **Maître Charles LECUYER** et par **Maître Frank MICHEL**, avocats-défenseurs, **Maître Luc BROSSOLET**, avocat au Barreau de Paris et **Maître David BITTON**, avocat au Barreau de Genève (Suisse)  ;

2) **Tania BOLTADJIEVA épouse RAPPO**

inculpée de :

- Blanchiment

En présence des parties civiles :

1) la **société ACCENT DELIGHT INTERNATIONAL LIMITED**
2) la **société XITRANS FINANCE LIMITED**

**ABSENTES**, représentées par **Maître Thomas GIACCARDI**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel elles ont fait élection de domicile, **Maître Géraldine GAZO**, avocat-défenseur en cette même Cour, **Maître Tetiana BERSHEDA**, avocat au Barreau de Genève (Suisse), **Maître Jean-Michel DARROIS** et **Maître Hervé TEMIME**, avocats au Barreau de Paris, et **Maître Gérard BAUDOUX**, avocat au Barreau de Nice, plaidant par **Maître Thomas GIACCARDI**, avocat-défenseur, **Maître Hervé TEMIME** et par **Maître Martin REYNAUD**, avocats au Barreau de Paris ;

3) Ekaterina **RYBOLOVLEVA**, **bénéficiaire de THE DOMUS TRUST**

**ABSENTE**, **représentée** par **Maître Thomas GIACCARDI**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel elle a fait élection de domicile, **Maître Géraldine GAZO**, avocat-défenseur en cette même Cour, **Maître Tetiana BERSHEDA**, avocat au Barreau de Genève (Suisse), **Maître Jean-Michel DARROIS** et **Maître Hervé TEMIME**, avocats au Barreau de Paris et plaidant par **Maître Thomas GIACCARDI**, avocat-défenseur, **Maître Hervé TEMIME** et par **Maître Martin REYNAUD**, avocats au Barreau de Paris ;

4) Dmitriy **RYBOLOVLEV**

**ABSENT**, **représenté** par **Maître Thomas GIACCARDI**, avocat-défenseur près la Cour d'appel de Monaco, chez lequel il a fait élection de domicile, **Maître Géraldine GAZO**, avocat-défenseur en cette même Cour, **Maître Tetiana BERSHEDA**, avocat au Barreau de Genève (Suisse), et **Maître Hervé TEMIME**, avocat au Barreau de Paris, plaidant par **Maître Thomas GIACCARDI**, avocat-défenseur, **Maître Hervé TEMIME** et par **Maître Martin REYNAUD**, avocats au Barreau de Paris ;

Et du :

**MINISTERE PUBLIC** ;

Vu la requête déposée le 4 octobre 2018 par Maître Charles LECUYER, avocat-défenseur pour Yves BOUVIER ;

Vu la requête déposée le 19 décembre 2018 par Maître Christophe BALLERIO, avocat-défenseur et celui de Tania BOLTADJIEVA épouse RAPPO ;

Vu l'article 209 du Code de procédure pénale ;

Vu les ordonnances présidentielles en date des 10 octobre 2018 et 21 décembre 2018 ;

Vu la convocation régulière des parties ;

Vu les conclusions du Ministère public en date du 15 mai 2019 ;

Vu les mémoires de Maître Thomas GIACCARDI, avocat-défenseur, pour la société ACCENT DELIGHT INTERNATIONAL LIMITED, la société XITRANS FINANCE LIMITED, Ekaterina RYBOLOVLEVA, Dmitriy RYBOLOVLEV, parties civiles, déposés les 4 avril et 28 juin 2019 ;

Vu le mémoire de Maître Christophe BALLERIO, avocat-défenseur, pour Tania BOLTADJIEVA épouse RAPPO, inculpée, en date du 6 juin 2019 ;

Vu le mémoire de Maître Charles LECUYER, avocat-défenseur pour Yves BOUVIER, inculpé, en date du 14 juin 2019 ;

Ouï Eric SENNA, Conseiller, en son rapport ;

Ouï le Ministère public en ses réquisitions ;

Ouï Maître Charles LECUYER, Maître Frank MICHEL, avocats-défenseurs, Maître Luc BROSSOLET, avocat au Barreau de Paris et Maître David BITTON, avocat au Barreau de Genève, pour Yves BOUVIER, inculpé, en leurs observations ;

Ouï Yves BOUVIER, inculpé, en ses observations ;

Ouï Maître Christophe BALLERIO, avocat-défenseur et Maître Denis FAYOLLE, avocat au Barreau de Marseille, pour Tania BOLTADJIEVA épouse RAPPO, inculpée, en leurs observations ;

Ouï Tania BOLTADJIEVA épouse RAPPO, inculpée, en ses observations ;

Ouï Maître Thomas GIACCARDI, avocat-défenseur, Maître Martin REYNAUD et Maître Hervé TEMIME, avocats au Barreau de Paris, pour, ACCENTE DELIGHT INTERNATIONAL LIMITED, XITRANS FINANCE LIMITED, Ekaterina RYBOLOVLEVA et Dmitriy RYBOLOVLEV, parties civiles, en leurs observations ;

Après débats à l'audience non publique du 4 juillet 2019 et en avoir délibéré conformément à la loi ;

La Chambre du conseil statue sur la requête déposée le 4 octobre 2018 par Maître Charles LECUYER, avocat-défenseur pour Yves BOUVIER ainsi que sur la requête déposée le 19 décembre 2018 par Maître Christophe BALLERIO, avocat-défenseur, pour Tania BOLTADJIEVA épouse RAPPO, inculpée, aux fins d'annulation des actes de la procédure en application de l'article 209 du Code de procédure pénale ;

**Considérant les faits suivants** :

Le 12 janvier 2015, les sociétés « ACCENT DELIGHT INTERNATIONAL LTD» « XITRANS FINANCE LTD » détenues par un trust de droit chypriote dénommé « THE DOMUS TRUST » dont une des bénéficiaires est Ekaterina RYBOLOVLEVA portaient plainte avec constitution de partie civile, des chefs pour faux en écritures au sens de l'article 90 du Code pénal et escroquerie au sens de l'article 330 du Code pénal contre Yves BOUVIER et tout autre participant.

À l'appui de leur plainte, elles exposaient que pour plusieurs acquisitions d'œuvre d'art auprès d'Yves BOUVIER, les sociétés XITRANS FINANCE LTD et ACCENT DELIGHT INTERNATIONAL LTD avaient été conseillées par Dmitriy RYBOLOVLEV et que ces sociétés étaient détenues par des structures familiales dont les bénéficiaires ont été ou sont Dmitriy RYBOLOVLEV et sa fille Ekaterina.

Elles considéraient s'agissant de l'achat de deux œuvres d'art à Yves Bouvier Nu couché au coussin bleu d'Amedeo Modigliani en janvier 2012 et Salvator Mundi de Léonard da Vinci en mai 2013, que les infractions précitées avaient été réalisées d'une part, dans la mesure où la facture relative à la vente ne révélait pas son prix effectif, et d'autre part que par ce subterfuge, ainsi que par les exigences de discrétion posées qui offraient à Yves BOUVIER une position privilégiée entre les deux parties à la convention, il y avait eu une tromperie préjudiciable sur le prix de vente lui-même.

Une information était ouverte le 24 février 2015 contre X pour des faits d'escroqueries, de complicité d'escroqueries au préjudice des sociétés « ACCENT DELIGHT INTERNATIONAL LTD » « XITRANS FINANCE LTD » et d'Ekaterina RYBOLOVLEVA bénéficiaire de « THE DOMUS TRUST » et Dmitriy RYBOLOVLEV ainsi que de blanchiment.

Yves BOUVIER était inculpé le 28 février 2015 des chefs d'escroqueries et de complicité de blanchiment et Tania BOLTADJIEVA épouse RAPPO était inculpée le même jour du chef de blanchiment.

Par ordonnance du même jour Yves BOUVIER et Tania BOLTADJIEVA épouse RAPPO étaient placés chacun sous contrôle judiciaire assorti d'un cautionnement concernant Yves BOUVIER.

Le 2 juillet 2015, Yves BOUVIER saisissait la Chambre du conseil de la Cour d'appel d'une requête aux fins d'annulation sur le fondement de l'article 209 alinéa 4 du code de procédure pénale concernant cette procédure aux termes de laquelle, il demandait de :

- constater l'incompétence de la juridiction de Monaco et donc de la procédure,

- subsidiairement, constater la nullité de la cote D56 et des actes subséquents soit la totalité de la procédure.

Yves BOUVIER faisait valoir au soutien de cette requête que la procédure suivie à son encontre comportait des violations graves et répétées des dispositions de l'article 6 de la Convention Européenne des Droits de l'Homme consacrant le droit à un procès équitable.

Par arrêt en date du 12 novembre 2015, la Chambre du conseil de la Cour d'appel a rejeté l'ensemble des demandes d'Yves BOUVIER et par arrêt du 28 avril 2016, la Cour de révision a rejeté son pourvoi.

Tania BOLTADJIEVA épouse RAPPO était interrogée par le magistrat instructeur le 2 décembre 2016.

Les 28 février et 1er mars 2017, le magistrat instructeur procédait à l'interrogatoire d'Yves BOUVIER.

Dmitriy RYBOLOVLEV était entendu le 23 juin 2017 en qualité de témoin et en qualité de partie civile les 26 juin 2017 et 12 juillet 2017.

Le 4 octobre 2018, Yves BOUVIER saisissait la Chambre du conseil de la Cour d'appel d'une requête, sur le fondement de l'article 6 de la Convention Européenne des Droits de l'Homme, tendant à voir :

- Annuler purement et simplement l'intégralité de la procédure n° CAB1 2015 004,

- Donner acte à Yves BOUVIER de ce qu'il n'entend pas demander réparation de son préjudice à la Principauté de Monaco,

- Donner acte à Yves BOUVIER de ce qu'il se réserve d'agir contre Dmitriy RYBOLOVLEV, ses entités et leurs organes devant les juridictions compétentes.

Au soutien de sa requête saisissant la Chambre du conseil en nullité, Yves BOUVIER fait valoir en substance que la procédure suivie à son encontre n'est faite que de violations graves et répétées des dispositions de l'article 6 de la Convention Européenne des Droits de l'Homme qui consacrent le droit à un procès équitable et expose à cet effet les éléments suivants :

- l'enquête préliminaire a été menée « *tambour battant* » comme l'a exigé le Procureur général et le Directeur de la Sureté publique,

- des soupçons de partialité ont nourris cette affaire bien avant que la défense du requérant ne s'en empare,

- ce défaut d'impartialité a gangréné toute l'enquête, puis l'instruction et toujours avec dissimulation en distinguant quatre phases,

- sa preuve résulte d'éléments parcellaires mis à jour à compter de l'été 2017,

**\* avant le dépôt de plainte**

- Dmitriy RYBOLOVLEV et son avocate Maître Tetiana BERSHEDA entretenaient un réseau relationnel conséquent notamment avec Régis ASSO, Directeur de la Sûreté Publique et Philippe NARMINO, Directeur des services judiciaires,

- Tetiana BERSHEDA a soumis son projet de plainte au Procureur général qui lui a apporté des conseils juridiques comme s'il était lui-même avocat des plaignantes,

**\* pendant l'enquête les contacts ont été actifs et permanents**

- la plainte est déposée le 12 janvier 2015 et dès le lendemain, Tetiana BERSHEDA est invitée à déjeuner par Philippe NARMINO qui n'ignore rien du dépôt de plainte et a demandé à voir le Procureur général pour « évoquer l'affaire »,

- dès le 14 janvier 2015, il existe une relation directe téléphonique entre Tetiana BERSHEDA et Christophe HAGET, commissaire principal en charge de l'enquête,

- ce dernier a reçu le 16 janvier 2015 Dmitriy RYBOLOVLEV avec son avocate à la demande expresse du Procureur général sans que cet échange ne figure en procédure,

- du 16 janvier 2015 au 25 février 2015, des réunions de travail quasi quotidiennes précédées d'une rencontre ont eu lieu entre Tetiana BERSHEDA et les enquêteurs dont on ne trouve aucune trace en procédure,

- Christophe HAGET a admis que les consignes de sa hiérarchie étaient de considérer le plaignant comme « ultra VIP » et d'ailleurs Régis ASSO qui se dit russophile entretenait une relation amicale avec cette avocate,

- le 9 et le 13 février 2015, Tetiana BERSHEDA a transmis aux enquêteurs des échanges de mails entre le requérant et Mikhail SAZONOV concernant l'œuvre de DEGAS dont on ne trouve aucune trace en procédure,

- le commandant principal FUSARI a été en contacts fréquents avec Tetiana BERSHEDA pour préparer la venue du requérant à Monaco et prévoir son interpellation sans que ces échanges, ni les informations reçues ne figurent en procédure,

- le 23 février 2015, cette dernière a fait part à Christophe HAGET d'une information capitale relative à la venue du requérant le 25 février au matin et la nécessité « d'en rester au plan A »,

- ces plans échafaudés en commun n'apparaissent pas en procédure,

- les enquêteurs ont dissimulé le fait qu'ils tendaient un piège au requérant à Monaco,

- Tetiana BERSHEDA a félicité les enquêteurs pour l'interpellation du requérant qu'elle appelle par le prénom,

- les 21 et 22 février 2015, celle-ci a séjourné dans le chalet de Dmitriy RYBOLOVLEV à Gstaad en Suisse où étaient accueillis aussi le couple NARMINO,

- Philippe NARMINO a menti publiquement sur les circonstances de sa présence chez Dmitriy RYBOLOVLEV, partie civile et sa proximité avec Tetiana BERSHEDA qu'il tutoie,

### *pendant la phase d'instruction, les contacts se sont poursuivis

- Tetiana BERSHEDA propose aux enquêteurs un témoin Abdallah CHATILA qu'elle accompagne le 26 février 2015 à la police sans que sa visite et les déclarations qu'il a faites n'apparaissent en procédure ce à la demande de ce témoin alors que certains éléments ont servi lors de la 3ème audition du requérant,

- le juge d'instruction en charge de la procédure interrogé sur l'existence de ces contacts entre partie civile et enquêteurs les a ignorés et leur a demandé de conduire leurs investigations de manière loyale, si Christophe HAGET en a convenu, il a menti tant sur la fréquence de ses relations avec Tetiana BERSHEDA que sur les liens de connivence qui existaient entre eux,

- les enquêteurs ont continué en toute partialité de lui rendre compte du déroulement des gardes à vue de Tania BOLTADJIEVA épouse RAPPO et d'Yves BOUVIER,

- la partie civile est restée en contact avec le Ministère public et le Directeur des services judiciaires alors que l'instruction était ouverte,

- l'enquête officielle telle qu'elle a été accessible aux inculpés occulte systématiquement toutes ces manœuvres,

- Tetiana BERSHEDA ne pouvait pas être présente lors de l'audition du témoin BOGDANOV en qualité d'interprète en violation de l'article 136 du code de procédure pénale,

- le projet de commission rogatoire internationale lancée en Suisse a été relu par les enquêteurs et contient néanmoins des informations de la HSBC sur les liens économiques supposés avec Tania BOLTADJIEVA épouse RAPPO dont l'inexactitude a pourtant été établie préalablement pendant leur garde à vue,

- alors même que le juge d'instruction est saisi, Tetiana BERSHEDA a continué de s'adresser directement aux enquêteurs,

- les échanges de mails entre les deux enquêteurs démontrent qu'ils ont pris fait et cause pour les parties civiles et qu'ils ne refusent rien à Tetiana BERSHEDA se comportant comme des prestataires de service,

- Christophe HAGET a prêté son concours début avril 2015 à la rédaction d'un communiqué de presse au bénéfice de Dmitriy RYBOLOVLEV,

- Tetiana BERSHEDA a été informée par les enquêteurs en temps réel de la plainte qui la visait, déposée par Tania BOLTADJIEVA épouse RAPPO,

- le 12 novembre 2015, Philippe NARMINO a adressé à son fils Antoine la copie de l'arrêt du 12 novembre 2015 qui a rejeté la première requête en nullité, ce qui montre bien qui se considérait comme personnellement impliqué,

- le 13 juillet 2017 le premier rapport d'expertise SLUCKI du téléphone de Tetiana BERSHEDA est remis au juge d'instruction qui l'a transmis au Procureur général le 25 juillet 2017 et à partir de ce moment les relations entre enquêteurs et Tetiana BERSHEDA se sont faites plus discrètes,

- pour se défendre du grief de partialité Christophe HAGET soutient que tout au long de ce dossier « *les ordres de la hiérarchie administrative et judiciaire ont été scrupuleusement respectés* »,

- le 4 septembre 2017, le Procureur général a saisi la chambre du conseil de la Cour d'appel d'une procédure disciplinaire contre les deux enquêteurs en indiquant que les SMS découverts par le biais de l'expertise « *laissent supposer une trop grande proximité de ces officiers... au soutien des intérêts de MR dans des procédures sans rapport avec les diligences qui leur étaient confiées par le juge d'instruction* »,

- le rejet de sa première demande en nullité ne saurait lui être opposé en l'état de ces éléments qui n'étaient pas établis à l'époque,

- Dmitriy RYBOLOVLEV a bénéficié d'un traitement de faveur tout au long de l'enquête qui a été jugée par le Parquet général comme une affaire prioritaire,

- Dmitriy RYBOLOVLEV a bénéficié d'un accès permanent et privilégié au Ministère public et aux enquêteurs,

- des actes d'enquête ont été volontairement dissimulés,

- le Parquet général est sorti de son rôle,

- l'amitié témoignée par les enquêteurs, le Directeur de la Sûreté Publique et le Directeur des services judiciaires à Tetiana BERSHEDA ès-qualités d'avocate des parties civiles est plus que déplacée et entache la procédure d'irrégularité,

- Christophe HAGET a même écrit au secrétaire général de l'ASAPPEM que les enquêteurs avaient enquêté pour défendre la victime,

- les parties civiles associées à l'enquête l'ont codirigée,

- Tetiana BERSHEDA a préparé la venue du requérant à Monaco pour faire procéder à son interpellation par les enquêteurs,

- le juge d'instruction a lancé une commission rogatoire très générale le jour même où il était saisi sans même avoir pris le temps d'étudier le dossier,

- l'ouverture d'une information par le Parquet général juste au moment où la certitude de l'arrivée du requérant est acquise permet de faciliter son interpellation et son éventuelle incarcération par le juge d'instruction,

- dans l'esprit de M. DRENO les intérêts de la partie civile et du Parquet général sont à ce point liés qu'il envoie à Tetiana BERSHEDA le droit de réponse qu'il a personnellement exercé à la suite d'un article de presse le mettant en cause,

- le défaut d'impartialité a contaminé toute la procédure et le requérant est donc fondé à avoir des appréhensions quant à la partialité avec laquelle son affaire est traitée.

Lors de l'audience du 20 décembre 2018, un calendrier procédural a été fixé et l'affaire renvoyée pour plaidoirie au 4 juillet 2019.

Par mémoire déposé le 4 avril 2019, la société de droit des îles vierges britanniques dénommée ACCENT DELIGHT INTERNATIONAL LIMITED, la société de droit des îles vierges britanniques dénommée XITRANS FINANCE LIMITED, Ekaterina RYBOLOVLEVA et Dmitriy RYBOLOVLEV, parties civiles, demandent à la Chambre du conseil de la Cour d'appel de :

- déclarer irrecevable la requête d'Yves BOUVIER,

- rejeter sa demande de nullité.

Au soutien de leur mémoire, les parties civiles font valoir que :

- ce mémoire est déposé sous les plus grandes réserves dans la mesure où Dmitriy RYBOLOVLEV est inculpé dans un autre dossier d'information d'où provient plusieurs pièces produites aux débats par la requérante et où la décision de la Chambre du conseil à intervenir serait susceptible de constituer une prise de position sur les faits qui lui sont reprochés,

- l'autorité de chose jugée s'applique aux décisions de la Chambre du conseil relatives à la régularité de la procédure d'instruction,

- la présente requête n'est pas recevable comme se heurtant à cette fin de non-recevoir dès lors qu'il existe une triple identité d'objet, de cause et de parties,

- la requête déposée le 2 juillet 2015 par Yves BOUVIER à laquelle Tania BOLTADJIEVA épouse RAPPO s'était associée tendait aux mêmes fins, reposait sur le même fondement et les mêmes moyens et opposait les mêmes parties et a donné lieu à un arrêt de rejet de la Chambre du conseil en date du 12 novembre 2015,

- l'invocation de nouveaux éléments matériels ne constitue pas de nouveaux moyens et n'est qu'un prétexte pour renouveler ses critiques à l'encontre de cette procédure,

- lorsqu'elle examine à la lumière de l'article 6 CESDH les phases précédant la phase de jugement, la CEDH procède à un examen global de la procédure et détermine si les éléments litigieux « ont irrémédiablement porté atteinte aux droits de la défense et nui à l'équité de la procédure dans son ensemble »,

- en l'espèce, à supposer même justifiées, les critiques du requérant sur l'enquête, le caractère équitable de la procédure n'est pas compromis dans la mesure où le cadre procédural dans lequel le requérant est inculpé garantit l'équité de la procédure dès lors que l'indépendance et l'impartialité du juge d'instruction sont assurées,

- il n'est pas démontré que les parties civiles auraient bénéficié d'un traitement de faveur des juges d'instruction,

- l'audition du juge MALBRANCKE par le juge LEVRAULT exclut tout doute puisqu'il a indiqué n'avoir subi aucune pression et malgré le contexte particulier et les enjeux en présence, il a affirmé être resté maître des investigations et des interpellations d'Yves BOUVIER et des époux RAPPO,

- selon le juge MALBRANCKE les nombreux contacts entre le conseil des plaignantes et les services de police n'ont pas eu d'influence sur sa prise de décision,

- il n'est pas démontré que ces inobservations éventuelles ont porté atteinte aux droits de la défense dès lors que la requérante a bénéficé de l'assistance d'un avocat pendant sa garde à vue et au cours de l'information et a pu se défendre en contestant l'équité de la procédure, bien avant l'exploitation du téléphone portable de Me BERSHEDA,

- les juges d'instruction successifs avertis par les inculpés de leurs doutes quant à l'impartialité de la procédure n'ont pris aucune initiative visant à écarter certains éléments du dossier ou à réviser sur leurs décisions,

- il n'est pas démontré que des procès-verbaux irréguliers auraient été retenus à son encontre par le juge d'instruction,

- l'article 209 du code de procédure pénale ne dispense pas le requérant d'exposer pour chaque acte ou chaque pièce, les motifs de l'annulation sollicitée,

- la loi n'interdit pas au Ministère public d'être en contact avec les victimes ou leurs conseils avant ou après le dépôt d'une plainte,

- l'article 34 du code de procédure pénale permet au Procureur général d'apprécier souverainement la suite à donner aux renseignements qu'il reçoit,

- la loi ne régit pas la durée de l'enquête et n'impose aucune durée minimale ou maximale, l'enquête a duré six semaines et n'a pas été anormalement rapide,

- la loi n'interdit pas aux enquêteurs d'avoir des contacts avec les plaignants et leurs conseils et en pratique, ces contacts sont habituels,

- l'examen des investigations réalisées ne confirme pas le postulat selon l'enquête aurait été menée exclusivement à charge,

- seules les autorités judiciaires et policières sont tenues au respect du principe de loyauté et il n'est pas établi que Me BERSHEDA avec la complicité de Jean-Pierre DRENO, ait commis les faits dont elle est inculpée,

- les policiers peuvent recourir à la ruse à condition qu'il ne s'agisse d'une provocation à favoriser la commission d'une infraction,

- la provocation à l'interpellation n'est pas une notion qui existe en droit positif,

- la loi ne fait pas obligation aux policiers de préciser par procès-verbal la façon dont l'arrestation a été préparée du point de vue opérationnel,

- c'est sur le fondement d'éléments tangibles figurant en procédure que le 30 janvier 2015, les premières investigations bancaires sur la requérante ont été effectuées, qui étaient justifiées a priori et ont été fructueuses dès lors qu'elles ont fait apparaître le versement de commissions sur ses comptes ouverts à la BNP et la HSBC,

- il n'est pas démontré que la retranscription par l'enquêteur des informations erronées fournies par la HSBC, faisant apparaitre par erreur que la requérante et Yves BOUVIER étaient associés dans trois SCI, ait été faite de mauvaise foi,

- bien au contraire, l'enquêteur a joint au procès-verbal, les documents reçus la banque et a pris immédiatement contact avec celle-ci pour vérifier les déclarations de la requérante,

- cet élément n'était pas nécessaire pour fonder son interpellation et n'a pas été pris en compte au moment de son inculpation,

- l'exploitation du téléphone portable de Me BERSHEDA dans le cadre de la présente procédure a été annulée par arrêt de la Chambre du conseil de la Cour d'appel du 7 mars 2019,

- l'article 211 du code de procédure pénale interdit de faire usage de cette pièce annulée,

- en tout état de cause, seuls dans l'absolu les actes d'instruction pourraient être susceptibles d'atteinte à la contradiction,

- la requérante ne démontre pas en quoi des éléments non versés au dossier auraient pu contribuer à sa défense ou en quoi ceux-ci auraient pu être des éléments à charge.

Par conclusions déposées le 15 mai 2019, le Procureur général requiert la Chambre du conseil de la Cour d'appel de :

- déclarer la requête recevable,

- rejeter la fin de non-recevoir tirée de l'autorité de la chose jugée,

- rejeter l'intégralité des demandes de nullité formées par Yves BOUVIER selon requête en date du 4 octobre 2018 et les demandes de « donner acte » ;

en faisant valoir essentiellement que :

- la requête formée par Yves BOUVIER est recevable,

Sur la fin de non-recevoir tirée de l'autorité de la chose jugée :

- la Chambre du conseil de la Cour d'appel s'est déjà prononcée sur la régularité de la procédure par un arrêt définitif rendu le 15 novembre 2015, la Cour de révision ayant rejeté le pourvoi formé par Yves BOUVIER et Tania BOLTADJIEVA épouse RAPPO,

- s'il n'est pas contestable qu'Yves BOUVIER était déjà, en 2015, à l'initiative de la requête en nullité de la procédure suivie, dont la régularité est à nouveau remise en cause, que ce dernier recherche encore l'annulation de cette procédure et que le fondement juridique des deux requêtes se résume à l'application de l'article 6 de la Convention européenne des droits de l'homme, il n'en reste pas moins que les moyens développés par la requérante ne sont pas identiques,

- depuis la décision rendue le 12 novembre 2015, qui a validé la procédure aux motifs que ni le comportement du Procureur général ni celui des enquêteurs n'ont contrevenu au principe de l'égalité des armes, n'ont mis en péril l'impartialité du magistrat instructeur ou de la juridiction de jugement appelée à connaître de l'affaire ou ont compromis gravement le caractère équitable du procès, une information judiciaire a été ouverte notamment pour trafic d'influence passif et actif et corruption active et passive, à la suite de la découverte de messages échangés ou de contacts entre l'avocate de l'une des parties civiles et le chef de parquet ou des fonctionnaires de police et plus généralement de faits ayant entraîné l'interpellation puis l'inculpation de plusieurs professionnels ayant eu à connaître de la procédure diligentée pour escroquerie à l'encontre d'Yves BOUVIER, notamment du directeur des services judiciaires et des policiers en charge du dossier,

- la procédure fondée sur l'exploitation des messages découverts dans le téléphone de Tetiana BERSHEDA, dont la régularité a été contestée devant la chambre du conseil de cette Cour, a été, depuis lors, validée, son point d'orgue étant l'arrêt rendu par la Cour de révision le 7 janvier 2019,

- il apparaît que les moyens de nullité invoqués par Yves BOUVIER, tirés notamment des investigations réalisées postérieurement à l'arrêt du 15 novembre 2015, sont fondés sur des éléments nouveaux, qui permettent au requérant d'échapper au couperet que constituerait l'application du principe de l'autorité de la chose jugée, et qui conduisent à conclure au rejet de la fin de non-recevoir invoquée par les parties civiles ;

Au fond :

- le principe essentiel qui régit l'application de l'article 6 de la Convention Européenne des Droits de l'Homme est l'équité, sachant que la notion de procès équitable n'est soumise à aucune règle unique et invariable ;

- elle est au contraire fonction des circonstances propres à chaque affaire,

- la Cour apprécie, au cas par cas, l'équité globale du procès pénal, à l'aune de la conduite de la procédure dans son ensemble et non de tel point ou de tel incident,

- il est possible qu'un élément déterminé soit à ce point décisif qu'il permette de juger de l'équité du procès à un stade précoce ou que l'effet cumulatif de plusieurs vices de procédure puisse conduire à une violation de l'article 6 alors que chacun d'eux pris isolément n'at pas permis à la Cour de Strasbourg de conclure au manque d'équité du procès à raison de chacun d'eux,

- l'égalité des armes est l'un des éléments inhérents à la notion de procédure équitable,

- elle veut que chaque partie se voie offrir une possibilité raisonnable de présenter sa cause dans des conditions qui ne la placent pas dans une situation de désavantage par rapport à son adversaire ;

- elle exige que soit ménagé un juste équilibre entre les parties,

- s'il est incontestable que Tetiana BERSHEDA, avocat, a été reçue par le procureur général, que celui-ci a donné son avis juridique sur un éventuel procédé de recueil de preuve et qu'il a traité la plainte déposée par les parties civiles en un cours laps de temps, il n'en reste pas moins que ni l'une ni l'autre de ces circonstances n'a pu constituer une atteinte au principe de l'égalité des armes,

- en effet, ainsi que l'a déjà jugé la Chambre du conseil et même si de nouveaux éléments permettent de conclure à l'absence d'autorité de chose jugée, il n'est toujours pas établi que le procureur général a cherché à favoriser les plaignants ou a détenu des informations parallèles, qu'il aurait communiquées aux parties civiles,

- la célérité, avec laquelle il aurait examiné et traité la plainte litigieuse, n'est pas davantage propre à justifier un traitement de faveur, dans l'intérêt de l'une ou l'autre partie, susceptible de porter atteinte au principe de l'égalité des armes ou au principe de l'équité,

- si celle-ci peut être qualifiée d'inhabituelle, la proximité de l'avocat des parties civiles avec le procureur général et les enquêteurs est sans effet sur le cours des investigations et sur la réalisation d'actes banals, auxquels il aurait en tout état de cause été procédé,

- à supposer qu'il puisse être reproché au procureur général d'avoir donné des conseils peu éclairés à l'avocate des parties civiles, à supposer qu'il puisse être blâmé dans l'exercice de sa mission en raison d'un choix procédural ou de la détermination du moment de l'ouverture d'une information - dont il semble être oublié qu'ils relèvent de sa liberté d'appréciation- et à supposer qu'il ait décidé d'ouvrir une enquête, sans avoir procédé aux vérifications que tout magistrat éclairé aurait effectuées, ces éléments ne sont pas de nature à vicier la procédure, dès lors qu'elle a été poursuivie sous le contrôle d'un juge, qui ne se voit gratifier d'aucun reproche, si ce n'est qu'il aurait délivré très rapidement une commission rogatoire, dans le cadre de laquelle est intervenue l'interpellation d'Yves BOUVIER,

- aucun texte ne contraint les officiers de police judiciaire à instrumenter à décharge, leur rôle étant, sous l'autorité et le contrôle du procureur ou du juge d'instruction, de recueillir des éléments de preuve destinés à établir la culpabilité d'une ou plusieurs personnes, en vue de leur inculpation ou de leur renvoi devant la juridiction compétente, sans que la loi ne leur impose de rechercher les éléments à décharge,

- c'est également dans cette quête de recherche de la vérité que s'inscrivent les questionnements relatifs à la compétence territoriale des autorités judiciaires de Monaco,

- les reproches, que pourraient susciter les comportements, stigmatisés par le requérant, la qualification pénale ou disciplinaire, qui pourrait leur être attribuée, ne sont pas, en toute hypothèse, susceptibles de remettre en cause l'impartialité des juges d'instruction successifs, responsables depuis l'ouverture de l'information du déroulement des investigations,

- force est également de constater que le premier magistrat instructeur, désigné par la Présidente du Tribunal de première instance, n'a pas jugé utile de rendre une ordonnance d'incompétence ou « *de déclarer, par une ordonnance motivée, qu'il n'y a pas lieu à suivre ou que l'action publique n'est pas recevable* »,

- entendu à l'initiative d'un collègue de Monaco, il a tenu à rappeler qu'il avait pris lui-même, en conscience, de manière impartiale, les décisions importantes de l'instruction,

- c'est également en toute liberté qu'il a décidé de faire procéder à l'interpellation d'Yves BOUVIER, de limiter le périmètre de son l'inculpation, de le placer sous contrôle judiciaire et d'en fixer les obligations,

- il n'est pas prétendu que l'information ne suit pas son cours, à charge et à décharge, que les parties n'ont pas pu faire usage des dispositions les autorisant à présenter des demandes d'actes au magistrat instructeur et que l'ensemble des parties n'ont pas pu saisir la juridiction compétente ainsi que la Cour de révision de requêtes en nullité,

- il a été rappelé que le procureur général a donné un conseil « juridique » à Tetiana BERSHEDA, avant que l'enquête ne débute et que celle-ci s'est, au cours de l'enquête, rapprochée des officiers de police judicaire, notamment pour leur apporter des éléments,

- or, sans prendre parti sur la qualité du conseil, dont a pu bénéficier l'avocat des parties civiles, il convient d'observer qu'aucun texte n'interdit au ministère public d'être en contact avec les victimes et/ou leurs conseils et qu'au contraire, cette possibilité de rapprochement lui permet d'accomplir sa mission, notamment celle de recueillir « les renseignements qui lui sont transmis, par les officiers de police judiciaire, ou par toute autre voie, sur les crimes et délits » (alinéa 3 de l'article 34 du code de procédure pénale),

- la possibilité pour les enquêteurs de rencontrer les avocats des parties civiles n'est pas davantage exclue et c'est à l'occasion de telles rencontres, que peut être envisagée l'interpellation d'une ou plusieurs personnes soupçonnées d'avoir commis une ou des infractions, lorsque celle-ci est conditionnée par un voyage sur le territoire national, par exemple,

- cette position, que les professionnels du droit pénal expérimentés, trouveront classique, est tout à fait partagée par monsieur MALBRANCKE, qui a décidé de l'interpellation d'Yves BOUVIER et a validé les conditions de cette interpellation,

- force est au surplus d'observer que le requérant n'a nullement invoqué la provocation,

- l'information de la présence de la personne recherchée à Monaco transmise par l'avocat des parties civiles aux enquêteurs, par conséquent, au juge d'instruction, ne constitue ni un stratagème ni une machination, qui auraient pu, à les supposer établis, être considérés comme des atteintes au principe de loyauté,

- le législateur n'exige ni des fonctionnaires de police ni des juges d'instruction qu'ils mentionnent très précisément les circonstances dans lesquelles ils ont été avisés de la présence à Monaco d'une personne visée par une enquête et l'identité de la personne qui les a en réalité informés, l'essentiel étant que les textes relatifs à la garde à vue soient parfaitement respectés,

- il est avéré que les procès-verbaux, qui auraient dû, selon le requérant, être joints à la procédure, ne seront utilisés ni par le ministère public ni par les parties civiles ni par l'éventuelle juridiction de jugement, dans l'hypothèse d'un renvoi.... puisque par définition, ils n'existent pas,

- il est démontré que les contacts allégués entre l'avocate des parties civiles et les fonctionnaires de police et le Procureur général ne pouvaient constituer ni une rupture de l'égalité des armes ni une entorse au principe de loyauté,

- cet argument, fondé partiellement sur l'expertise du téléphone portable de Tetiana BERSHEDA, récemment annulée par la Chambre du conseil, ne saurait être opérant,

- Yves BOUVIER n'a pas remis en cause la validité de son interpellation, de sa garde à vue, de son inculpation, au regard des dispositions du code de procédure pénale monégasque et l'activité procédurale liée à ce dossier suffit à démontrer qu'il a pu exercer les droits de la défense dans des conditions très satisfaisantes.

Par mémoire en réplique déposé le 14 juin 2019, Yves BOUVIER reprend sa demande d'annulation de l'intégralité de la procédure n° CAB1-2015/004.au visa de l'article 6 de la Convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales en faisant valoir essentiellement que :

- les parties civiles formulent des réserves desquelles elles ne tirent aucune conséquence,

- il ne voit pas d'inconvénients à ce que l'intégralité des deux autres procédures d'information où Dmitriy RYBOLOVLEV est inculpé soit versée à la présente procédure,

- en tout état cause, l'objet de la présente requête ne vise à se prononcer sur l'existence d'un délit de trafic d'influence ou de corruption,

- le moyen d'irrecevabilité tiré de l'autorité de la chose jugée doit être écarté dès lors qu'un certain nombre de faits et de preuves n'ont été révélés qu'à partir du mois de juillet 2017,

- l'identité des parties n'est pas la même puisque Dmitry RYBOLOVLEV s'est constitué partie civile postérieurement et il n'y a pas ni identité d'objet, ni identité de cause,

- si le Ministère public n'est pas astreint à une obligation d'impartialité comme le juge, il doit néanmoins respecter la lettre et l'esprit de la loi nationale, il lui appartient de veiller au principe d'égalité des armes et de s'interdire tous manquements à l'impartialité,

- les différents manquements des enquêteurs à l'obligation d'impartialité doivent s'analyser en droit comme des manquements du juge d'instruction,

- à deux reprises, Frédéric FUSARI en septembre 2015, puis en janvier 2016, a transmis au juge d'instruction un document intitulé « YBDR » se présentant comme une note synthétique du cas BOUVIER sans que ce document n'ait été coté en procédure alors que ce dernier contient des inexactitudes,

- si le juge d'instruction avait été informé de tout ce qu'il lui a été caché et de l'objet de la manipulation, il n'aurait sans doute pas procéder à son inculpation dans la mesure où la procédure méritait d'être mise en ordre et purgée de ses irrégularités,

- il ne lui appartient de faire la démonstration que la Chambre du conseil et les juridictions qui pourraient être saisies ne serait pas impartiales,

- l'exercice complet des droits de la défense suppose d'avoir accès à toutes les informations en relation avec cette procédure,

- à aucun moment, le Procureur général n'a informé la Cour d'appel des faits qu'il connaissait indubitablement et qui ont été révélés en juillet 2017,

- si la régularité de l'intégralité de la procédure est affectée, il n'est pas nécessaire de motiver la demande nullité acte par acte,

-le Procureur général ne répond pas aux griefs articulés dans sa requête notamment sur le défaut d'impartialité dont toute la procédure est empreinte.

Par mémoire en réplique déposé le 28 juin 2019, les parties civiles reprennent leurs moyens tendant à voir déclarer la requête irrecevable et au rejet de celle-ci en faisant valoir essentiellement que :

- le fait que Dmitriy RYBOLOVLEV ne se soit constitué partie civile qu'après le premier arrêt rendu le 12 novembre 2015 ne prive pas cette décision de l'autorité chose jugée,

- l'identité de parties ne concerne que la partie poursuivante et la partie poursuivie,

- les éléments matériels exposés dans la nouvelle requête ne constituent pas des demandes nouvelles, ni des moyens nouveaux lesquels figuraient dans la première requête en nullité de 2015,

- ce que le requérant désigne comme des « *points révélateurs de la partialité dénoncée* » ne sont que des éléments de fait tendant à illustrer le défaut d'impartialité sur lequel cette juridiction s'est déjà prononcé,

- la demande de nullité a le même objet et concerne les mêmes parties qu'en 2015,

- le Ministère Public qui n'est pas une autorité indépendante ne peut être soumis à l'article 6 CESDH,

- il n'est pas démontré que le juge d'instruction se serait fondé sur un acte non retranscrit au dossier ou aurait fait usage d'une pièce non communiquée,

- en réalité le requérant ne dénonce pas un défaut d'impartialité du juge d'instruction mais une liste d'irrégularités procédurales,

- les prétendues inobservations des exigences de l'article 6 CESDH, à les supposer établies, n'ont pas irrémédiablement porté atteinte aux droits de la défense, ni à l'équité de la procédure,

- il n'est pas démontré d'implication du Directeur des services judiciaires dans le déroulement de la procédure, ni que les relations entre les autorités judiciaires ou policières ou leur conseil auraient causé ou permis des violations de l'article 6 CESDH,

- le fait que Philippe NARMINO, en qualité de Directeur des services judiciaires, suivait de près cette procédure n'a rien d'anormal puisqu'il dirige l'action publique,

- il n'est aucunement établi par les deux notes citées par le requérant que ce dernier aurait interféré avec la procédure en cours,

- il est inexact de soutenir que les procès-verbaux des 19 et 23 février 2015 (D111 et D112) sont des faux puisqu'il n'est pas établi que ces documents aient été antidatés.

- le procès-verbal de renseignements du 19 février 2015 qui ne vise pas le requérant n'est pas le support de son inculpation,

- le requérant est sans qualité pour se prévaloir d'une irrégularité affectant l'interpellation d'un tiers,

- il omet de préciser que dans la procédure initiée sur sa plainte du 25 juin 2015 pour faux et usage de faux, le juge d'instruction n'a inculpé personne et a rendu une ordonnance de non-lieu frappée d'appel,

- la violation du secret de l'enquête et du secret de l'instruction n'est pas caractérisée puisqu'aucune disposition légale n'interdit les échanges d'informations entre les enquêteurs et les plaignants et leurs conseils en vue du bon déroulement de l'enquête.

Le 19 décembre 2018, Tania BOLTADJIEVA épouse RAPPO saisissait la Chambre du conseil de la Cour d'appel d'une requête, sur le fondement de l'article 6 de la Convention Européenne des Droits de l'Homme et des articles 24, 31, 42, 209 et suivants du code de procédure pénale, tendant à voir :

<u>Sur la violation du principe du principe de l'égalité des armes</u> ;

- Constater que le conseil des parties civiles a exercé des prérogatives, durant la phase d'enquête, qui ne sont pas prévues par la loi ;

- Constater que l'exercice de ces prérogatives a avantagé les parties civiles ;

- Constater que cette situation a violé le principe de l'égalité des armes ;

En conséquence :

- PRONONCER l'annulation de l'ensemble des procès-verbaux dressés au cours de l'enquête, ainsi que celle de tous les actes subséquents dont ils sont le support nécessaire (réquisitions aux fins d'informer (D149), ordonnance de désignation du juge d'instruction (D148), commission rogatoire adressée le 24 février 2015 (D150), procès-verbal de première comparution (D260), etc.) ;

<u>Sur la violation du principe de loyauté</u> ;

- Constater l'existence de liens entre les parties civiles et les fonctionnaires de la direction de la Sûreté publique, ainsi que le Procureur général ;

- Constater que ces liens ont amené le Procureur général ainsi que les enquêteurs à favoriser ou à réaliser des actes et des stratagèmes contraires à la loi ;

En conséquence :

- PRONONCER l'annulation de l'ensemble des procès-verbaux dressés au cours de l'enquête, ainsi que celle de tous les actes subséquents dont ils sont le support nécessaire (réquisitions aux fuis d'informer (D149), ordonnance de désignation du juge d'instruction (D148), commission rogatoire adressée le 24 février 2015 (D150), procès-verbal de première comparution (D260), etc.) ;

Sur la violation du principe du contradictoire ;

- Constater que les enquêteurs ont réalisé des actes qui n'ont pas été retranscrits en procédure ;

- Constater que Tania BOLTADJIEVA épouse RAPPO n'est pas en mesure de discuter contradictoirement, du fait de leur absence, certains actes réalisés dans le cadre de cette procédure ;

- Constater que cette situation permet de caractériser une violation certaine du principe du contradictoire ;

En conséquence :

- PRONONCER l'annulation de l'ensemble des procès-verbaux dressés au cours de l'enquête, ainsi que celle de tous les actes subséquents dont ils sont le support nécessaire (réquisitions aux fins d'informer (D149), ordonnance de désignation du juge d'instruction (D148), commission rogatoire adressée le 24 février 2015 (D150), procès-verbal de première comparution (D260), etc.).

Au soutien de sa requête saisissant la Chambre du conseil en nullité, elle fait valoir en substance que la procédure suivie à son encontre n'est faite que de violations graves et répétées des dispositions de l'article 6 de la Convention Européenne des Droits de l'Homme qui consacrent le droit à un procès équitable et que de multiples garanties procédurales n'ont pas été respectées relatives au principe de l'égalité des armes, au principe de loyauté et au principe du contradictoire et expose à cet effet les éléments suivants :

* l'égalité des armes suppose que les trois parties au procès pénal respectent le cadre d'intervention posé par la loi,

- il est établi qu'avant même que l'enquête préliminaire n'ait été ouverte, la partie civile a bénéficié d'un traitement de faveur de la part du Procureur général,

- ce dernier a reçu Me Tetiana BERSHEDA et a concouru à la rédaction de la plainte dans le cadre d'une consultation aussi informelle qu'inhabituelle,

- ceci explique l'extraordinaire célérité du Procureur général qui ordonnait l'ouverture de l'enquête dès le dépôt de la plainte,

- la partie civile a ainsi bénéficié d'un traitement de faveur et son conseil a organisé un grand nombre de réunions avec les enquêteurs dans le but de déterminer la conduite de l'enquête,

- Me BERSHEDA a été autorisée par les enquêteurs à assister aux auditions de la victime et d'un témoin en qualité d'interprète,

- avant même l'ouverture de l'information, un dossier exclusivement à charge avait été construit par Me BERSHEDA qui a totalement privatisé la police judiciaire au bénéfice de ses clients grâce à la proximité avec les enquêteurs et certaines hautes autorités judiciaires monégasques,

\* le principe de loyauté dans la recherche des preuves interdit de recourir à des stratagèmes de nature à vicier la recherche et l'établissement de la vérité,

- la proximité des parties civiles avec les policiers en charge de l'enquête a permis le recours à des procédés déloyaux,

- avant même que l'enquête ait commencé, le Procureur général n'a pas dissuadé Me BERSHEDA d'enregistrer clandestinement une conversation s'étant tenue entre elle et, Tania BOLTADJIEVA épouse RAPPO et Dmitriy RYBOLOVLEV,

- la déloyauté de ce procédé a conduit à son placement en garde à vue et celui de son époux,

- son interpellation et celle d'Yves BOUVIER sont le résultat d'un stratagème non retranscrit en procédure,

- l'exploitation du téléphone portable le 23 février 2015 de Me BERSHEDA a permis d'établir qu'elle était en relation avec le commissaire Christophe HAGET sur la venue à Monaco d'Yves BOUVIER lui donnant pour consignes d'en rester avec le « plan A »,

- la consistance de ce « plan » et du « plan B » ne sont pas connus mais cela permet d'établir la place occupée par Me BERSHEDA auprès de policiers n'hésitant pas leurs donner des instructions,

- les policiers n'ont aucunement mentionné ses relations privilégiées avec la partie civile et ont dissimulé la provenance des informations figurant dans le procès-verbal du 24 février 2015,

- leur déloyauté est aussi caractérisée par le fait de présenter de manière tronquée certains éléments permettant de bâtir des charges factices,

- ils ont ainsi mis en exergue un courrier de la banque HSBC la faisant apparaitre faussement comme étant l'associée d'Yves BOUVIER dans plusieurs sociétés sises à Monaco sans pour autant joindre les éléments annexés par la banque qui les contredisaient manifestement,

\*le principe contradictoire impose que les multiples contacts existant Me BERSHEDA et les enquêteurs soient mentionnés en procédure,

- au cours de ces réunions, des documents ont été transmis aux enquêteurs dont sa défense ne pourra jamais discuter contradictoirement,

- ces relations ont été découvertes de manière fortuite à l'occasion d'autres investigations conduits dans des informations pénales distinctes,

- le juge de la liberté et de la détention a été indigné lorsqu'il a appris les contacts étroits qui existaient entre M.HAGET et Me BERSHEDA au moment de la garde à vue qu'elle a subie.

Lors de l'audience du 31 janvier 2019, un calendrier procédural a été fixé et l'affaire renvoyée pour plaidoiries au 4 juillet 2019.

Par mémoire déposé le 4 avril 2019, la société de droit des îles vierges britanniques dénommée ACCENT DELIGHT INTERNATIONAL LIMITED, la société de droit des îles vierges britanniques dénommée XITRANS FINANCE LIMITED, Ekaterina RYBOLOVLEVA et Dmitriy RYBOLOVLEV, parties civiles, demandant à la Chambre du conseil de la Cour de :

- déclarer irrecevable la requête de Tania BOLTADJIEVA épouse RAPPO,

- rejeter sa demande de nullité.

Au soutien de leur mémoire, les parties civiles font valoir que :

- ce mémoire est déposé sous les plus grandes réserves dans la mesure où Dmitriy RYBOLOVLEV est inculpé dans un autre dossier d'information d'où provient plusieurs pièces produites aux débats par la requérante et où la décision de la Chambre du conseil à intervenir serait susceptible de constituer une prise de positions sur les faits qui lui sont reprochés,

- l'autorité de chose jugée s'applique aux décisions de la Chambre du conseil relatives à la régularité de la procédure d'instruction,

- la présente requête n'est pas recevable comme se heurtant à cette fin de non-recevoir dès lors qu'il existe une triple identité d'objet, de cause et de parties,

- la requête déposée le 2 juillet 2015 par Yves BOUVIER à laquelle Tania BOLTADJIEVA épouse RAPPO s'était associée tendait aux mêmes fins, reposait sur le même fondement et les mêmes moyens et opposait les mêmes parties et a donné lieu à un arrêt de rejet de la Chambre du conseil en date du 12 novembre 2015,

- l'invocation de nouveaux éléments matériels ne constitue pas de nouveaux moyens et n'est qu'un prétexte pour renouveler ses critiques à l'encontre de cette procédure,

- lorsqu'elle examine à la lumière de l'article 6 CESDH les phases précédant la phase de jugement, la CEDH procède à un examen global de la procédure et détermine si les éléments litigieux *ont irrémédiablement porté atteinte aux droits de la défense et nui à l'équité de la procédure dans son ensemble »*,

- en l'espèce, à supposer même justifiées les critiques de la requérante sur l'enquête, le caractère équitable de la procédure n'est pas compromis dans la mesure où le cadre procédural dans lequel la requérante est inculpée garantit l'équité de la procédure dès lors que l'indépendance et l'impartialité du juge d'instruction sont assurées,

- il n'est pas démontré que les parties civiles auraient bénéficié d'un traitement de faveur des juges d'instruction,

- l'audition du juge MALBRANCKE par le juge LEVRAULT exclut tout doute puisqu'il a indiqué n'avoir subi aucune pression et malgré le contexte particulier et les enjeux en présence, il a affirmé être resté maître des investigations et des interpellations d'Yves BOUVIER et des époux RAPPO,

- selon le juge MALBRANCKE les nombreux contacts entre le conseil des plaignantes et les services de police n'ont pas eu d'influence sur sa prise de décision,

- il n'est pas démontré que ces inobservations éventuelles ont porté atteinte aux droits de la défense dès lors que la requérante a bénéficé de l'assistance d'un avocat pendant sa garde à vue et au cours de l'information et a pu se défendre en contestant l'équité de la procédure, bien avant l'exploitation du téléphone portable de Me BERSHEDA,

- les juges d'instruction successifs avertis par les inculpés de leurs doutes quant à l'impartialité de la procédure n'ont pris aucune initiative visant à écarter certains éléments du dossier ou à réviser sur leurs décisions,

- il n'est pas démontré que des procès-verbaux irréguliers auraient été retenus à son encontre par le juge d'instruction,

- l'article 209 du code de procédure pénale ne dispense pas la requérante d'exposer pour chaque acte ou chaque pièce, les motifs de l'annulation sollicitée,

- la loi n'interdit pas au Ministère public d'être en contact avec les victimes ou leurs conseils avant ou après le dépôt d'une plainte,

- l'article 34 du code de procédure pénale permet au Procureur général d'apprécier souverainement la suite à donner aux renseignements qu'il reçoit,

- la loi ne régit pas la durée de l'enquête et n'impose aucune durée minimale ou maximale, l'enquête a duré six semaines et n'a pas été anormalement rapide,

- la loi n'interdit pas aux enquêteurs d'avoir des contacts avec les plaignants et leurs conseils et en pratique, ces contacts sont habituels,

- l'examen des investigations réalisées ne confirme pas le postulat selon l'enquête aurait été menée exclusivement à charge,

- seules les autorités judiciaires et policières sont tenues au respect du principe de loyauté et il n'est pas établi que Me BERSHEDA avec la complicité de Jean-Pierre DRENO, ait commis les faits dont elle est inculpée,

- les policiers peuvent recourir à la ruse à condition qu'il ne s'agisse d'une provocation à favoriser la commission d'une infraction,

- la provocation à l'interpellation n'est pas une notion qui existe en droit positif,

- la loi ne fait pas obligation aux policiers de préciser par procès-verbal la façon dont l'arrestation a été préparée du point de vue opérationnel,

- c'est sur le fondement d'éléments tangibles figurant en procédure que le 30 janvier 2015, les premières investigations bancaires sur la requérante ont été effectuées, qui étaient justifiées a priori et ont été fructueuses dès lors qu'elles ont fait apparaître le versement de commissions sur ses comptes ouverts à la BNP et la HSBC,

- il n'est pas démontré que la retranscription par l'enquêteur des informations erronées fournies par la HSBC, faisant apparaitre par erreur que la requérante et Yves BOUVIER étaient associés dans trois SCI, ait été faite de mauvaise foi,

- bien au contraire, l'enquêteur a joint au procès-verbal, les documents reçus la banque et a pris immédiatement contact avec celle-ci pour vérifier les déclarations de la requérante,

- cet élément n'était pas nécessaire pour fonder son interpellation et n'a pas été pris en compte au moment de son inculpation,

- l'exploitation du téléphone portable de Me BERSHEDA dans le cadre de la présente procédure a été annulée par arrêt de la Chambre du conseil de la Cour d'appel du 7 mars 2019,

- l'article 211 du code de procédure pénale interdit de faire usage de cette pièce annulée,

- en tout état de cause, seuls dans l'absolu les actes d'instruction pourraient être susceptibles d'atteinte à la contradiction,

- la requérante ne démontre pas en quoi des éléments non versés au dossier auraient pu contribuer à sa défense ou en quoi ils auraient pu être des éléments à charge.

Par conclusions déposées le 15 mai 2019, le Procureur général requiert la Chambre du conseil de la Cour de :

- déclarer la requête recevable,

- rejeter la fin de non-recevoir tirée de l'autorité de la chose jugée,

- rejeter l'intégralité des demandes de nullité formées par Tania BOLTADJIEVA épouse RAPPO selon requête en date du 19 décembre 2018;

en faisant valoir essentiellement que :

- la requête formée par Tania BOLTADJIEVA épouse RAPPO est recevable,

- il n'est pas contestable que Tania BOLTADJIEVA épouse RAPPO s'était, en 2015, associée à la requête en nullité de la procédure suivie par un juge d'instruction, déposée par son co-inculpé et que la régularité de cette procédure est à nouveau remise en cause,

- si cette dernière recherche encore l'annulation de cette procédure et que le fondement juridique des deux requêtes se résume à l'application de l'article 6 de la Convention européenne des droits de l'homme, il n'en reste pas moins que les moyens développés par la requérante ne sont pas identiques,

- depuis la décision rendue le 12 novembre 2015, qui a validé la procédure aux motifs que ni le comportement du Procureur général, ni celui des enquêteurs n'ont contrevenu au principe de l'égalité des armes, n'ont mis en péril l'impartialité du magistrat instructeur ou de la juridiction de jugement appelée à connaître de l'affaire ou ont compromis gravement le caractère équitable du procès, une information judiciaire a été ouverte notamment pour trafic d'influence passif et actif et corruption active et passive, à la suite de la découverte de messages échangés ou de contacts entre l'avocate de l'une des parties civiles et le chef de parquet ou des fonctionnaires de police et plus généralement de faits ayant entraîné l'interpellation puis l'inculpation de plusieurs professionnels ayant eu à connaître de la procédure diligentée pour blanchiment à l'encontre de Tania BOLTADJIEVA épouse RAPPO, notamment du Directeur des services judiciaires et des policiers en charge du dossier,

- la procédure fondée sur l'exploitation des messages découverts dans le téléphone de Tetiana BERSHEDA, dont la régularité a été contestée devant la chambre du conseil de cette cour, a été, depuis lors, validée, son point d'orgue étant l'arrêt rendu par la Cour de révision le 7 janvier 2019,

- il apparaît que les moyens de nullité invoqués par Tania BOLTADJIEVA épouse RAPPO, tirés notamment des investigations réalisées postérieurement à l'arrêt du 15 novembre 2015, sont fondés sur des éléments nouveaux, qui permettent à la requérante d'échapper au couperet que constituerait l'application du principe de l'autorité de la chose jugée, et qui conduisent à conclure au rejet de la fin de non-recevoir invoquée par les parties civiles ;

Au fond :

- il n'est pas contesté que le Procureur général ait donné un conseil « *juridique* » à Tetiana BERSHEDA, avant que l'enquête ne débute et que celle-ci s'est, au cours de l'enquête, rapprochée des officiers de police judiciaire, notamment pour leur apporter des éléments,

- or, sans prendre parti sur la qualité du conseil, dont a pu bénéficier l'avocat des parties civiles aucun texte n'interdit au ministère public d'être en contact avec les victimes et/ou leurs conseils et qu'au contraire, cette possibilité de rapprochement lui permet d'accomplir sa mission, notamment celle de recueillir « *les renseignements qui lui sont transmis, par les officiers de police judiciaire, ou par toute autre voie, sur les crimes et délits* » (alinéa 3 de l'article 34 du code de procédure pénale),

- la possibilité pour les enquêteurs de rencontrer les avocats des parties civiles n'est pas davantage exclue et c'est à l'occasion de telles rencontres, que peut être envisagée l'interpellation d'une ou plusieurs personnes soupçonnées d'avoir commis une ou des infractions, lorsque celle-ci est conditionnée par exemple par un voyage sur le territoire national, par exemple,

- cette position, que les professionnels du droit pénal expérimentés, trouveront classique, est tout à fait partagée par Monsieur MALBRANCKE, qui a décidé de l'interpellation d'Yves BOUVIER et a validé les conditions de cette interpellation,

- force est d'observer que la requérante n'a nullement invoqué la provocation,

- l'information de la présence de la personne recherchée à Monaco transmise par l'avocat des parties civiles aux enquêteurs, par conséquent, au juge d'instruction, ne constitue ni un stratagème ni une machination, qui auraient pu, à les supposer établis, être considérés comme des atteintes au principe de loyauté,

- le législateur n'exige ni des fonctionnaires de police ni des juges d'instruction qu'ils mentionnent très précisément les circonstances dans lesquelles ils ont été avisés de la présence à Monaco d'une personne visée par une enquête et l'identité de la personne qui les a en réalité informés, l'essentiel étant que les textes relatifs à la garde à vue soient parfaitement respectés,

- les pièces de la procédure établissent, quant à elles, la manière dont Tania BOLTADJIEVA épouse RAPPO a été identifiée, dont ses activités ont été mises en évidence et dont ses liens avec Yves BOUVIER, dans le cadre du négoce d'objets d'art, ont été mis en exergue,

- c'est sur le fondement de ces éléments indiscutables que les premières investigations bancaires ont été accomplies, révélant des transferts d'argent très importants à son bénéfice et établissant l'existence d'une relation d'affaires avec Yves BOUVIER,

- il n'est pas établi, à cet égard, que la substitution du nom d'Yves BOUVIER à celui d'Olivier RAPPO soit la « *preuve de la déloyauté la plus absolue dans leur présentation de la réponse ahurissante de la banque HSBC...*» à la réquisition des policiers ou soit le fruit d'une « *manipulation grossière* » de cette banque,

- la seule allégation de tels faits, non accompagnée de preuves incontestables, ne suffit pas à établir la preuve de la déloyauté des policiers qui, dès qu'ils ont été tancés, par Tania BOLTADJIEVA épouse RAPPO, durant sa garde à vue, ont procédé aux vérifications qui s'imposaient,

- concernant la violation invoquée du principe du contradictoire, il est avéré que les procès-verbaux, qui auraient dû, selon la requérante, être joints à la procédure, ne seront utilisés ni par le ministère public ni par les parties civiles ni par l'éventuelle juridiction de jugement, dans l'hypothèse d'un renvoi puisque par définition, ceux-ci n'existent pas,

- de plus, il est démontré que les contacts allégués entre l'avocate des parties civiles et les fonctionnaires de police et le procureur général ne pouvaient constituer ni une rupture de l'égalité des armes, ni une entorse au principe de loyauté,

- dès lors, cet argument, fondé partiellement sur l'expertise du téléphone portable de Tetiana BERSHEDA, récemment annulée par la chambre du conseil, n'est pas opérant.

Par mémoire complémentaire en réplique déposé le 6 juin 2019, la requérante reprend sa demande d'annulation de la procédure en y ajoutant :

- Sur la violation du principe du principe de l'égalité des armes

**-** CONSTATER que Monsieur Philippe NARMINO, en qualité de Directeur des Services Judiciaires, Monsieur Jean-Pierre DRENO, en qualité de Procureur Général, Monsieur Régis ASSO, en qualité de Directeur de la Sûreté Publique, Messieurs Frédéric FUSARI et Christophe HAGET, en qualité de fonctionnaires de la Sûreté Publique, ont favorisé Monsieur Dmitry RYBOLOVLEV, entraînant une rupture du principe de l'égalité des armes ;

- Sur la violation du droit à la vie privée de Madame Tania BOLTADJIEVA épouse RAPPO

- CONSTATER qu'au stade de l'enquête préliminaire, le code de procédure pénale ne prévoit pas précisément et expressément le pouvoir, pour les officiers de police judiciaire ou le Procureur Général, de requérir des banques la communication des informations, en violation de l'article 8 de la Convention européenne de sauvegarde des droits de l'homme et des libertés fondamentales ;

- CONSTATER que par la réquisition envoyée à l'AMAF en date du 30 janvier 2015 (D63), le droit à la vie privée de Madame Tania BOLTADJIEVA épouse RAPPO, tel que protégé par l'article 8 de la CESDH, a été violé.

en faisant valoir essentiellement que :

- la fin de non-recevoir tirée de l'autorité de chose jugée doit être écartée en ce que depuis l'arrêt du 15 novembre 2015, de nouveaux éléments ont permis d'établir des manquements dont cette juridiction n'avait pu alors retenir l'existence,

- la cause de requête en annulation a été modifiée et de nouveaux moyens reposent sur des fondements juridiques différents,

- les parties civiles ont nié tout lien avec les différents acteurs de la présente procédure ainsi que tout traitement de faveur faisant preuve de mauvaise foi,

- la Cour de Strasbourg a rappelé que les règles du procès équitable s'appliquaient dès le stade de l'enquête,

- afin de démontrer les violations au procès équitable, il n'est nullement nécessaire de viser précisément des actes de procédures spécifiques,

- il est démontré par plusieurs éléments, l'orientation particulière donnée à la procédure l'impliquant ne fait aucun doute,

- le Directeur des Services Judiciaires, Philippe NARMINO, s'est immiscé dans la conduite de la présente procédure, en favorisant les parties civiles, dont il avait par ailleurs reçu directement ou indirectement certains avantages,

- le Procureur Général, Jean-Pierre DRENO, a lui aussi favorisé les parties civiles avant même que l'enquête n'ait commencé, tant par la rédaction de la plainte auto-déposée, le 12 janvier 2015, que par ses conseils détonants à l'avocate des parties civiles,

- au sein de la Sûreté Publique, Régis ASSO, Directeur de la Sureté publique et Frédéric FUSARI et Christophe HAGET enquêteurs, ont également agi en faveur de Dmitry RYBOLOVLEV : l'ensemble des actes accomplis au cours de l'enquête l'ayant été sous l'impulsion de son avocate Tetiana BERSHEDA,

- en définitive, toutes ces personnes ont favorisé le plaignant provoquant une indiscutable rupture de l'égalité des armes,

- la violation du principe de loyauté résulte de plusieurs manquements des enquêteurs que sont : le fait d'avoir retranscrit dans des procès-verbaux des renseignements volontairement altérés, le fait d'avoir occulté certains éléments de la présente procédure ayant à la collaboration du conseil des parties civiles, le fait d'avoir présenté certains éléments de la procédure de manière mensongère et le fait d'avoir commis de multiples violations du secret de l'enquête et de l'instruction,

- le procès-verbal de renseignement du 19 février 2015 ne relate pas le fait qu'un témoin s'est présenté à la Sûreté Publique et que les policiers l'ont ensuite contacté par voie téléphonique,

- les enquêteurs ont sciemment occulté le rôle de l'avocat prépondérant joué par Tetiana BERSHEDA,

- cette omission a été critiquée par le magistrat instructeur en charge de la procédure,

- les enquêteurs ont fait surgir mystérieusement le nom de la requérante dans la procédure et ont fait une présentation déloyale du courrier que leur a adressé la HSBC,

- les enquêteurs sont astreints au secret professionnel et il est avéré qu'ils ont transmis à plusieurs reprises des informations confidentielles et des éléments de preuve à l'avocate des plaignantes,

- les conditions dans lesquelles ont été menées l'enquête ont été ignorées par l'ensemble des magistrats du siège ayant eu à connaitre de cette procédure,

- Tetiana BERSHEDA est restée en contact étroit avec les enquêteurs même l'ouverture de l'information à l'insu du juge d'instruction,

- une commission rogatoire a été établie le 27 février 2015 reprenant la fausse information figurant dans le courrier de la HSBC,

- l'enquête préliminaire n'est pas règlementée en droit monégasque,

- la réquisition judiciaire à l'AMAF constitue une ingérence dans sa vie privée contraire à l'article 8 CESDH qui n'est pas prévue par la loi monégasque puisque l'Officier de police judiciaire ne dispose pas de cette prérogative.

Par mémoire complémentaire en réplique déposé le 28 juin 2019, les parties civiles reprennent leurs moyens tendant à voir déclarer la requête irrecevable et au rejet de celle-ci en faisant valoir essentiellement que :

- le nouveau moyen de nullité relatif à la réquisition judiciaire du 30 janvier 2015 à l'AMAF est infondé,

- l'obtention de documents bancaires par voie de réquisitions judiciaires repose sur une base légale et apparaît proportionnée aux buts légitimes permettant une ingérence dans la vie privée prévus par l'article 8 CESDH,

- l'article 34 du code de procédure pénale confère au Procureur général un pouvoir d'enquête quel que soit le type d'enquête concerné comme l'a retenu la Cour d'appel correctionnelle dans un arrêt du 17 juin 2019,

- les Officiers de police judiciaire détiennent ces pouvoirs des articles 32, 44 et suivants du code de procédure pénale comme cela ressort d'un arrêt de la Cour de révision du 21 janvier 2010,

- les éléments matériels exposés dans la nouvelle requête ne constituent pas des demandes nouvelles, ni des moyens nouveaux lesquels figuraient dans la première requête en nullité formée en 2015,

- la demande de nullité a le même objet et concerne les mêmes parties qu'en 2015,

- il n'est pas démontré que le juge d'instruction se serait fondé sur un acte non retranscrit au dossier ou aurait fait usage d'une pièce non communiquée,

-en réalité, le requérant ne dénonce pas un défaut d'impartialité du juge d'instruction mais une liste d'irrégularités procédurales,

- les prétendues inobservations des exigences de l'article 6 CESDH, à les supposer établies, n'ont pas irrémédiablement porté atteinte aux droits de la défense, ni à l'équité de la procédure,

- il n'est pas démontré d'implication du Directeur des Services Judiciaires dans le déroulement de la procédure, ni que les relations entre les autorités judiciaires ou policières ou leur conseil auraient causé ou permis des violations de l'article 6 CESDH,

- le fait que Philippe NARMINO en qualité de Directeur des Services Judiciaires suivait de près cette procédure n'a rien d'anormal alors qu'il dirige l'action publique,

- il n'est aucunement établi par les deux notes citées par la requérante que ce dernier aurait interféré avec la procédure en cours,

- il est inexact de soutenir que les procès-verbaux des 19 et 23 février 2015 (D111 et D112) sont des faux puisqu'il n'est pas établi que ces documents aient été antidatés,

- le procès-verbal de renseignements du 19 février 2015 qui ne vise par la requérante n'est pas le support de son inculpation,

- la requérante est sans qualité pour se prévaloir d'une irrégularité affectant l'interpellation d'un tiers,

- elle persiste à dénoncer la façon dont l'enquête s'est orientée vers elle alors que sa mise en cause repose sur l'existence de commissions reçues d'Yves BOUVIER et non sur le courrier du 17 février 2015,

- les violations du secret de l'enquête et du secret de l'instruction n'est pas caractérisée puisqu'aucune disposition légale n'interdit les échanges d'informations entre les enquêteurs et les plaignants et leurs conseils en vue du bon déroulement de l'enquête.

A l'audience fixée pour l'examen de l'affaire, le Procureur général a requis le rejet des requêtes en annulation en développant oralement ses réquisitions écrites et en ajoutant qu'il n'était pas démontré que le Directeur des services judiciaires qui dirige l'action publique sans l'exercer, ait donné des instructions écrites dans ce dossier.

Les conseils des parties civiles ont développé leurs mémoires respectifs.

Les conseils respectifs des requérants ont repris les termes de leur requête en annulation et de leur mémoire.

**SUR CE**,

Attendu que les requêtes en nullité dont les requérants ont saisi la Chambre du conseil de la Cour d'appel sont toutes deux relatives à des atteintes à l'impartialité invoquées dans le cadre de l'information ouverte contre X pour des faits d'escroqueries, de complicité d'escroqueries au préjudice des sociétés « ACCENT DELIGHT INTERNATIONAL LIMITED », « XITRANS FINANCE LIMITED » et d'Ekaterina RYBOLOVLEVA bénéficiaire du trust dénommé « THE DOMUS TRUST » et de Dmitriy RYBOLOVLEV ainsi que de blanchiment ;

Qu'il apparait de l'intérêt d'une bonne administration de la justice que ces requêtes soient jugées ensemble ;

Qu'il y a lieu, dès lors, d'en ordonner la jonction ;

**Sur l'autorité de chose jugée**

Attendu que les deux requêtes en nullité, déposées respectivement par les conseils d'Yves BOUVIER et ceux de Tania BOLTADJIEVA épouse RAPPO, conformément aux dispositions édictées par l'article 209 du Code de procédure pénale, sont régulières en la forme ;

Attendu que si l'autorité de chose jugée attachée à l'arrêt de rejet que la Chambre du conseil a rendu le 12 novembre 2015 est susceptible de s'opposer à ce que les requérants puissent proposer, dans la même procédure portant sur les mêmes faits, des moyens de nullité sur le fondement de l'article 6 de la Convention Européenne de Sauvegarde des Droits de l'Homme qui ont déjà été rejetés par cette juridiction, ce n'est qu'à la condition que ces nouvelles requêtes en nullité ne soient pas fondées sur des actes ou des pièces de procédure qui n'avaient pas été précédemment soumis à la Chambre du conseil dès lors que ceux-ci n'ont été révélés que postérieurement ;

Qu'en l'espèce, il apparaît que l'exploitation des messages contenus dans le téléphone cellulaire remis par Tetiana BERSHEDA et ordonnée dans le cadre d'une autre information pénale ouverte postérieurement pour des faits de violation de la vie privée sur la plainte de Tania BOLTADJIEVA épouse RAPPO, ont fait apparaître en juillet 2017 l'existence de nombreux échanges et contacts ayant trait aux investigations en cours entre le conseil des parties civiles et les deux policiers en charge de l'enquête ainsi qu'avec le Procureur général, lesquels se sont poursuivis après l'ouverture de la présente information ;

Que ces éléments, qui établissent l'existence d'un lien particulier et étroit entre Tetiana BERSHEDA et les enquêteurs, étaient ignorés des requérants au moment du dépôt de leur première requête puisque ces données n'étaient connues que des protagonistes et n'ont été révélées qu'à la faveur des investigations menées postérieurement dans le cadre d'une autre information pénale précitée ;

Qu'en outre, l'identité des parties en cause n'apparait pas complète dès lors que Dmitriy RYBOLOVLEV n'était pas partie à la présente procédure d'information en 2015, ce dernier ne s'étant constitué partie civile qu'à la date du 12 juillet 2017 ;

Que dans ces conditions, les deux requêtes sont recevables ;

**Sur la violation de la vie privée**

Attendu que l'article 8 de la Convention Européenne des Droits de l'Homme garantit à chacun le respect de sa vie privée et familiale et prévoit que toute ingérence publique doit être prévue par la loi ;

Attendu que la cote D 63 querellée au motif qu'aucun texte monégasque ne prévoit cette ingérence, est relative aux réquisitions adressées le 30 janvier 2015 au Président de l'AMAF aux fins de rechercher les comptes bancaires dont pouvait être titulaire Tania BOLTADJIEVA épouse RAPPO ;

Attendu que si aucune disposition du Code de procédure pénale ne régit précisément la délivrance de réquisitions hors de l'enquête de flagrance, il s'avère que l'article 34 du Code de procédure pénale énonce, notamment, que le Procureur général a la direction de la police judiciaire et exerce l'action publique ; il est chargé de la recherche et de la poursuite des crimes et des délits ; il reçoit les dénonciations et les plaintes qui lui sont adressées ainsi que

tous rapports, procès-verbaux, renseignements qui lui sont transmis par les officiers de police judiciaire ou par toute autre voie, sur les crimes et les délits ; il apprécie la suite à leur donner ;

Qu'il s'ensuit qu'en dehors du cas de la flagrance, il existe un cadre d'enquête, non dénommé par le Code de procédure pénale, qui permet au Procureur général d'exercer, en particulier, les pouvoirs qu'il tient de ce texte ;

Qu'en application de l'article 34 du Code de procédure pénale qui se suffit à lui-même, les officiers de police judiciaire placés sous la direction du Procureur général, chargé de la recherche des délits et des crimes, peuvent faire procéder à toutes investigations, en vue de constater les infractions à la loi pénale, d'en rassembler les preuves et d'en identifier les auteurs ;

Que ces investigations sont donc prévues par la loi et peuvent consister en des auditions, des confrontations, des réquisitions notamment bancaires ;

Qu'en conséquence, ce moyen de nullité portant sur la cote D 63 et les actes subséquents sera écarté ;

**Sur la violation du procès équitable**

Attendu que l'article 6 de la Convention Européenne des Droits de l'Homme énonce, notamment, que toute personne a droit à ce que sa cause soit entendue équitablement, publiquement et dans un délai raisonnable, par un tribunal indépendant et impartial, établi par la loi, qui décidera, soit des contestations sur ses droits et obligations de caractère civil, soit du bien-fondé de toute accusation en matière pénale dirigée contre elle ;

Attendu que sur le fondement de ce texte, la Cour Européenne des Droits de l'Homme considère que l'impartialité se définit par l'absence de préjugé ou de parti pris et que les garanties d'indépendance et d'impartialité propres au procès équitable, fixées par l'article 6 § 1 de la Convention, concernent les juridictions appelées à décider d'une accusation en matière pénale en ce compris, les phases précédentes qui se déroulent avant la procédure de jugement si, et dans la mesure où, leur inobservation initiale risque de compromettre gravement le caractère équitable du procès ;

Attendu à cet égard, que le défaut d'impartialité des enquêteurs peut constituer une cause de nullité de la procédure en tout ou partie, si cette violation a eu pour effet de porter atteinte au caractère équitable et contradictoire de la procédure ou de compromettre l'équilibre des droits des parties ;

Qu'il en va ainsi s'il est démontré que la partie civile a pu bénéficier tout au long de l'enquête de faveurs particulières tant de la part des enquêteurs que du Procureur général lui-même qui leur a confié l'enquête et qu'en raison d'une entente occulte les unissant, les investigations ont été conduites de manière orientée et déloyale ;

Attendu par ailleurs que même si l'article 6 précité ne le mentionne pas expressément, le principe de la loyauté des preuves repose sur la notion même de procès équitable consacrée par ce texte ;

Que la loyauté dans la recherche de la preuve des infractions est exigée tant des magistrats, que des enquêteurs agissant sous leur autorité ;

Qu'ainsi, le caractère équitable de la procédure s'apprécie au vu de la procédure dans son ensemble en l'état où elle se trouve, en vérifiant si une partie a bénéficié d'avantages notables dans l'accès aux moyens publics d'investigation et aux informations pertinentes ainsi qu'en fonction de la manière dont les preuves ont été recueillies et de la possibilité qui est donnée aux inculpés d'en discuter le mode d'admission et la portée ;

Attendu en ce qui concerne la phase d'enquête, qu'en premier lieu, il convient d'observer que Tetiana BERSHEDA agissant en qualité de conseil du plaignant, Dmitriy RYBOLOVLEV, a constamment occupé, avant même le dépôt de plainte, une place toute particulière à raison des intérêts représentés par son client en Principauté, lequel est notamment le Président de l'ASM, club de football professionnel qui concourt activement à la vie sportive monégasque et dont le Chef de la division de police judiciaire précisait dans un compte rendu au conseiller de gouvernement-ministre de tutelle, précédant une réunion prévue le 25 août 2017, que : « *Les égards de la PJ dus à la position sociale de la victime et à son agenda surchargé ont été absolument normaux (…) Nous avons du également freiner Me BERSHEDA, stressée par son client et peu au fait du droit pénal, car elle a souvent essayé de nous mettre la pression et même tenté de nous orienter. Nous l'avons toutefois fait avec beaucoup de diplomatie, les consignes de la hiérarchie restant de considérer le plaignant comme ultra VIP.* » ;

Que cette place d'interlocutrice privilégiée auprès du Procureur général et des enquêteurs en charge des investigations a manifestement excédé les contacts directs qui peuvent exister habituellement entre les autorités en charge de l'enquête et l'avocat du plaignant alors que les investigations doivent toujours être menées sans aucun parti pris des enquêteurs, lesquels doivent assurer le secret de l'enquête prescrit par l'article 31 du Code de procédure pénale ;

Qu'en second lieu, cette situation très particulière a été marquée par une recherche constante de la confidentialité devant entourer l'existence même de ces échanges et a été volontairement dissimulée par l'ensemble des protagonistes de cette entente même lors des débats devant la chambre du conseil ayant précédé l'arrêt précité du 12 novembre 2015 alors que les inculpés mettaient déjà en cause l'impartialité du Ministère public dans la conduite de cette enquête ;

Attendu qu'au cas d'espèce, la chronologie détaillée de l'enquête, sous la direction du Parquet général, qui aura duré un peu plus d'un mois (D56 à D149) met en lumière un traitement pour le moins inhabituel de la plainte que se préparait à déposer Dmitriy RYBOLOVLEV à l'encontre d'Yves BOUVIER au vu notamment des échanges partiels par voie de SMS et de courriels échangés entre Christophe HAGET, Commissaire principal, Chef de la division de police judiciaire et Frédéric FUSARI, Commandant principal et adjoint au sein de la même division et Tetiana BERSHEDA qui ont été exploités à partir du téléphone de cette dernière dans le cadre de l'information pénale précitée ;

Attendu à cet égard, qu'il résulte des déclarations circonstanciées de Jean-Pierre DRENO, Procureur général à cette époque, entendu le 7 mai 2018 sur commission rogatoire du juge d'instruction dans le cadre d'une autre information pénale ouverte pour des faits de trafic d'influence et de corruption, que ce dernier a accepté de procurer des conseils juridiques précis à Tetiana BERSHEDA et de procéder à un examen de son projet de plainte contre Yves BOUVIER pour évaluer si celle-ci était recevable tant sur le plan de la compétence territoriale que sur les faits dénoncés ;

Qu'à cet effet, celle-ci a été reçue en personne, à deux reprises, avant l'ouverture de l'enquête et a interrogé le Procureur général sur la possibilité d'enregistrer des conversations à l'insu d'Yves BOUVIER, ce magistrat lui ayant répondu qu'en France, la Cour de cassation acceptait ce mode de preuve et qu'un particulier n'était pas tenu au principe de loyauté de la preuve comme les autorités en charge des enquêtes pénales ;

Que ce faisant, le Procureur général à qui il appartenait de superviser le déroulement de l'enquête qu'il allait ensuite ordonner de manière indépendante, en veillant notamment à ce que la recherche des preuves soit menée loyalement, s'est autorisé à valider implicitement le recours par son avocat à un procédé déloyal en vue de se préconstituer des preuves, au lieu de s'abstenir de toute immixtion dans la stratégie procédurale du plaignant ;

Que Maître BERSHEDA y aura finalement recours en enregistrant à son insu le 23 février 2015 une conversation privée s'étant tenue entre Tania BOLTADJIEVA épouse RAPPO et Dmitriy RYBOLOVLEV ;

Qu'en outre, là encore de façon tout à fait exceptionnelle, il apparaît que la plainte a été déposée directement par Tetiana BERSHEDA entre les mains du Procureur général et que les enquêteurs ont été aussitôt convoqués par ce dernier le 12 janvier 2015 au Palais de justice en sa présence, lequel leur a remis un soit-transmis aux fins d'enquête pour exécution immédiate et les a invités dans le même temps à échanger leurs coordonnées respectives ;

Que de l'ensemble, il ressort incontestablement une implication personnelle du Procureur général dans la mise en forme de la plainte et les modalités de mise en œuvre de l'enquête qu'il a ordonnée, que ce dernier a ensuite expliquée par le caractère important et sensible de l'affaire, présentant Tetiana BERSHEDA comme une personne « *incontournable* » au moment du dépôt de plainte ;

Attendu que les enquêteurs ont ainsi très rapidement perçu le caractère prioritaire et confidentiel devant s'attacher à cette enquête et il apparaît que de son côté, le Directeur de la Sûreté publique a aussi souligné le traitement exceptionnel devant être réservé à cette plainte puisqu'il a été demandé aux policiers dès le 15 janvier 2015 de recevoir Dmitriy RYBOLOVLEV et son conseil, ce qui allait inaugurer une série de réunions régulières entre eux dans les locaux de la Sûreté publique ;

Que Christophe HAGET a relaté dans un compte rendu daté du 12 février 2015 que ces réunions s'étaient tenues à chaque fois qu'ils les considéraient comme nécessaires et que les plaignants étaient systématiquement accueillis préalablement par Régis ASSO, Directeur de la Sûreté publique, lequel parlait la langue russe, ce à raison du statut de Dmitriy RYBOLOVLEV ;

Que Christophe HAGET en sa qualité de superviseur de l'enquête a aussi indiqué que « *la collaboration* » avec Tetiana BERSHEDA avait nécessité du 16 janvier au 25 février 2015 des réunions de travail quasi-quotidiennes qui leur avaient permis d'asseoir une compétence territoriale pour trois œuvres d'art et de réunir les éléments constitutifs de l'infraction d'escroquerie et de blanchiment ;

Que dans le compte rendu précité, il apparaît que ce n'est que neuf mois plus tard qu'en septembre 2015, à la suite de la parution d'un article critique de la presse internationale, que des consignes de sa hiérarchie lui ont été données visant dorénavant à ce que les enquêteurs « *gardent leurs distances avec la partie civile* » ;

Attendu de plus, que les échanges très fréquents pendant cette période entre Tetiana BERSHEDA et les enquêteurs font apparaître leur grande proximité, comme l'identification du rédacteur par son prénom et l'emploi de formules inappropriées en fin de message « *Bien amicalement* », « *Amitiés* », « *Bises* », « *Bonne nuit* » ;

Que Régis ASSO, Directeur de la Sûreté publique, en adressant en juillet 2015 un courriel à Tetiana BERSHEDA a même utilisé le tutoiement ;

Que ces enquêteurs ont apporté un soutien aux intérêts de Dmitriy RYBOLOVLEV dans des procédures sans rapport avec les diligences qui leur étaient confiées, et comme cela est soutenu par les conseils d'Yves BOUVIER, seront à l'origine de l'engagement le 4 septembre 2017 à leur encontre en leur qualité d'officiers de police judiciaire d'une procédure disciplinaire par le Procureur général sur le fondement de l'article 50 du Code de procédure pénale devant la Chambre du conseil de la Cour d'appel autrement composée et qui est actuellement toujours en cours ;

Attendu que cette entente entre le conseil du plaignant et les enquêteurs, parfaitement contraire à l'indépendance et à la neutralité devant présider aux investigations vis-à-vis des parties, loin de se résumer à de simples contacts comme le soutiennent les parties civiles, a été initiée sous l'égide du Procureur général qui l'a encouragée, ce qui a nécessairement affaibli la situation des inculpés dans les actes ultérieurs de l'enquête ;

Que par suite, il résulte de la confrontation des échanges occultes entre les enquêteurs et Tetiana BERSHEDA et des actes de la procédure d'enquête, que de nombreuses investigations ont été suggérées, orientées et suivies par celle-ci, mettant progressivement les policiers dans l'impossibilité de redresser le déséquilibre de la situation, lesquels se sont trouvés débiteurs d'une quasi-obligation de résultat vis-à-vis de leur double hiérarchie policière et judiciaire agissant sous la pression du plaignant ;

Qu'en effet, l'objectif partagé par les protagonistes de cette entente visait à réunir des charges suffisantes devant permettre l'interpellation d'Yves BOUVIER en provoquant sa venue à Monaco pour rencontrer Dmitriy RYBOLOVLEV grâce à l'entremise de Tetiana BERSHEDA ;

Que l'influence de ces concertations occultes sur la procédure menée officiellement apparait démontrée comme par exemple, l'établissement du procès-verbal de renseignement anonyme en date du 24 février 2015 reçu par Frédéric FUSARI aux termes duquel celui-ci indiquait avoir eu connaissance le jour même de la venue probable d'Yves BOUVIER à Monaco, lequel était susceptible de se rendre au domicile de Dmitriy RYBOLOVLEV ou bien au domicile de Tania BOLTADJIEVA épouse RAPPO ;

Que ce procès-verbal a été établi dans le cadre de l'exécution de la commission rogatoire délivrée par le juge d'instruction le jour même de l'ouverture de l'information pénale ;

Qu'en réalité, il apparait que cet enquêteur détenait cette information de son collègue Christophe HAGET depuis la veille au soir, ce avant l'ouverture de l'instruction, lequel l'avait lui-même directement reçue de Tetiana BERSHEDA, et qu'il a ainsi volontairement dissimulé en procédure les conditions dans lesquelles l'interpellation d'Yves BOUVIER et de Tania BOLTADJIEVA épouse RAPPO avaient été préparées et organisées en concertation avec le conseil du plaignant ;

Attendu qu'en ce qui concerne la phase d'instruction, il résulte des déclarations de Loïc MALBRANKE, en sa qualité de juge d'instruction au moment de l'ouverture de l'information, entendu le 19 décembre 2017 sur commission rogatoire de son collègue dans le cadre de l'information pénale ouverte pour des faits de trafic d'influence et de corruption, lequel lui demandait notamment s'il était d'usage ou habituel qu'une partie plaignante organise des entrevues et des réunions de travail avec les services de police pour évoquer des aspects de l'affaire sans que l'existence de ces rencontres ne figure en procédure, que selon ce magistrat, certains de ces contacts lui paraissaient déplacés et jetaient à tort le discrédit sur toute la procédure et tous ses intervenants mais que néanmoins, il avait pris toutes les décisions importantes en conscience, de manière impartiale et sans traitement de faveur à l'égard de quiconque ;

Que ceci étant rappelé, force est constater que :

- les deux enquêteurs n'ont pas informé le juge d'instruction des contacts informels et officieux qu'ils avaient entretenus avec Tetiana BERSHEDA sur le contenu de l'enquête alors que ceux-ci n'apparaissaient pas en procédure tout comme les relations de grande proximité entretenues entre cette dernière et Régis ASSO, Directeur de la Sûreté publique,

- le juge d'instruction ignorait que Tetiana BERSHEDA s'était concertée avec les enquêteurs sur plusieurs options visant à l'interpellation d'Yves BOUVIER à Monaco auxquelles celle-ci se référait dans un SMS adressé le 23 février 2015 à Christophe HAGET en ces termes : « *Bonsoir, il viendra le 25 au matin. C'est sûr. Il faudrait rester avec le plan A. Rappelez-moi quand vous voulez svp. Merci ! Tetiana.* »,

- ce magistrat a aussi indiqué au cours de son audition que compte tenu de la particularité du dossier, liée au montant colossal des sommes en jeu et à la personnalité très en vue de Dmitriy RYBOLOVLEV et face à la précipitation des interpellations voulues par le Parquet général, il avait décidé de faire venir les deux enquêteurs à son cabinet pour prendre formellement la main sur le dossier et leur signifier que désormais, il assurait seul la conduite de l'enquête en faisant état de ce qu'il nourrissait des craintes dès le départ qu'il existe des relations privilégiées entre Dmitriy RYBOLOVLEV et les hautes autorités monégasques,

- ce magistrat après avoir pris connaissance d'un courriel de Christophe HAGET où celui-ci appelait Maître BERSHEDA par son prénom, a dû lui rappeler à nouveau son devoir d'impartialité et la nécessité de suivre ses directives initiales sur l'objectivité des investigations ;

Attendu que nonobstant l'attention que ce magistrat a pu porter au respect de l'impartialité de l'enquête, il apparait que :

- les échanges informels et officieux et les réunions à la Sûreté publique entre les enquêteurs et Tetiana BERSHEDA se sont poursuivis jusqu'au mois de juillet 2017, date à laquelle une partie de leurs échanges a été révélée à l'occasion d'une expertise de son téléphone portable ordonnée par le magistrat instructeur en charge de l'information pour violation de la vie privée,

- la poursuite de cette entente a continué d'être dissimulée au juge d'instruction en permettant aux enquêteurs de conserver sa confiance,

- Tetiana BERSHEDA a participé activement à la stratégie d'enquête et les enquêteurs lui ont adressé régulièrement des comptes rendus comme s'il s'agissait d'un directeur d'enquête officiel, laquelle s'est crue autorisée à adresser ses félicitations à Frédéric FUSARI pour son « *excellent travail* » après les deux inculpations d'Yves BOUVIER et de Tania BOLTADJIEVA épouse RAPPO,

- les échanges directs sur cette affaire entre Tetiana BERSHEDA et Jean-Pierre DRENO, Procureur général, se sont également poursuivis alors que ce dernier n'était plus en charge de l'enquête, lesquels portaient sur des informations couvertes par le secret de l'instruction dont le magistrat instructeur là encore, n'a pas été tenu informé,

- le 16 mars 2015, Tetiana BERSHEDA a invité à déjeuner les deux enquêteurs, invitation que tous deux ont accepté et dont ils se sont déclarés satisfaits, et celle-ci a proposé le 20 mars 2015 à Frédéric FUSARI une invitation à un match retour de football à Monaco de Ligue des Champions opposant l'ASM à la Juventus de Turin,

- Régis ASSO, Directeur de la Sûreté publique a été invité à déjeuner au domicile de Dmitriy RYBOLOVLEV en présence de Tetiana BERSHEDA pendant le déroulement de la garde à vue des deux inculpés et a été destinataire le 26 février 2015 du message suivant : « *Joyeux anniversaire et tous nos meilleurs vœux de Dmitri RYBOLOVLEV et de ma part ! … pourriez-vous SVP nous donner votre adresse privée ? Merci. Je vous embrasse. Tetiana.* » et, en guise de cadeau d'anniversaire, a reçu un samovar de sa part pour le compte de son client et ce à quoi il répondait le 3 mars 2015 : « *Merci Tetiana de votre envoi qui a beaucoup touché ma sensibilité forte pour la Russie. Pouvez-adresser mes remerciements sincères à Dmitri RYBOLOVLEV. Je vous assure à tous deux de ma fidélité (…)* » ;

Que dans ces conditions, la place tout à fait anormale occupée par le conseil du plaignant dès le début de l'enquête ne s'est en rien trouvée modifiée, malgré la saisine du juge d'instruction chargé de l'affaire et ses rappels à l'ordre formalisés auprès des enquêteurs qui sont demeurés sans aucun effet, en sorte que le déséquilibre au détriment des inculpés s'est lourdement accentué bien qu'un magistrat indépendant ait été pourtant en charge de l'information ;

Attendu de plus, que cette entente caractérisée par une pratique constante de travail occulte, a conduit les enquêteurs à recevoir de multiples informations et documents qui ont orienté leurs investigations et leurs choix d'enquête sans que pour autant ces nombreux éléments n'apparaissent en procédure et qui pour cette raison, n'ont donc été connus ni du juge d'instruction, ni des inculpés, les privant de la possibilité de les discuter ;

Que plusieurs échanges des enquêteurs, qui sont intervenus en violation des dispositions garantissant le secret de l'enquête et de l'instruction, témoignent de leur empressement manifeste à satisfaire les objectifs voulus par la partie civile :

- courriel de Christophe HAGET à Tetiana BERSHEDA du 26 février 2015 pendant la garde à vue des deux inculpés « *Tetiana, Nous utiliserons les confrontations de demain pour renforcer la compétence à Monaco. Nous avons travaillé pour s'assurer de la prolongation de la GAV avec JLD qui aura lieu demain matin... On se voit vers 10h00 pour évoquer tous les points du dossier. Bonne soirée. Christophe.* » ;

- courriel de Christophe HAGET à Tetiana BERSHEDA du 27 février 2015 « *Nous traitons les prolongations de GAV, je pense que pour les trois œuvres (R,G et V) il y a bien une compétence à Monaco, nous travaillons depuis hier soir avec Frédéric à informer au mieux le juge d'instruction sur ces points. On se voit à 10h.Lisez l'article du temps sur internet. Cordialement.* » ;

- courriel de Christophe HAGET à Tetiana BERSHEDA du 16 avril 2015 qui l'informe de ce qu'une plainte a été déposée contre elle par les avocats de Tania BOLTADJIEVA épouse RAPPO en ajoutant « *le Parquet vient de nous la transmettre pour enquête. Cordialement.* » ;

- courriel de Frédéric FUSARI à Tetiana BERSHEDA du 4 mars 2015 qui lui fournit des informations sur l'avion d'Yves BOUVIER et sa localisation comme suit : « *Bonjour, j'ai vérifié pour l'avion également : l'immatriculation exacte est (FALCON 7X) LX DSA. Il se trouve bien sur l'aéroport de Genève. Bon séjour.* » ;

Que la découverte fortuite d'une partie seulement de ces échanges n'a pas permis de mettre à jour l'intégralité de leur contenu dont l'existence est pourtant avérée à l'examen de cette myriade d'échanges, ce qui rend là encore, impossible pour la défense des inculpés de pouvoir apprécier et discuter efficacement de l'impact et de la portée de ces éléments sur l'enquête conduite à leur endroit ;

Attendu en outre, que la loyauté dans la recherche de la preuve des infractions qui est exigée des enquêteurs, que ceux-ci agissent sous l'autorité du Ministère public ou du juge d'instruction, s'en est trouvée gravement altérée à plusieurs reprises au cours de l'information ;

Qu'à cet égard, il est renvoyé aux développements *supra* relatifs au procès-verbal de renseignement anonyme en date du 24 février 2015 établi par Frédéric FUSARI ;

Que par ailleurs, à deux reprises, une première fois au cours de l'enquête et une seconde fois au cours de l'information, Tetiana BERSHEDA a proposé aux enquêteurs de faire entendre des témoins dont l'audition pour le premier finalement n'aura pas lieu (courriel du 28 janvier 2015 relatif à Sandy HELLER) pour des motifs qui demeurent inconnus alors que pour le second (Abdallah CHATILA) celle-ci aura bien lieu le 26 février 2015 dans les locaux la Sûreté publique mais sans être retranscrite en procédure en tant que telle, ce que confirme Tetiana BERSHEDA dans un courriel qu'elle a adressé à ce dernier le 10 mars 2015 ;

Qu'en outre, Tetiana BERSHEDA a eu recours à un enregistrement clandestin d'une conversation privée, pratiqué à l'insu de Tania BOLTADJIEVA épouse RAPPO, qui a été versé en procédure au cours de l'information, après avoir obtenu l'approbation du Procureur général sur l'emploi de ce stratagème, que faisant preuve d'une opiniâtré sans égale pour probablement se prémunir d'éventuelles poursuites, celle-ci est aussi entrée en contact téléphonique avec le juge d'instruction avant qu'il ne soit saisi de l'instruction par l'entremise de Frédéric FUSARI pour obtenir son avis sur ce point mais a été éconduite par ce magistrat ;

Qu'il appartenait pourtant au Procureur général, à qui la loi confie la direction de la police judiciaire de dissuader le conseil de la partie civile d'employer un tel procédé parfaitement déloyal susceptible de constituer une infraction pénale alors que celui-ci l'a pourtant validé et que de leur côté, les enquêteurs ont accepté le 26 février 2015 ce moyen de preuve bien qu'obtenu dans pareil contexte ;

Que ce faisant, ceux-ci ont chacun manqué, à leur niveau, aux obligations de leur déontologie respective et ont ensemble concouru à des violations répétées du principe de loyauté dans l'obtention de la preuve des infractions ;

Attendu que les parties conservent incontestablement, tout au long de la procédure, le droit de contester la valeur probante des éléments recueillis et de présenter, au magistrat instructeur, toutes demandes de nouvelles auditions, de confrontations ou d'autres actes d'instruction ;

Qu'il est constant que la défense des inculpés a pu mettre en œuvre ces droits mais en totale méconnaissance de cette entente et sans pouvoir parvenir à rétablir le caractère équitable de la procédure irrémédiablement compromis par une altération continue et substantielle des droits de la défense ;

Qu'en définitive, il apparait établi que la partie civile a pu bénéficier de manière occulte tout au long de l'enquête de faveurs particulières tant de la part des enquêteurs et du Directeur de la Sûreté publique que du Procureur général lui-même qui leur a confié l'enquête et que cette entente contraire aux principes d'indépendance, de loyauté, de neutralité et de secret de l'enquête a perduré, s'est renforcée, à l'insu du juge d'instruction, pendant l'information après les inculpations d'Yves BOUVIER et de Tania BOLTADJIEVA épouse RAPPO et ne s'est interrompue que parce qu'elle a été révélée à l'occasion d'une autre information pénale ;

Qu'il convient également de relever qu'en ce qui concerne les commissions rogatoires délivrées ensuite par le juge d'instruction, celles-ci étant confiées à la Sûreté Publique, ont toutes été exécutées par Frédéric FUSARI et d'autres enquêteurs appartenant à la Division de Police Judiciaire, ceci dans le contexte précédemment décrit, étant rappelé que ces enquêteurs étaient tous placés sous l'autorité de Christophe HAGET en sa qualité de Chef de division, le tout sous la responsabilité de Régis ASSO, Directeur de la Sûreté publique ;

Que lorsque le délégataire de la commission rogatoire est un officier de police judicaire, il est soumis à la même obligation de loyauté que le magistrat instructeur ainsi qu'aux règles applicables aux actes d'instruction ;

Qu'il s'ensuit qu'au cours de cette phase de la procédure, son obligation de loyauté s'en trouve renforcée ;

Qu'à cet égard, le juge d'instruction a été conduit, à nouveau, à adresser le 18 mai 2015 un courriel aux enquêteurs et plus particulièrement à Frédéric FUSARI en lui rappelant de manière laconique les dispositions de l'article 128 du Code pénal réprimant l'abus d'autorité dans l'exécution d'un mandat de justice, sans que pour autant ce message ait conduit les enquêteurs à cesser leur participation active à l'entente précédemment décrite malgré les lignes de conduite rappelées par le magistrat instructeur au début de l'information ;

Qu'il s'ensuit que l'ensemble des investigations ont été conduites de manière partiale et déloyale sans que les inculpés ne soient en situation de faire redresser rétrospectivement ces graves anomalies qui ont compromis durablement l'équilibre des droits des parties, sinon qu'en sollicitant pour ce motif et à ce stade la nullité de toute la procédure viciée par ce grief, ce quelle que soit l'issue de la procédure pénale au cours de la phase éventuelle de jugement sur renvoi du juge d'instruction, dès lors que les éléments de la procédure ont tous été recueillis dans des conditions portant une atteinte substantielle aux droits de la défense ;

Attendu qu'au final, l'ensemble des actes de l'enquête tout comme le réquisitoire introductif en date du 24 février 2015 se trouvent entachés par ce grief ainsi que les inculpations consécutives d'Yves BOUVIER et de Tania BOLTADJIEVA épouse RAPPO en date des 28 février 2015 et tous les actes d'instruction subséquents qui en sont la conséquence directe dès lors que ces irrégularités qui ont vicié gravement la recherche et l'établissement de la vérité, affectent de façon continue et diffuse l'ensemble de la procédure subséquente ;

Attendu en conséquence, qu'en application des dispositions de l'article 210 du Code de procédure pénale, il convient de faire droit aux demandes de nullité de la procédure n° CAB1/15/04 formées par Yves BOUVIER et Tania BOLTADJIEVA épouse RAPPO à partir de la côte D 56 correspondant au soit-transmis du Procureur général, en date du 12 janvier 2015, ordonnant une enquête confiée au Directeur de la Sûreté publique ;

**PAR CES MOTIFS,**

**LA CHAMBRE DU CONSEIL DE LA COUR D'APPEL DE LA PRINCIPAUTE DE MONACO,**

Vu les articles 6 et 8 de la Convention Européenne des Droits de l'Homme,

Vu l'article 210 du Code de procédure pénale,

Ordonne la jonction des deux requêtes en nullité,

Déclare Yves BOUVIER et Tania BOLTADJIEVA épouse RAPPO recevables en leurs requêtes,

Rejette le moyen de nullité fondé sur la violation de l'article 8 de la Convention Européenne des Droits de l'Homme,

Annule les actes de la procédure d'information n° CAB1/15/04 à partir de la côte D 56 et tous les actes subséquents,

Dit que les actes annulés seront retirés du dossier et classés au greffe général et fait interdiction à quiconque de faire état des actes dont la nullité a été prononcée,

Renvoie le dossier au Ministère public pour être requis par lui ce qu'il appartiendra,

Laisse les frais à la charge du Trésor.

Ainsi jugé au Palais de Justice, à Monaco, par, Madame Sylvaine ARFINENGO Conseiller, faisant fonction de Président, Monsieur Eric SENNA, Conseiller, Madame Virginie HOFLACK, Juge au Tribunal de première instance, complétant la Cour en vertu de l'article 22 de la Loi n° 1.398 du 24 juin 2013 relative à l'administration et à l'organisation judiciaires, sur les réquisitions de Madame Sylvie PETIT-LECLAIR, Procureur général, assistés de Madame Bénédicte SEREN-PASTEAU, Greffier.-

Arrêt signé le **douze décembre deux mille dix-neuf**, seulement par, Madame Sylvaine ARFINENGO Conseiller, faisant fonction de Président, Madame Virginie HOFLACK, Juge au Tribunal de première instance, complétant la Cour en vertu de l'article 22 de la Loi n° 1.398 du 24 juin 2013 relative à l'administration et à l'organisation judiciaires, en l'état de l'empêchement de Monsieur Eric SENNA, Conseiller, (article 60 de la loi n° 1.398 du 24 juin 2013 relative à l'administration et à l'organisation judiciaires).-



